FORMS TO BE COMPLETED BY PRISONERS FILING A CIVIL RIGHTS
COMPLAINT UNDER 42 U.S.C. § 1983 or 28 U.S.C. § 1331

## COVER SHEET

THIS COVER SHEET CONTAINS IMPORTANT INFORMATION ABOUT FILING A
COMPLAINT AND YOUR OBLIGATIONS IF YOU DO FILE A COMPLAINT. READ AND
COMPLETE THE COVER SHEET BEFORE YOU PROCEED FURTHER.

**************************************************************************

The cost for filing a civil rights complaint is $150.00.

If you do not have sufficient funds to pay the full filing fee of $150.00 you need permission to proceed *in
forma pauperis*. However, the court will assess and, when funds exist, immediately collect an initial partial
filing fee of 20 percent of the greater of:

    1)    the average monthly deposits to your prison account for the past six months; or

    2)    the average monthly balance in your prison account for the past six months.

Thereafter, the institution in which you are incarcerated will be required to make monthly payments of 20%
of the preceding month's deposits credited to your account until the entire filing fee is paid.

CAUTION: YOUR OBLIGATION TO PAY THE FULL FILING FEE WILL CONTINUE REGARDLESS OF
THE OUTCOME OF YOUR CASE, EVEN IF YOUR COMPLAINT IS DISMISSED BEFORE THE
DEFENDANTS ARE SERVED.

**************************************************************************

    1. You shall file a complaint by completing and signing the attached complaint form
and mailing it to the Clerk of Court along with the full filing fee of $150.00. (In the event
attachments are needed to complete the allegations in the complaint, no more than three
(3) pages of attachments will be allowed.) If you submit the full filing fee along with the
complaint, you DO NOT have to complete the rest of the forms in this packet. **Check here
if you are submitting the filing fee with the complaint form.** ✓

    2. If you cannot afford to pay the fee, you may file a complaint under 28 U.S.C.
§ 1915 without paying the full filing fee at this time by completing the following: (1)
Complaint Form; (2) Application To Proceed In Forma Pauperis; and (3) Authorization
Form. You must properly complete, sign and submit all three standard forms or your
complaint may be returned to you by the Clerk of Court. **Check here if you are filing your
complaint under 28 U.S.C. § 1915 without full prepayment of fees.** _____

**Please Note:** If your case is allowed to proceed and you are awarded compensatory damages
against a correctional facility or an official or agent of a correctional facility, the damage
award will first be used to satisfy any outstanding restitution orders pending. Before
payment of any compensatory damages, reasonable attempts will be made to notify the
victims of the crime for which you were convicted concerning payment of such damages.
The restitution orders must be fully paid before any part of the award goes to you.

DO NOT DETACH THE COVER SHEET FROM THE REST OF THE FORMS

## FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AY-5585
_____
**(Inmate Number)**

William Clark
_____
**(Name of Plaintiff)**

P.O. Box A, SCI-Rockview
_____
**(Address of Plaintiff)**

Bellefonte, PA 16823
_____

**vs.**

Martin Horn, Secretary of the
_____

Pennsylvania Department of Cor-
_____

rections, et al.
_____
**(Names of Defendants)**

COPY

_____
**(Case Number)**

# 1 : CV01-0764

**COMPLAINT**

FILED
SCRANTON

MAY 0 2 2001

PER _____
DEPUTY CLERK

**TO BE FILED UNDER:** __X__ 42 U.S.C. § 1983 - STATE OFFICIALS
_____ 28 U.S.C. § 1331 - FEDERAL OFFICIALS

I.   **Previous Lawsuits**

  A.   If you have filed any other lawsuits in federal court while a prisoner please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:   None

II.  **Exhaustion of Administrative Remedies**

  A.   Is there a grievance procedure available at your institution?
  __X__ Yes  _____ No

  B.   Have you filed a grievance concerning the facts relating to this complaint?
  __X__ Yes  _____ No

  If your answer is no, explain why not _____

  C.   Is the grievance process completed?  __X__ Yes  _____ No

III.   Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use Item B for the names, positions and places of employment of any additional defendants.)

A.   Defendant ___Martin Horn_____ is employed

as ___Secrety_____ at ___the PA Dept. of Corrections___

B.   Additional defendants___See attached complaint_____

_____

_____

_____

IV.  Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

1.   See attached complaint

2.   See attached complaint

3.   See attachewd complaint

2

V.    Relief

(State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.)

1.          See attached complaint

2.          See attached complaint

3.          See attached complaint

Signed this _23 RD_ day of _APRIL_ , 2001

_William M. Clark_
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

_4/23/01_                          _William M. Clark_
(Date)                             (Signature of Plaintiff)

3

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **WILLIAM CLARK,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| | : | |
| v. | : | No._____ |
| | : | |
| **MARTIN HORN, Secretary,** | : | |
| **Pennsylvania Department of Corrections;** | : | |
| **ROBERT MEYERS, Superintendent,** | : | |
| **State Correctional Institution at Rockview;** | : | |
| **WEXFORD HEALTH SOURCES, INC.,** | : | |
| **Health Care provider at the State Correctional** | : | |
| **Institution at Rockview;** | : | |
| **JOHN SYMONS, M.D., Medical Director,** | : | |
| **State Correctional Institution at Rockview;** | : | |
| **LARRY LIDGETT, Health Care Administrator,** | : | |
| **State Correctional Institution at Rockview,** | : | |
| | : | |
| **Defendants** | : | **JURY TRIAL DEMANDED** |

**§ 1983CIVIL RIGHTS COMPLAINT**

**ON BEHALF OF:**

**WILLIAM CLARK,** *PRO SE*
**SCI ROCKVIEW, BOX A**
**INMATE NO. AY-5585**
**BELLEFONTE, PA 16823**



# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM CLARK,** | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | No._____ |
| | : | |
| **MARTIN HORN, Secretary,** | : | |
| **Pennsylvania Department of Corrections;** | : | |
| **ROBERT MEYERS, Superintendent,** | : | |
| **State Correctional Institution at Rockview;** | : | |
| **WEXFORD HEALTH SOURCES, INC.,** | : | |
| **Health Care provider at the State Correctional** | : | |
| **Institution at Rockview;** | : | |
| **JOHN SYMONS, M.D., Medical Director,** | : | |
| **State Correctional Institution at Rockview;** | : | |
| **LARRY LIDGETT, Health Care Administrator,** | : | |
| **State Correctional Institution at Rockview,** | : | |
| | : | |
| **Defendants** | : | **JURY TRIAL DEMANDED** |

## COMPLAINT

I. Preliminary Statement

     This is a civil rights complaint filed by the Plaintiff, William Clark, *pro se,* a state prisoner,

seeking damages, a declaratory judgment, and a permanent injunction, under 42 U.S.C. §1983, for

deliberate indifference to his serious medical needs, in violation of the Eighth Amendment to the

United States Constitution.  Plaintiff also alleges the torts of medical malpractice and negligence.

II. Jurisdiction

     1. The Court has jurisdiction over the Plaintiff's claim of violations of federal constitutional

rights under 42 U.S.C. §§ 1331(a) and 1343, and supplemental jurisdiction under 28 U.S.C. §1367.

III. Parties

2.  The Plaintiff, William Clark, is a state prisoner presently incarcerated at the State Correctional Institution at Rockview (hereafter "SCI-Rockview"), Box A, Bellefonte, PA 16823.

3.  Defendant Martin Horn, is the secretary of the Pennsylvania Department of Corrections (hereafter "Department"), and he is ultimately responsible for the operation and management of all Pennsylvania State Prisons, including the supervision and training of all Department and SCI-Rockview employees, whether employed by the Department of under contract to provide a service for the Department.  He is sued in his official and individual capacities.

4.  Defendant Robert W. Meyers, is the Superintendent at SCI-Rockview and is responsible for the daily operation and management of that facility, and for the supervision and training of all employees, whether employed by the Department, by SCI-Rockview, or under contract to provide a service for the Department or SCI-Rockview.  He is sued in his official and individual capacities.

5.  Defendant Wexford Health Sources, Inc. (hereafter "Wexford"), is an independent health care provider presently under contract with the Department to provide health care services to inmates at SCI-Rockview.  Defendant Wexford is sued in its official and individual capacities.

6.  Defendant John Symons, M.D., is the Medical Director at SCI-Rockview, is employed by Defendant Wexford, and is responsible for providing or overseeing the provision of adequate medical care to all SCI-Rockview inmates, and for the supervision of other medical personnel at SCI-Rockview.  He is sued in his official and individual capacities.

7.  Defendant Larry Lidgett, is the Health Care Administrator at SCI-Rockview, and is responsible for providing or overseeing the provision of adequate medical care to all SCI-Rockview inmates, and for the supervision and training of other medical personnel at SCI-Rockview.  He is sued in his official and individual capacities.

2

IV. Facts

8.  On or about November of 1984, Plaintiff was committed to the State Correctional Institution at Graterford (hereafter "SCI-Graterford), for a term of imprisonment of 5 to 15 years.

9.  Plaintiff was released from SCI-Graterford to a Community Correctional Center at some point in 1989, and thereafter made parole.

10.  On or about early 1992, Plaintiff was recommitted to SCI-Graterford as a technical parole violator.

11.  Upon information and belief, at some point shortly after the aforesaid recommitment, Plaintiff's blood was drawn by the SCI-Graterford medical department for unknown reasons.

12.  Upon information and belief, the above ¶11 noted blood test indicated that Plaintiff had the hepatitis C virus (hereafter "HCV"), and a notation as to such was made in his medical records.

13.  HCV is a communicable and potentially deadly liver disease, and any person infected with HCV has a serious medical need.

14.  At no time in 1992 was Plaintiff advised or cautioned by Department health care workers regarding his having HCV.

15.  On or about late 1992, Plaintiff was re-paroled and again released from SCI-Graterford.

16.  Failure to inform Plaintiff that he had HCV prior to his release from prison in 1992, preventing him from receiving treatment in his community, causing him to damage his liver further through activities harmful to those with HCV, and precluding notice so that he would not accidently spread the HCV to others, constitutes deliberate indifference to Plaintiff's serious medical needs.

17.  In 1992, the medication Interferon was available to treat HCV, and the Centers for Disease Control has determined that Interferon was and still is the only viable treatment for HCV.

18.  At no time in 1992 did the Department evaluate Plaintiff for or provided him with

treatment for his HCV.

19.  Failure to provide Plaintiff with treatment for his HCV in 1992, constitutes deliberate indifference to Plaintiff's serious medical needs.

20.  On or about 1995, Plaintiff was again returned to prison, and was released again in April of 1996.

21.  At no time in 1995 or 1996 was Plaintiff advised or cautioned by Department health care workers regarding his having HCV.

22.  Failure to inform Plaintiff that he had HCV prior to his release from prison in 1996, preventing him from receiving treatment in his community, causing him to damage his liver further through activities harmful to those with HCV, and precluding notice so that he would not accidently spread the HCV to others, constitutes deliberate indifference to Plaintiff's serious medical needs.

23.  At no time in 1995 or 1996 did the Department evaluate Plaintiff for or provided him with treatment for his HCV.

24.  Failure to provide Plaintiff with treatment for his HCV in 1995 and 1996, constitutes deliberate indifference to Plaintiff's serious medical needs.

25.  On or about late 1996, Plaintiff was again returned to prison, and at some point thereafter he was transferred to SCI-Rockview.

26.  At no time between late 1996 and October of 1999, was Plaintiff advised of or cautioned by Department health care workers as to his having HCV.

27.  Failure to inform Plaintiff that he had HCV while incarcerated between late 1996 and October of 1999, prevented him from seeking treatment from prison doctors, caused him to damage his liver further through activities harmful to those with HCV, and precluded notice so that he would not accidently spread the HCV to other inmates, and this constitutes deliberate indifference to

4

Plaintiff's serious medical needs.

28. At no time between late 1996 and October of 1999, did the Department evaluate Plaintiff for or provided him with treatment for his HCV.

29. Failure to provide Plaintiff with treatment for his HCV between late 1996 and October of 1999, constitutes deliberate indifference to Plaintiff's serious medical needs.

30. On or about October of 1999, Plaintiff requested of the SCI-Rockview medical department that he be given an AIDS and hepatitis test.

31. On or about October of 1999, after the aforesaid AIDS and hepatitis tests, Plaintiff was informed by SCI-Rockview medical staff that he currently had active HCV, and unbeknownst to Plaintiff at that time, at some point prior to October of 1999, he also had both hepatitis A and B.

32. In October of 1999, Plaintiff was shown Department medical records from his previous incarcerations, and Plaintiff observed that in these records the HCV had been documented as early as 1992, yet Plaintiff was not told of the HCV prior to this point.

33. In October of 1999, Plaintiff inquired about treatment for his HCV, and was advised by SCI-Rockview medical personnel that, despite the large number of HCV positive inmates currently in the state prison system, the Department did not at that time have a treatment protocol for HCV, and, therefore, Plaintiff would not be receiving Interferon or any other medications to treat his HCV.

34. Failure by both the Department and SCI-Rockview, between 1992 and 1999, to have in place a treatment protocol for HCV, prevented Plaintiff from obtaining treatment for his HCV during his incarcerations during those years, caused him to damage his liver further through activities harmful to those with HCV, and precluded notice so that he would not accidently spread the HCV to others, and this constitutes deliberate indifference to Plaintiff's serious medical needs.

35. The Centers for Disease Control has determined that people who have tested positive

for HCV should have a liver biopsy to determine the exact HCV genotype, to determine the feasibility of treatment, and to assess the amount and extent of liver damage.

36. Between October of 1999 and September of 2000, Plaintiff made several verbal and written requests to Defendants Horn, Meyers, Wexford, Symons, and Lidgett, that he be provided with a liver biopsy and be treated for his HCV, and said requests were refused.

37. In December of 1999, through a formal and complete Department grievance process, Plaintiff requested that Defendant Horn, Meyers, Wexford, Symons, and Lidgett, provide him with a liver biopsy and treatment for his HCV, and said requests were refused.

38. On September 15, 2000, with at least eight (8) years having passed since the Department became aware of Plaintiff's HCV, Plaintiff began receiving Interferon to potentially clear the virus.

39. The Centers for Disease Control has determined that early detection and treatment of HCV with Interferon is the only proper course for HCV patients, and that early treatment increases the success rate of clearing the virus and for minimizing damage to the liver.

40. Failure by the Defendants to treat Plaintiff's HCV at any point prior to September of 2000, lessening the effectiveness of the treatment and allowing ongoing damage to occur to Plaintiff's liver, constitutes deliberate indifference to Plaintiff's serious medical needs.

41. The Centers for Disease Control has determined that those with very advanced HCV and/or cirrhosis of the liver caused by HCV, which is a diagnosis that can only be made through a liver biopsy, should not be treated with Interferon, as said treatment would likely be ineffective and could potentially cause additional harm.

42. Failure to provide Plaintiff with a proper diagnosis prior to his beginning the prescribed HCV treatment, putting Plaintiff at risk of further harm from the very toxic Interferon, constitutes medical malpractice and negligence under Pennsylvania law, and also constitutes deliberate

6

indifference to Plaintiff's serious medical needs.

43.  Plaintiff has exhausted all Department Administrative remedies provided by the Department, and this Court has jurisdiction pursuant to 42 U.S.C. §1997e.

V. Causes of Action

44.  Defendant Horn was deliberately indifferent to Plaintiff's serious medical needs in that, between 1992 and 1999, he failed to notify or failed to have in place a notification protocol necessary to insure that Plaintiff was informed that he had HCV, which prevented Plaintiff from seeking medical care in his community for the HCV, from making the lifestyle changes necessary to minimize the damage to his liver, and from taking cautionary steps so as not to spread the HCV to others in his community.

45.  Defendant Horn was deliberately indifferent to Plaintiff's serious medical needs in that, between 1992 and August of 1999, he failed to have in place an HCV treatment protocol, preventing Plaintiff from receiving HCV treatment during his incarcerations, which prevented Plaintiff from being able to either clear the virus or minimize the damage to his liver.

46.  Defendant Horn was deliberately indifferent to Plaintiff's serious medical needs and negligent in that, between 1992 and March of 2001, he failed to have in place an HCV treatment protocol that would require that Plaintiff receive a liver biopsy for a proper diagnosis prior to his receiving HCV treatment with Interferon, so as to insure said treatment would be effective and/or not harmful to Plaintiff.

47.  Defendant Meyers was deliberately indifferent to Plaintiff's serious medical needs in that, during Plaintiff's incarcerations at SCI-Rockview between 1992 and 1999, he failed to notify or failed to have in place a notification protocol necessary to insure that Plaintiff was informed that he had HCV, which prevented Plaintiff from seeking medical care in his community for the HCV,

from making the lifestyle changes necessary to minimize the damage to his liver, and from taking cautionary steps so as not to spread the HCV to others in his community.

48. Defendant Meyers was deliberately indifferent to Plaintiff's serious medical needs in that, during Plaintiff's incarcerations at SCI-Rockview between 1992 and August of 1999, he failed to have in place an HCV treatment protocol, preventing Plaintiff from receiving HCV treatment during his incarcerations, which prevented Plaintiff from being able to either clear the virus or minimize the damage to his liver.

49. Defendant Meyers was deliberately indifferent to Plaintiff's serious medical needs and negligent in that, during Plaintiff's incarcerations at SCI-Rockview between 1992 and March of 2001, he failed to have in place an HCV treatment protocol that would require that Plaintiff receive a liver biopsy for a proper diagnosis prior to his receiving HCV treatment with Interferon, so as to insure said treatment would be effective and/or not harmful to Plaintiff.

50. Defendant Wexford was deliberately indifferent to Plaintiff's serious medical needs in that, during Plaintiff's incarcerations at SCI-Rockview between September of 1997 and October of 1999, they failed to notify or failed to have in place a notification protocol necessary to insure that Plaintiff was informed that he had HCV, which prevented Plaintiff from seeking medical care in his community for the HCV, from making the lifestyle changes necessary to minimize the damage to his liver, and from taking cautionary steps so as not to spread the HCV to others in his community.

51. Defendant Wexford was deliberately indifferent to Plaintiff's serious medical needs in that, during Plaintiff's incarcerations at SCI-Rockview between September of 1997 and August of 1999, they failed to have in place an HCV treatment protocol, preventing Plaintiff from receiving HCV treatment during his incarcerations, which prevented Plaintiff from being able to either clear the virus or minimize the damage to his liver.

52. Defendant Wexford was deliberately indifferent to Plaintiff's serious medical needs and negligent in that, during Plaintiff's incarcerations at SCI-Rockview between September of 1997 and March of 2001, they failed to have in place an HCV treatment protocol that would require that Plaintiff receive a liver biopsy for a proper diagnosis prior to his receiving HCV treatment with Interferon, so as to insure said treatment would be effective and/or not harmful to Plaintiff.

53. Defendant Symons was deliberately indifferent to Plaintiff's serious medical needs in that, during Plaintiff's incarcerations at SCI-Rockview between September of 1997 and October of 1999, he failed to notify or failed to have in place a notification protocol necessary to insure that Plaintiff was informed that he had HCV, which prevented Plaintiff from seeking medical care in his community for the HCV, from making the lifestyle changes necessary to minimize the damage to his liver, and from taking cautionary steps so as not to spread the HCV to others in his community.

54. Defendant Symons was deliberately indifferent to Plaintiff's serious medical needs in that, during Plaintiff's incarcerations at SCI-Rockview between September of 1997 and August of 1999, he failed to have in place an HCV treatment protocol, preventing Plaintiff from receiving HCV treatment during his incarcerations, which prevented Plaintiff from being able to either clear the virus or minimize the damage to his liver.

55. Defendant Symons was deliberately indifferent to Plaintiff's serious medical needs and negligent in that, during Plaintiff's incarcerations at SCI-Rockview between September of 1997 and March of 2001, he failed to have in place an HCV treatment protocol that would require that Plaintiff receive a liver biopsy for a proper diagnosis prior to his receiving HCV treatment with Interferon, so as to insure said treatment would be effective and/or not harmful to Plaintiff.

56. Defendant Lidgett was deliberately indifferent to Plaintiff's serious medical needs in that, during Plaintiff's incarcerations at SCI-Rockview between 1992 and 1999, he failed to notify

or failed to have in place a notification protocol necessary to insure that Plaintiff was informed that he had HCV, which prevented Plaintiff from seeking medical care in his community for the HCV, from making the lifestyle changes necessary to minimize the damage to his liver, and from taking cautionary steps so as not to spread the HCV to others in his community.

57. Defendant Lidgett was deliberately indifferent to Plaintiff's serious medical needs in that, during Plaintiff's incarcerations at SCI-Rockview between 1992 and August of 1999, he failed to have in place an HCV treatment protocol, preventing Plaintiff from receiving HCV treatment during his incarcerations, which prevented Plaintiff from being able to either clear the virus or minimize the damage to his liver.

58. Defendant Lidgett was deliberately indifferent to Plaintiff's serious medical needs and negligent in that, during Plaintiff's incarcerations at SCI-Rockview between 1992 and March of 2001, he failed to have in place an HCV treatment protocol that would require that Plaintiff receive a liver biopsy for a proper diagnosis prior to his receiving HCV treatment with Interferon, so as to insure said treatment would be effective and/or not harmful to Plaintiff.

## VI. Relief

WHEREFORE, Plaintiff respectfully requests this Honorable Court grant the following relief:

A. Issue a declaratory judgment that each of the Defendants named in this Complaint were deliberately indifferent to Plaintiff's serious medical needs with regards to his HCV.

B. Issue an injunction ordering that:

1. Plaintiff receive a liver biopsy for proper diagnosis; and

2. Plaintiff receive an independent medical examination to determine if he was harmed by the HCV treatment he received by the Defendants without a proper diagnosis via liver biopsy.

10

C.  Award compensatory and punitive damages jointly and severally against all Defendants

in amount to be decided by a jury.

D.  Award costs and any attorney fees associated with this action.

E.  Grant such other relief as the Court deems appropriate.


Respectfully submitted,


William Clark, *pro se*
Box A - AY-5585
Bellefonte, PA 16823


Date: 4/23/01 , 2001

11