# ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FILED

MAR 25 2002

PER _____
HARRISBURG, PA  DEPUTY CLERK

WILLIAM CLARK,

    Plaintiff,

    v.

LARRY LIDGETT, et. al.,

    Defendants.

Civil Action No. 01-CV-0764

(Judge William W. Caldwell)

## CORRECTIONS DEFENDANTS' BRIEF IN SUPPORT TO THEIR MOTION FOR A PROTECTIVE ORDER

### STATEMENT OF THE CASE

**A.    Identity of the Parties and Statement of Claim**

Plaintiff William Clark is an inmate currently incarcerated at the State Correctional Institution at Rockview ("SCI-Rockview").[1] The Department of Corrections employees named as Defendants ("Corrections Defendants") are: (1) former Secretary of the Department, Martin Horn; (2) SCI-Rockview Superintendent, Robert Meyers; and (3) former Corrections Health Care Administrator, Larry Lidgett.[2] Additionally, Clark named as defendants the following that are represented in this action by attorney James D. Young: (1)

---

[1]    See Complaint (doc. 1), ¶ 2.
[2]    See Complaint, ¶¶ 3,4, 7.

Wexford Health Sources, Inc. ("Wexford"); and (2) Wexford Medical Director, Dr. John Symons.[3]  Clark is suing the Defendants in their official and individual capacities.[4]

This is a 42 U.S.C. §1983 *pro se* action alleging deliberate indifference to the treatment of Clark's Hepatitis C ("HCV") condition in violation of his Eighth and Fourteenth Amendment rights to the United States Constitution.[5]  Clark also has pendent state claims of medical malpractice and negligence.[6]  Clark seeks declaratory and injunctive relief, as well as, compensatory and punitive damages.[7]

## B.    Relevant Procedural History

Clark filed his Complaint on May 21, 2001.[8]  All Defendants waived service of summons on August 2, 2001.[9]  On September 10, 2001, Defendants Wexford and Dr. Symons waived reply to the Complaint pursuant to 42 U.S.C. §1997(e).[10]  On September 14, 2001, the Corrections Defendants also waived reply to the Complaint.[11]  On January 2, 2002, Clark served the Corrections Defendants with: (1) a Request for Production of Documents directed to all Defendants; (2)

---

[3]     See Entry of Appearance (doc. 11).
[4]     See Complaint, ¶¶ 3-7.
[5]     See Complaint, ¶¶ 8-58.
[6]     See Complaint, p.1 "Preliminary Statement"
[7]     See Complaint, Relief Requested, pp. 10-11.
[8]     See Complaint (doc. 1).
[9]     See Waiver of Summons (doc. 12).
[10]    See Waiver of Reply to Complaint (doc. 13).
[11]    See Waiver of Reply to Complaint (doc. 14).

Interrogatories directed Defendant Lidgett; and (3) Interrogatories directed to Defendants Horn and Meyers.[12]  On February 4, 2002, the Corrections Defendants sought an enlargement of time to respond to Clark's aforementioned discovery requests.[13]

The Court, by Order dated February 8, 2002, granted the Corrections Defendants' Motion directing them to respond to Clark's discovery requests on or before March 21, 2002.[14]  On March 21, 2002, the Corrections Defendants served Clark with a response to his Request for Production of Documents.[15]  Today, simultaneously with their Motion for Summary Judgment, the Corrections Defendants file this Motion for a Protective Order pursuant to Fed.R.Civ.P. 26(c), and the Supporting Brief to the Motion in compliance with Pa.MDLR 7.5

## C.   Statement of Alleged Facts

In November 1984, Clark was committed to the State Correctional Institution at Graterford ("SCI-Graterford") for a term of imprisonment of five (5) to fifteen (15) years.[16]  Sometime in 1989, Clark was paroled from SCI-Graterford to a Community Corrections Center; however, in early 1992, Clark was

---

[12]     See Supporting Documents to the Corrections Defendants' Motion for a Protective Order ("Supporting Documents"), attached thereto respectively as Exhibit A, B, and C.

[13]     See Motion for an Enlargement of Time (doc. 15).

[14]     See Order (doc. 16).

[15]     See Defendants' Response to Plaintiff's Request for Production of Documents, attached to the Supporting Documents as Exhibit D.

[16]     See Complaint, ¶ 8.

recommitted to SCI-Graterford as a technical parole violator.[17]  Clark avers that

upon his return to SCI-Graterford in 1992, a blood sample was drawn, and a

notation was made in his medical record that was infected with HCV, yet he was

not advised or cautioned by "Department health care workers" of his positive

status.[18]  Clark claims that in 1992, the medication Interferon was available to treat

his HCV condition, but at that time the Department of Corrections evaluate him for

treatment.[19]  Clark was re-paroled in late 1992.[20]

Sometime in 1995 Clark was "returned to prison" but was released in April

1996, and once again, alleges that he was not "advised or cautioned by Department

health care workers regarding his having HCV.[21]  Clark alleges that the failure to

inform him of his HCV prevented him "from receiving treatment in his

community, causing him to damage his liver further through activities harmful to

those with HCV, and precluding notice so that he would not accidentally spread

HCV to others . . . ."[22]

In late 1996, Clark was re-incarcerated and transferred to SCI-Rockview.[23]

Clark avers that "[a]t no time between late 1996 and October 1999, was he advised

---

[17]    See Complaint, ¶¶ 9-10.
[18]    See Complaint, ¶¶ 10-14.
[19]    See Complaint, ¶ 17, 19.
[20]    See Complaint, ¶ 15.
[21]    See Complaint, ¶¶ 20-23.
[22]    See Complaint, ¶ 22.
[23]    See Complaint, ¶ 25.

of or cautioned by the Department health care workers as to his having HCV."[24] As noted in the paragraph above, Clark avers this lack of knowledge of his HCV resulted in not being able to pursue treatment, further damage to his liver, and he could not prevent the accidental spread of HCV to others.[25]

In October 1999, Clark states that he requested the SCI-Rockview medical department to give him a AIDS and HCV test; after the test, Clark was informed that he was HCV positive, and at some point prior to October 1999, that he also had both hepatitis A and B.[26] Further, Clark avers that he first learned through examination of Department of Correction's medical records that he was infected with HCV as early as 1992, and claims that he was never informed of this prior to October 1999.[27]

Soon thereafter, Clark inquired about treatment for his HCV, and avers that he was told that "despite the large number of HCV positive inmates currently in the state prison system, the Department did not at that time have a treatment protocol for HCV, and, therefore, Plaintiff would not be receiving Interferon or any other medication to treat his HCV."[28] Clark claims that the failure of the Department and SCI-Rockview, between 1992 and 1999, in not having a HCV

---

[24]    See Complaint, ¶ 26, 28.
[25]    See Complaint, ¶ 27.
[26]    See Complaint, ¶¶ 30, 31.
[27]    See Complaint, ¶ 32.
[28]    See Complaint, ¶ 33.

treatment protocol in place, resulted in his lack of being able to pursue treatment,

damage to his liver, and preventing the accidental spread of HCV to others.[29]

Clark avers that "[t]he Centers for Disease Control has determined that

people who have tested positive for HCV should have a liver biopsy to determine

the exact HCV genotype, to determine the feasibility of treatment, and to assess the

amount and extent of liver damage."[30]  Clark complains that between October 1999

and September 2000, despite making "several verbal and written requests to

Defendants Horn, Meyers, Wexford, Symons, and Lidgett that he be provided with

a liver biopsy and be treated for his HCV . . . " the requests were refused.[31]  Clark

also avers that he exhausted his administrative remedies through the Department's

grievance process but his requests were once again refused.[32]

Clark avers that on September 15, 2000, eight years after the Department

first became aware of his HCV, he began receiving treatment through the drug

Interferon to potentially clear the virus.[33]  However, Clark avers that the Center for

Disease Control has determined that early detection and treatment in the only

proper course for HCV, and that early treatment increases the success rate for

---

[29]    See Complaint, ¶ 34.
[30]    See Complaint, ¶ 35.
[31]    See Complaint, ¶ 36.
[32]    See Complaint, ¶ 37, 43.
[33]    See Complaint, ¶ 38.

clearing the virus and minimizing damage to the liver.[34]  Clark submits that the failure of the Defendants to treat his HCV earlier allowed his liver to be further damaged.  Additionally, Clark argues that following Center for Disease Control recommendations, he should have been given a liver biopsy, but not treated with the drug Interferon.[35]

Overall, Clark claims that the Corrections Defendants were deliberately indifferent to his serious medical needs because:  (1) between 1992 and 1999, they failed to notify or failed to have in place a notification protocol to ensure the Clark was informed he had HCV; (2) between 1992 and 1999, they failed to have in place a HCV treatment protocol; and (3) between 1992 and March 2001, they failed to have in place a HCV protocol that would require Clark to receive a liver biopsy for proper diagnosis prior to being treated with the drug Interferon.[36]  Similarly, Clark makes the same allegations against Wexford and Dr. Symons.[37]

---

[34]    See Complaint, ¶ 39.
[35]    See Complaint, ¶¶ 39-42.
[36]    See Complaint, ¶¶ 44-46, 56-58.
[37]    See Complaint, ¶¶ 50-55.

## STATEMENT OF QUESTION INVOLVED

**SHOULD THE COURT DEFER THE CORRECTIONS DEFENDANTS' OBLIGATION TO RESPOND TO PLAINTIFF'S DISCOVERY REQUESTS UNTIL THE COURT ISSUES A DECISION ON THEIR MOTION FOR SUMMARY JUDGMENT?**

**SUGGESTED ANSWER:      YES**

## ARGUMENT

### THE COURT SHOULD DEFER THE CORRECTIONS DEFENDANTS' OBLIGATION TO RESPOND TO PLAINTIFF'S DISCOVERY REQUESTS UNTIL THE COURT ISSUES A DECISION ON THEIR MOTION FOR SUMMARY JUDGMENT.

The Federal Rules of Civil Procedure provide that, upon proper motion and for good cause shown, a court may make any order "which justice requires to protect a person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."[38] Where a motion for summary judgment is pending, a district court is "well within its discretion" to grant a stay of discovery pending determination of the defendants' motion for summary judgment.[39]

Factors considered to be "good cause" in granting a motion for a stay pending the disposition of a motion for summary judgment include: (1) if the motion could dispose of many of the issues in the case, if not the entire action; (2) if the moving party in summary judgment appears to have a substantial argument for dismissal; (3) whether proceeding with discovery while the motion is pending

---

[38]    Fed.R.Civ.P. 26(c).  See also Harris v. Norvell, No. 92-6185 , 1992 WL 376119*1,4 (10th Cir. Dec. 11, 1992)(finding that district court did not abuse its discretion in issuing a protective order for defendants while summary judgment was pending because inmate plaintiff's further discovery would not have altered the outcome of the case.)(citiation omitted), attached hereto pursuant to Pa.MDLR 7.8(a) as Exhibit 1.

[39]    See Rivera v. Heyman, No. 96 CIV 4489(PKL), 1997 WL 86394, at *1 (S.D.N.Y. Feb. 27, 1997)(citing Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 105 (2d Cir. 1981)(footnote omitted), attached hereto pursuant to Pa.MDLR 7.8(a) as Exhibit 2.

would waste the parties' resources; (4) whether proceeding with the discovery

constitutes an undue burden on the defendants; and (5) the length of the requested

stay.[40] Here, based on the good-cause factors, the Corrections Defendants argue

that they should be relieved of their obligation to respond to Clark's interrogatories

directed to them pending the disposition of their Motion for Summary Judgment.[41]

First, as noted in the "Relevant Procedural History", *supra* p. 3, the

Corrections Defendants have filed a Motion for Summary Judgment that, if

granted, would result in their dismissal from this action. At this juncture, the

Corrections Defendants, through their undersigned attorney, are preparing the

statement of material facts, and supporting brief to the Motion that will be filed on

or before April 8, 2002. Counsel submits that the outcome of this Motion could

substantially effect the scope of the pending discovery requests.

Second, as will be presented in the Supporting Brief to the Motion for

Summary Judgment, the Corrections Defendants will argue that there are no

genuine disputes of material fact, and that: (1) Clark's action should be dismissed

against the Corrections Defendants due to his failure to state a viable deliberate

---

[40]    Id. See also Moldea v. New York Times Company, 137 F.R.D. 1, 2 (D.D.C. 1990), attached hereto for the convenience of the Court and Plaintiff (given that it is a Federal Rules Decision) as Exhibit 3.

[41]    See generally Supporting Documents to the Corrections Defendants' Motion for a Protective Order, Interrogatories to Defendant Lidgett, and Interrogatories to Defendants Horn and Meyers, attached thereto, pursuant to PaMDLR 5.1(f), respectively as Exhibits B and C.

indifference claims against them upon which relief may be granted; (2) the Eleventh Amendment prevents Clark from suing the Corrections Defendants for damages in their official capacities; and (3) Clark's claims against the Corrections Defendants are barred by the defense of qualified immunity.  Counsel for the Corrections Defendants submit that all three of the aforementioned arguments present this Honorable Court with substantial grounds for dismissal of any or all the claims against them.  Accordingly, there is good-cause to delay the Corrections Defendants' obligation to respond to the requested interrogatories pending disposition of the Motion for Summary Judgment.

Third, the Corrections Defendants have responded to Clark's Request for Production of Documents, thus providing him with the opportunity to examine and inspect request slips and grievance that he has filed with the Department of Corrections; final versions of the Department's HCV Protocol; medical journal articles, and HCV education materials.  Further, while they submit that it is not relevant for purposes of the pending Motion, the Corrections Defendants are supplying Clark with names and professional titles of personnel involved in developing the Department's HCV Protocol.  Finally, the Corrections Defendants, through the Department, are allowing Clark to inspect and examine his medical record with the exception of psychological reports, suicide risk indicators, his cumulative adjustment record, and psychiatric and psychological referral forms

based on the Executive Document Privilege.[42]  Accordingly, Clark will have been provided access to materials for examination, inspection, and copying at his expense (specifically, his medical file) so that he can respond to the relevant factual issues in the Corrections Defendants' Motion for Summary Judgment, as well as, the Statement of Material Facts.

Finally, counsel submits that the stay of discovery would be brief and is only necessary pending the duration of the Motion for Summary Judgment.  If this Court denies the Motion for Summary Judgment, the Corrections Defendants could respond to the discovery requests without substantially interfering with any future trial date.  More likely, if the Motion for Summary Judgment is granted, then this issue will be moot, thus avoiding the waste of government and Court resources in addressing what may be unnecessary discovery disputes.[43]  Therefore, pending the disposition of the Corrections Defendants' Motion for Summary Judgment, they respectfully request a stay of discovery.

---

[42]    See Com. Ex. Rel. Unified Judicial System v. Vartan, 733 A.2d 1258 (Pa. 199); see also Kerr v. United States Dist. Ct. for N. Dist. Of Cal., 426 U.S. 394, 405 (1976).

[43]    See Chagnon v. Bell, 642 F.2d 1248, 1266 (D.C. Cir. 1980), cert denied, 453 U.S. 911 (1981) (finding that  "uncontrolled discovery in the course of insubstantial lawsuits can be a form of harassment that imposes an undue burden on the time and resources of public officials and their agencies.")

## CONCLUSION

**WHEREFORE**, for the above-stated reasons, this Honorable Court should issue a protective order that would stay the Corrections Defendants' obligation to respond to Clarks' pending (and future) discovery requests until the Court issues a decision on their Motion for Summary Judgment.

Respectfully submitted,
Office of General Counsel

BY: _____

John J. Talaber
Assistant Counsel
Pa. Department of Corrections
55 Utley Drive
Camp Hill, PA 17011
(717) 731-0444
Attorney Id. No. 83279

Dated:  March 25, 2002

# EXHIBIT - 1

982 F.2d 528 (Table)
**Unpublished Disposition**

**(Cite as: 982 F.2d 528, 1992 WL 376119 (10th Cir.(Okla.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.

Charles C. HARRIS, Plaintiff-Appellant,
v.
Marc NORVELL, Sergeant Bailey, and John Doe, Defendants-Appellees.

No. 92-6185.

Dec. 11, 1992.

W.D.Okl., No. 91-CV-1391.

W.D.Okl.

AFFIRMED.

Before SEYMOUR, STEPHEN H. ANDERSON and BALDOCK, Circuit Judges.

ORDER AND JUDGMENT [FN*]

STEPHEN H. ANDERSON, Circuit Judge.

**\*\*1** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

*Pro se* plaintiff Charles C. Harris sued officials of the Oklahoma **Department of Corrections** (collectively referred to as "defendants") under 42 U.S.C. § 1983, claiming his constitutional rights were violated with regard to the handling of his property when he was transferred to Ouachita Correctional Center from the Kate Barnard Correctional Center in July 1991. Specifically, he claims that he was not allowed to witness the inventory of his property prior to the transfer; that some of his property was either improperly sent to his designee, retained at the Kate Barnard Correctional Center, or destroyed; that some of the material sent to his designee, retained, or destroyed, included legal papers, and because he did not receive those papers, he was effectively denied access to the courts; and that prison officials damaged his color television set in retaliation for bringing this suit.

The U.S. Magistrate Judge ordered the defendants to submit a special report, *Martinez v. Aaron*, 570 F.2d 317 (10th Cir.1978) (per curiam), which they filed simultaneously with a motion to dismiss. In their motion, defendants contended that (1) dismissal was appropriate because they were entitled to qualified immunity; (2) that any claim against them in their official capacities would not lie under § 1983; and (3) that Harris has not suffered an unconstitutional deprivation of his property. The Magistrate Judge notified Harris that the motion would be treated as one for summary judgment and gave him an opportunity to respond. In a subsequent order denying Harris' motion for discovery, the Magistrate Judge advised Harris that he was authorized to proceed with discovery without an order from the court, and that should Harris need additional time to complete relevant discovery, the court would entertain such a motion. The defendants then filed a motion for a **protective order**, claiming that qualified immunity shields public officials from the burdens of litigation, including discovery. Following Harris' response to defendants' motions, the Magistrate Judge recommended that the district court grant summary judgment in favor of defendants. The district court adopted the Magistrate Judge's Report and Recommendation, and dismissed Harris' complaint. On appeal, Harris reargues issues presented below and also claims he was improperly denied additional discovery, an evidentiary hearing and appointment of counsel. We affirm. Harris has failed to show the existence of any genuine issue of material fact. The dismissal was appropriate for failure to identify a constitutional violation.

## DISCUSSION

We review *de novo* the district court's grant of summary judgment, applying the same standard as the trial court employed under Fed.R.Civ.P. 56(c). *Smith*

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

982 F.2d 528 (Table)

(Cite as: 982 F.2d 528, 1992 WL 376119, **1 (10th Cir.(Okla.)))

*v. Maschner*, 899 F.2d 940, 942 (10th Cir.1990). We examine the record to determine if any genuine issue of material fact was in dispute; if not, we must decide if the district court correctly applied the substantive law. *Franks v. Nimmo*, 796 F.2d 1230, 1235 (10th Cir.1986). In reviewing the district court's decision, "we construe all pleadings and documentary evidence liberally in favor of the party opposing the motion." *Id.*

**2 Harris first alleges that he was not allowed to witness the inventory of his property prior to his transfer to Ouachita Correctional Center ("OCC"). He does not identify any policy or regulation which creates a liberty interest in witnessing an inventory by virtue of mandatory language constraining official discretion. *See Hewitt v. Helms*, 459 U.S. 460, 471 (1982) (no liberty interest created in prison regulation unless its language is of an "unmistakably mandatory character"). The policy with respect to inventorying states as follows: "The inventory [of a transferring inmate's personal property] shall *normally* be completed in the presence of the inmate." Special Report, R.Vol. I, Doc. 16, Attachment E at 3 (emphasis added). This language does not, on its face, sufficiently constrain official discretion so as to create a liberty interest in witnessing the inventory of one's property. Even if it did, the record indicates, and Harris does not dispute, that while he was awaiting transfer to OCC, he was in restrictive housing because he had accumulated excessive security points. Special Report, R.Vol. I, Doc. 16, Attachment F. It was therefore not feasible to have Harris present during the inventory. Harris' security violations provided a valid reason for conducting the inventory in his absence, and prison officials were justified in treating this as other than a "normal" situation. In short, Harris fails to identify any constitutional right of which he was deprived.

Harris also claims that, subsequent to the inventory, some of his property was either "improperly detained" by unnamed prison officials or sent to his designee. He also suggests that some of his property may have been destroyed, but he does not attempt to develop that point. He does not allege that the deprivation was pursuant to any official policy.

Taking his claim on its face, it does nothing more than state that someone without authorization either negligently or intentionally detained or destroyed his property. However, neither the negligent nor the

unauthorized, intentional deprivation of property by a state employee gives rise to a due process violation if state law provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981); *see also Smith v. Maschner*, 899 F.2d at 943. The district court concluded, and we agree, that Oklahoma law provides Harris adequate post-deprivation remedies. *See, e.g.*, Okla.Stat. tit. 12, § 1571 (replevin); Okla.Stat. tit. 51, § 151-171 (Governmental Tort Claims Act). Accordingly, Harris has failed to identify any violation of his Fourteenth Amendment right to due process.

Harris next claims that when he was transferred to OCC, some of his legal papers were lost or destroyed, or sent to his designee, and that his resulting lack of immediate access to such materials deprived him of his right of access to the courts. A prison inmate's constitutional right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Moreover, prison officials may not affirmatively impede a prisoner's efforts to pursue a nonfrivolous legal claim. *Green v. Johnson*, No. 90-7062, 1992 WL 282079 at *5 (10th Cir. Oct. 16, 1992) (citing *Jackson v. Procunier*, 789 F.2d 307, 311 (5th Cir.1986)).

**3 The record shows that one box of Harris' miscellaneous papers was sent with him to OCC, and one box was packed to go to his designee. Special Report, R.Vol. I, Doc. 16, Attachments C and D. Harris does not specifically deny these facts; rather, he continues to make a general claim that some papers were lost. Harris' statements that he has been denied access to court are wholly conclusory. Although Harris identifies certain litigation in his response to defendants' motion to dismiss, he does not (a) identify particular documents; (b) show how the allegedly lost documents relate to the litigation; (c) assert any facts showing that his pursuit of any litigation identified by him was in any way affected by his lack of access to any particular document; or (d) claim any specific prejudice relating to the alleged loss. For example, he does not assert that any action has been dismissed or any filing disallowed as untimely. In short, he does not indicate *how* he has been "denied access" within

constitutional parameters. *Twyman v. Crisp*, 584 F.2d 352, 357-58 (10th Cir.1978). Thus, we agree with the district court that Harris has failed to establish the existence of a genuine issue of material fact or to even plead a constitutional claim with respect to his right of access to the courts allegations. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based").

Next, Harris argues that his color television set was damaged in retaliation for bringing this lawsuit. He does not identify any defendant by name, nor does he specify the circumstances under which the television set was damaged, nor does he indicate in what way the television set was damaged.

It is well established that prison officials may not retaliate when inmates take steps to secure their constitutional guarantees. *Smith v. Maschner*, 899 F.2d at 947. However, bare allegations of retaliation do not suffice: "it is imperative that plaintiff's pleading be factual and not conclusory.... [P]laintiffs must ... allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. DuBois*, 922 F.2d 560, 562 n. 1 (10th Cir.1990). Harris sets forth no facts to show that his television was damaged for retaliatory purposes, and he names no responsible party. Accordingly, his retaliation claim must also fail.

Finally, Harris asserts that the district court erred in denying his motion for discovery, in denying him an evidentiary hearing, and in denying his motion for appointment of counsel. He also claims that the court "used technicalities of court rules in favor of the defendants to prevent the plaintiff from showing facts...." Appellant's Brief at 1.

Discovery matters are within the broad discretion of the trial court, and we will not find an abuse of that discretion absent a showing of prejudicial error. *Green v. Johnson*, No. 90-7062, 1992 WL 282079 at *7 (10th Cir. Oct. 16, 1992). In his response to defendants' motion for **protective order**, Harris protested that he needed additional discovery from the correctional center's administrative files to show other occasions on which he and other inmates had been deprived of their property. The district court determined that such evidence not only would be irrelevant to this proceeding, but also would be unnecessary and unduly burdensome given Harris' failure to allege facts amounting to a constitutional violation. Because further discovery would not have altered the outcome of this case, we find that the district court did not abuse its discretion. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1985) (summary judgment should be granted where the evidence is so one-sided that one party must prevail).

**4 The record does not show that Harris requested an evidentiary hearing or moved for the appointment of counsel during the proceedings below. Harris raises these matters for the first time in his brief on appeal. Apparently, his argument is that the district court erred in not *sua sponte* granting an evidentiary hearing and appointing counsel. In both of these matters, the district court is afforded broad discretion. *See United States v. Gines*, 964 F.2d 972, 977 (10th Cir.1992) (standard of review for denial of evidentiary hearing is abuse of discretion); *Miller v. Glanz*, 948 F.2d 1562, 1572 (10th Cir.1991) (appointment of counsel within sound discretion of district court). On this record, the district court did not err in failing, on its own motion, to grant Harris an evidentiary hearing or to appoint counsel.

As to Harris' claim that use of the "technicalities of court rules" placed him at a disadvantage, we note that *pro se* appellants are subject to the same rules of procedure that govern other litigants. *Bradenburg v. Beaman*, 632 F.2d 120, 122 (10th Cir.1980).

The district court's grant of summary judgment in favor of defendants is AFFIRMED.

FN* This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3.

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

# EXHIBIT - 2

1997 WL 86394                                                    **Page 1**
(Cite as: 1997 WL 86394 (S.D.N.Y.))
**H**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

Amador RIVERA, Plaintiff,
v.
I. Michael HEYMAN, Secretary, Smithsonian
Institution; Luis A. Palau,* and
Edward G. Dolan, Defendants.

No. 96 Civ. 4489(PKL).

Feb. 27, 1997.

Gregory Antollino, New York City.

Martin J. Siegel, Assistant United States Attorney,
New York City.

*MEMORANDUM ORDER*

LEISURE, District Judge.

**\*1** The above-captioned matter is an action for
employment discrimination on the basis of disability
under the Vocational Rehabilitation Act of 1973, 28
U.S.C. § 710 *et seq.,* the New York State Human
Rights Law (the "NYSHRL"), N.Y. Exec. Law § 295
*et seq.,* and the New York City Human Rights Law
(the "NYCHRL"), Admin.    Code § 8-107;    for
unlawful employment retaliation under Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et
seq.,* the NYSHRL, and the NYCHRL;    and for
injuries under various common law theories. Plaintiff
claims that defendants discriminated against him on
the basis of the fact that he is infected with the
Human Immunodeficiency Virus ("HIV"), and
retaliated    against    him    for    opposing    such
discrimination.

Defendants intend to move for dismissal on the
grounds of sovereign immunity and failure to exhaust
administrative remedies under the Federal Tort
Claims Act, 28 U.S.C. § 1346.    Before the Court is
defendants' request for a stay of discovery pending
disposition of the motion.

DISCUSSION

The trial court has considerable discretion to control
the discovery process in cases before it.    **Rule 26(c)**
of the Federal Rules of Civil Procedure allow a
district court to stay part or all of the discovery

process for **good cause** shown.    For example, in
*Contemporary Mission, Inc. v. United States Postal
Serv.,* 648 F.2d 97, 105 (2d Cir.1981), the Court of
Appeals for the Second Circuit held that the district
court "acted well within its discretion" when it
granted a stay of discovery pending determination of
defendants' **motion for summary judgment.** [FN1]

> FN1.    Plaintiff seeks to distinguish the
> *Contemporary Mission* case by pointing out
> that it involved a pending motion for
> summary judgment whereas the instant
> action involves a pending motion for
> dismissal.    Plaintiff is correct that the
> onerous legal standard for dismissal makes
> such a motion difficult to obtain and thus
> arguably counsels against the granting of a
> stay pending decision.    However, another
> difference between a motion for summary
> judgment and one for dismissal points in
> the opposite direction.    A plaintiff denied
> discovery because of the filing of a
> summary judgment motion has a powerful
> argument that the stay could directly cause
> plaintiff to fail to meet its burden in
> opposing the summary judgment motion.
> In the case of a dismissal motion, evidence
> outside the pleadings is not considered.
> The plaintiff has no need for discovery to
> oppose the motion, and therefore this
> reason for denying a stay of discovery is
> absent.

Defendants are about to file a motion which could
well dispose of many of the issues in this case, if not
the entire action.    The Court cannot, of course,
predict the outcome of the motion until it is brought
and briefed by the parties, but it is enough to note that
defendants appear at this stage to have a substantial
argument for dismissal.    Given that disposition of the
dismissal motion may significantly narrow, if not
eliminate, the issues remaining in the case,
proceeding with discovery while the motion is
pending would waste the parties' resources and would
constitute an undue burden on defendants.

Plaintiff's counsel argues principally that:    (1) a stay
of discovery will unduly delay this action;    and (2)
the scope of discovery will not be significantly
narrowed because the Title VII retaliation claims--as
to which defendants do not have a sovereign
immunity defense--will require essentially the same
discovery as the non-Title VII claims.    Neither
argument is convincing.    Plaintiff bases his first
argument on his contention that defendants' motion
lacks merit.    If the Court were convinced that

1997 WL 86394
(Cite as: 1997 WL 86394, *1 (S.D.N.Y.))

defendant had a minimal probability of success on its dispositive motion or that such a motion was merely a delay tactic, then a stay of discovery would be denied. However, the motion, upon preliminary examination, appears to be substantially grounded. This action was commenced in June of 1996. A stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue.

*2 As to plaintiff's second argument, defendants' apparent position with regard to the Title VII retaliation claims is not that dismissal is warranted on sovereign immunity grounds, but rather on the grounds that plaintiff's claims are not covered under Title VII. Indeed, plaintiff's first amended complaint alleges that defendants retaliated against him on the basis of his filing of discrimination charges in December of 1993. *See* First Am. Compl. ¶ 90. Those charges related to plaintiff's claim that he was discriminated against on the basis of his HIV status. *See id.* ¶¶ 16-24. Title VII's anti-retaliation provision covers claims of retaliation on the basis of activities protected *under Title VII,* including the filing of charges of discrimination on the basis of race or gender. *See* 42 U.S.C. § 2000e- 3(a) (1994). Filing charges of *disability* discrimination does not appear to constitute an activity protected under Title VII. Thus, contrary to plaintiff's position, the Title VII cause of action may be subject to dismissal as well.

## CONCLUSION

The requested stay of discovery pending disposition of the motion for dismissal is HEREBY GRANTED. The parties are HEREBY ORDERED to comply with the following briefing schedule for the motion to dismiss: (1) defendants shall file the motion on or before March 3, 1997; (2) plaintiff shall file his opposition on or before March 24, 1997; and (3) defendants shall file their reply, if any, on or before March 31 1997. Failure by defendants to comply with the above deadlines, absent an extension by consent of the parties and endorsed by this Court in advance of the due date, will result in lifting of the stay.

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

# EXHIBIT - 3

137 F.R.D. 1
18 Media L. Rep. 1717
**(Cite as: 137 F.R.D. 1)**
**H**

Page 3

United States District Court,
District of Columbia.

Dan E. MOLDEA, Plaintiff,
v.
The NEW YORK TIMES COMPANY, Defendant.

Civ. A. No. 90-2053.

Dec. 19, 1990.

Author brought action against newspaper based on newspaper's publication of allegedly defamatory book review. On newspaper's motion for stay of discovery, the District Court, John Garrett Penn, J., held that newspaper was entitled to stay of all discovery pending ruling on its summary judgment motion.

Motion granted.

West Headnotes

Federal Civil Procedure ⬤══2553
170Ak2553

Newspaper was entitled to stay of all discovery pending ruling on its summary judgment motion in defamation action based on its publication of allegedly defamatory book review; action raised significant First Amendment issues, and author who brought action failed to show that determination of whether phrases contained in book review were sufficiently factual to be susceptible of being true or false requires scrutiny beyond challenged publication. Fed.Rules Civ.Proc.Rules 26(c), 56(f), 28 U.S.C.A.; U.S.C.A. Const.Amend. 1.

*1 Roger Charles Simmons, Frederick, Md., for plaintiff.

Bruce W. Sanford, Baker & Hostetler, Washington, D.C., for defendant.

MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

By Memorandum Order filed November 16, 1990, the Court denied defendant The New York Times Company's ("NYT") initial motion for a stay of discovery. This case presently comes before the Court on the NYT's Second Motion for a Stay of Discovery and for Expedited Consideration, filed on November 30, 1990 and accompanied by a motion for summary judgment. Plaintiff Dan E. Moldea ("Moldea") filed an opposition to the motion on December 11, 1990, and the NYT replied on December 13, 1990. After careful consideration of the motion, the opposition thereto, and the entire record in this case, the Court concludes that the motion should be granted.

I.

The underlying facts can be briefly set forth. Moldea is the author of *Interference: How Organized Crime Influences Professional Football ("Interference"),* which was published in July 1989. On September 3, 1989, the New York Times Book Review published a review of *Interference.* The book review was written by Gerald S. Eskenazi. Moldea filed this suit against the NYT on August 23, 1990 alleging that the book review was defamatory.

Since filing this action, the parties have engaged in limited discovery. For example, the NYT has responded to Moldea's first request for production of documents. Further deposition discovery is scheduled to proceed on December 20, 1990.

II.

The NYT moves pursuant to Federal Rule of Civil Procedure 26(c) for a stay of all discovery in this case pending a ruling on its recently filed **motion for summary judgment**. Under **Rule 26(c)**, a trial court has discretion to issue protective orders upon a showing of **good cause**. The Court finds that the NYT has met its burden.

As grounds for the renewed motion, the NYT relies on the same arguments set forth in its earlier motion. The NYT principally argues that this case raises First Amendment interests, and that the threat to the First Amendment is sufficient good cause to stay the discovery process pending resolution of a dispositive motion. The NYT further argues that a stay would be appropriate so that it could avoid the time and expense of responding to inquiries that *2 will have no effect on the resolution of the forthcoming motion. In this regard, the NYT argues that the summary judgment motion is based solely on *Interference* itself and the book review. For this reason, the NYT contends that Moldea will not require any discovery to defend against the motion.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

137 F.R.D. 1
(Cite as: 137 F.R.D. 1, *2)

In reaching the conclusion that the motion for a stay should be granted, the Court has considered several factors. First, the Court is mindful of the significant First Amendment issues raised in this case--although this factor standing alone would not automatically entitle defendant to a stay of discovery. Second, having had an opportunity to review the motion for summary judgment, the Court is not of the view that further discovery is necessary to sustain an opposition to the motion. The gravamen of the NYT's motion for summary judgment is its argument that the Court must determine as a matter of law whether the words or phrases contained in the book review are sufficiently factual to be susceptible of being proved true or false. In this case, Moldea has not persuasively shown in its opposition to this motion that such a determination requires scrutiny beyond the challenged publication. [FN1] Finally, the Court anticipates that any stay entered would be brief. A dispositive motion is currently pending, and a response is required to be filed on or before January 4, 1991.

> FN1. Of course, this ruling does not foreclose Moldea from filing a Rule 56(f) response to the motion for summary judgment.

For the foregoing reasons, the second motion to stay *all* discovery will be granted.

Thus, it is hereby

ORDERED that defendant's request for expedited consideration is granted; and it is further

ORDERED that defendant's second motion for a stay of discovery is granted.

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CLARK,                          :
                                        :
            Plaintiff,                  :
                                        :        Civil No. 01-0764
                                        :
        v.                              :        (Judge William W. Caldwell)
                                        :
LARRY LIDGETT, et al.,                  :
                                        :
            Defendants.                 :

### PROOF OF SERVICE

The undersigned hereby certifies that the Corrections Defendants' Brief in Support

to Their Motion for a Protective Order was served upon the person(s) in the manner

indicated below.

Service by first-class mail
addressed as follows:

William Clark, AY-5585              James D. Young, Esquire
SCI-Rockview                       Lavery, Faherty, Young & Patterson, PC
Box A                              The Kunkel Building
Bellefonte, PA  16823              301 Market Street, Suite 800
                                   P.O. Box 1245
                                   Harrisburg, PA  17108-1245


                                   Jennifer L. Schade
                                   Clerk Typist II

PA Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444

Dated:  March 25, 2002