



**FILED**

HARRISBURG, PA

APR 1 9 2002

_____ , CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Docket No.  01-CV-0764

WILLIAM CLARK,

Plaintiff,

v.

LARRY LIDGETT, et al.,

Defendants.

---

## CORRECTIONS DEFENDANTS' BRIEF IN SUPPORT TO THEIR MOTION FOR SUMMARY JUDGMENT

---

James M. Sheehan
General Counsel
Commonwealth of Pennsylvania

Michael A. Farnan, Chief Counsel
John J. Talaber, Assistant Counsel
Supreme Court I.D. No. 83279

Pennsylvania Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444
(Counsel for Defendants)

(717) 731-0444

Dated:  April 19, 2002

## TABLE OF CONTENTS

STATEMENT OF THE CASE ........................................................................................ 1

STATEMENT OF THE QUESTIONS PRESENTED ..................................................... 9

ARGUMENT .................................................................................................................. 10

I.    **SUMMARY JUDGMENT SHOULD BE GRANTED TO THE CORRECTIONS DEFENDANTS BECAUSE THERE ARE NO GENIUNE DISPUTES OF MATERIAL FACT, AND CLARK FAILS TO STATE MERITORIOUS EIGHTH AMENDMENT VIOLATIONS AS A MATTER OF LAW** .................................................................... 10

     A.   Clark's claims for damages against the Corrections Defendants in their official capacities should be dismissed as a matter of law ............................. 10

     B.   Clark's claims should be dismissed for failure to allege personal involvement of the Corrections Defendants ..................................................... 12

     C.   Clark's claims of the Corrections Defendants' deliberate indifference to his HCV condition are not actionable as a matter of law ............................... 13

II.   **CLARK'S CLAIMS ARE BARRED BY QUALIFIED IMMUNITY** .............. 16

CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

**Federal Cases**                                                                                    **Page(s)**

Anderson v. Creighton, 483 U.S. 635 (1987) ...............................................18, 19
Bednar v. County of Schuylkill, 29 F. Supp. 2d 250 (E.D. Pa. 1998) .............................16
Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir.1987).........................................16
Chimenti v. Kimber, Civil No. 3:CV-01-0273, slip op., (M.D. Pa. Mar. 15, 2002)...13, 14
Doe v. County of Centre, 242 F.3d 437 (3d. Cir. 2001) ...............................19, 20
Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993) ....................................14, 17
Estelle v. Gamble, 429 U.S. 97 (1976) .........................................................15
Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).......................14
Hans v. Louisiana, 134 U.S. 1 (1890)....................................................11-12
Harlow v. Fitzgerald, 457 U.S. 800 (1982)..........................................17, 18
Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979)....................15
Jermosen v. Smith, 945 F.2d 547 (2d Cir. 1991),
    cert. denied, 503 U.S. 962 (1992) ...............................................18
Johnson v. Harding, Civil No. 3:CV-99-977, slip op.(M.D. Pa. Feb. 29, 2000) ............13
McAleese v. Owens, 770 F. Supp. 255 (M.D. Pa. 1991).....................................15
Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658 (1978)...........................12
Monmouth County Correctional Institutional Inmates v. Lanzaro,
    834 F.2d 326 (3d Cir. 1987)................................................16
Moor v. County of Alameda, 411 U.S. 693 (1973) ...........................................12
Quern v. Jordan, 440 U.S. 332 (1979) ....................................................12
Rouse v. Plantier, 182 F. 3d. 192 (3d. Cir. 1999) ........................................19
Sheldon v. Pezley, 49 F.3d 1312 (8th Cir. 1995)..........................................15
Thomas v. Meyers, Civil No. 3:CV-00-1887, slip op. (M.D. Pa. Mar. 25, 2002)...........13
Tunnell v. Office of Public Defender, 583 F. Supp. 762 (E.D. N.Y. 1984) ...................12
White v. Napoleon, 897 F.2d 103 (3d Cir. 1990) ...........................................16
Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) ...............................12


**Federal Statutes**

Pa.MDLR 7.8(a)...............................................................13, 14
U.S. Const. Amend XI .......................................................... 11
U.S.C. §1983 ............................................................. 1, 12
42 U.S.C. §1997(e)...............................................................2


**State Statutes**

42 Pa. C.S. § 5929 ........................................................... 20
Pa. MDLR 7.8(a)...........................................................13, 14

# STATEMENT OF THE CASE

**A.     Identity of the Parties and Statement of Claim**

Plaintiff William Clark is an inmate currently incarcerated at the State

Correctional Institution at Rockview ("SCI-Rockview").[1]  The Department of

Corrections employees named as Defendants ("Corrections Defendants") are:

(1) former Secretary of the Department, Martin Horn; (2) former SCI-Rockview

Superintendent, Robert Meyers; and (3) former Corrections Health Care

Administrator, Larry Lidgett.[2]  Additionally, Clark named the following as

defendants: (1) Wexford Health Sources, Inc. ("Wexford"); and (2) Wexford

Medical Director, Dr. John Symons.[3]  Clark is suing the Defendants in their official

and individual capacities.[4]

This is a 42 U.S.C. §1983 *pro se* action alleging deliberate indifference to

the treatment of Clark's Hepatitis C ("HCV") condition in violation of his Eighth

and Fourteenth Amendment rights to the United States Constitution.[5]  Clark also

---

[1]     See Complaint (doc. 1), ¶ 2.

[2]     See Complaint, ¶¶ 3,4, 7.

[3]     The non Corrections Defendants are represented by James D. Young , Esquire.  See Entry of Appearance (doc. 11).

[4]     See Complaint, ¶¶ 3-7.

[5]     See Complaint, ¶¶ 8-58.

has pendent state claims of medical malpractice and negligence.[6]  Clark seeks

declaratory and injunctive relief, as well as, compensatory and punitive damages.[7]

## B.    Relevant Procedural History

Clark filed his Complaint on May 21, 2001.[8]  All Defendants waived service

of summons on August 2, 2001.[9]  On September 10, 2001, Defendants Wexford

and Dr. Symons waived reply to the Complaint pursuant to 42 U.S.C. §1997(e).[10]

On September 14, 2001, the Corrections Defendants also waived reply to the

Complaint.[11]  On January 2, 2002, Clark served the Corrections Defendants with:

(1) a Request for Production of Documents directed to all Defendants; (2)

Interrogatories directed Defendant Lidgett; and (3) Interrogatories directed to

Defendants Horn and Meyers.[12]  On February 4, 2002, the Corrections Defendants

---

[6]      See Complaint, p.1 "Preliminary Statement"

[7]      See Complaint, Relief Requested, pp. 10-11.

[8]      See Complaint (doc. 1).

[9]      See Waiver of Summons (doc. 12).

[10]     See Waiver of Reply to Complaint (doc. 13).

[11]     See Waiver of Reply to Complaint (doc. 14).

[12]     See Supporting Documents to the Corrections Defendants' Motion for a
Protective Order ("Supporting Documents") (doc. 19).

sought an enlargement of time to respond to Clark's aforementioned discovery requests.[13]

The Court, by Order dated February 8, 2002, granted the Corrections Defendants' Motion directing them to respond to Clark's discovery requests on or before March 21, 2002.[14]  On March 21, 2002, the Corrections Defendants served Clark with a response to his Request for Production of Documents.[15]

On March 25, 2002, the Corrections Defendants filed their Motion for Summary Judgment, as well as, a Motion for Protective Order and a stay of their obligation to respond to Clark's outstanding and future discovery requests with a supporting brief and exhibits.[16]  On April 9, 2002, the Corrections Defendants requested, and were later granted an enlargement of time to file this Supporting Brief, Statement of Material Facts, and Supporting Documents to their Motion for Summary Judgment.[17]  On April 12, 2002, the Corrections Defendants were served with Clark's Brief in Opposition to their Motion for a Protective Order, thus

---

[13]    See Motion for an Enlargement of Time (doc. 15).

[14]    See Order (doc. 16).

[15]    See Defendants' Response to Plaintiff's Request for Production of Documents, attached to the Supporting Documents as Exhibit D.

[16]    See Motion for Summary Judgment (doc. 20); Motion for a Protective Order with Supporting Brief and Exhibits (Docs. 17-19).

[17]    See Motion for Enlargement of Time (Doc. 21); Order (Doc. 23).

making their Reply Brief due on April 25, 2002.[18]  The Corrections Defendants

now timely file their Supporting Brief, Statement of Material Facts, and Supporting

Documents to their Motion for Summary Judgment.

## C.    Statement of Facts as Alleged

In November 1984, Clark was committed to the State Correctional

Institution at Graterford ("SCI-Graterford") for a term of imprisonment of five (5)

to fifteen (15) years.[19]  Sometime in 1989, Clark was paroled from SCI-Graterford

to a Community Corrections Center; however, in early 1992, Clark was

recommitted to SCI-Graterford as a technical parole violator.[20]  Clark avers that

upon his return to SCI-Graterford in 1992, a blood sample was drawn, and a

notation was made in his medical record that was infected with HCV, yet he was

not advised or cautioned by "Department health care workers" of his positive

status.[21]  Clark claims that in 1992, the medication Interferon was available to treat

his HCV condition, but at that time the Department of Corrections evaluate him for

treatment.[22]  Clark was re-paroled in late 1992.[23]

---

[18]    See Plaintiff's Brief in Opposition (Doc. 22).

[19]    See Complaint, ¶ 8.

[20]    See Complaint, ¶¶ 9-10.

[21]    See Complaint, ¶¶ 10-14.

[22]    See Complaint, ¶ 17, 19.

Sometime in 1995 Clark was "returned to prison" but was released in April 1996, and once again, alleges that he was not "advised or cautioned by Department health care workers regarding his having HCV.[24]  Clark alleges that the failure to inform him of his HCV prevented him "from receiving treatment in his community, causing him to damage his liver further through activities harmful to those with HCV, and precluding notice so that he would not accidentally spread HCV to others . . . "[25]

In late 1996, Clark was re-incarcerated and transferred to SCI-Rockview.[26] Clark avers that "[a]t no time between late 1996 and October 1999, was he advised of or cautioned by the Department health care workers as to his having HCV."[27] As noted in the paragraph above, Clark avers this lack of knowledge of his HCV resulted in not being able to pursue treatment, further damage to his liver, and he could not prevent the accidental spread of HCV to others.[28]

---

[23]    See Complaint, ¶ 15.

[24]    See Complaint, ¶¶ 20-23.

[25]    See Complaint, ¶ 22.

[26]    See Complaint, ¶ 25.

[27]    See Complaint, ¶ 26, 28.

[28]    See Complaint, ¶ 27.

5

In October 1999, Clark states that he requested the SCI-Rockview medical department to give him a AIDS and HCV test; after the test, Clark was informed that he was HCV positive, and at some point prior to October 1999, that he also had both hepatitis A and B.[29]  Further, Clark avers that he first learned through examination of Department of Correction's medical records that he was infected with HCV as early as 1992, and claims that he was never informed of this prior to October 1999.[30]

Soon thereafter, Clark inquired about treatment for his HCV, and avers that he was told that "despite the large number of HCV positive inmates currently in the state prison system, the Department did not at that time have a treatment protocol for HCV, and, therefore, Plaintiff would not be receiving Interferon or any other medication to treat his HCV."[31]  Clark claims that the failure of the Department and SCI-Rockview, between 1992 and 1999, in not having a HCV treatment protocol in place, resulted in his lack of being able to pursue treatment, damage to his liver, and preventing the accidental spread of HCV to others.[32]

---

[29]    See Complaint, ¶¶ 30, 31.

[30]    See Complaint, ¶ 32.

[31]    See Complaint, ¶ 33.

[32]    See Complaint, ¶ 34.

Clark avers that "[t]he Centers for Disease Control has determined that people who have tested positive for HCV should have a liver biopsy to determine the exact HCV genotype, to determine the feasibility of treatment, and to assess the amount and extent of liver damage."[33]  Clark complains that between October 1999 and September 2000, despite making "several verbal and written requests to Defendants Horn, Meyers, Wexford, Symons, and Lidgett that he be provided with a liver biopsy and be treated for his HCV . . . " the requests were refused.[34]  Clark also avers that he exhausted his administrative remedies through the Department's grievance process but his requests were once again refused.[35]

Clark avers that on September 15, 2000, eight years after the Department first became aware of his HCV, he began receiving treatment through the drug Interferon to potentially clear the virus.[36]  However, Clark avers that the Center for Disease Control has determined that early detection and treatment in the only proper course for HCV, and that early treatment increases the success rate for clearing the virus and minimizing damage to the liver.[37]  Clark submits that the

---

[33]    See Complaint, ¶ 35.

[34]    See Complaint, ¶ 36.

[35]    See Complaint, ¶ 37, 43.

[36]    See Complaint, ¶ 38.

[37]    See Complaint, ¶ 39.

7

failure of the Defendants to treat his HCV earlier allowed his liver to be further damaged. Additionally, Clark argues that following Center for Disease Control recommendations, he should have been given a liver biopsy, but not treated with the drug Interferon.[38]

Overall, Clark claims that the Corrections Defendants were deliberately indifferent to his serious medical needs because: (1) between 1992 and 1999, they failed to notify or failed to have in place a notification protocol to ensure the Clark was informed he had HCV; (2) between 1992 and 1999, they failed to have in place a HCV treatment protocol; and (3) between 1992 and March 2001, they failed to have in place a HCV protocol that would require Clark to receive a liver biopsy for proper diagnosis prior to being treated with the drug Interferon.[39] Similarly, Clark makes the same allegations against Wexford and Dr. Symons.[40]

**D.    Statement of Material Facts**

---

[38]    See Complaint, ¶¶ 39-42.

[39]    See Complaint, ¶¶ 44-46, 56-58.

[40]    See Complaint, ¶¶ 50-55.

## STATEMENT OF QUESTIONS PRESENTED

I.    SHOULD SUMMARY JUDGMENT BE GRANTED TO THE
      CORRECTIONS DEFENDANTS BECAUSE THERE ARE NO GENIUNE
      DISPUTES OF MATERIAL FACT, AND CLARK FAILS TO STATE
      MERITORIUS EIGHTH AMENDMENT AS A MATTER OF LAW?

      Suggested Answer:        Yes

II.   ARE CLARK'S CLAIMS AGAINST THE CORRECTIONS
      DEFENDANTS BARRED BY QUALIFIED IMMUNITY?

      Suggested Answer:        Yes

## ARGUMENT

**I.    SUMMARY JUDGMENT SHOULD BE GRANTED TO THE CORRECTIONS DEFENDANTS BECAUSE THERE ARE NO GENIUNE DISPUTES OF MATERIAL FACT, AND CLARK FAILS TO STATE MERITORIOUS EIGHTH AMENDMENT VIOLATIONS AS A MATTER OF LAW.**

The Corrections Defendants, for purposes of this Motion for Summary Judgment only, take the averments in Clark's Complaint as true; however, they also submit a Statement of Material Facts, pages 8-9 (*supra*), containing additional information necessary for resolution of this matter that they believe are disputed between the parties.  Therefore, as a matter of law based on the arguments that follow, summary judgment should be granted to the Corrections Defendants and the Complaint against them dismissed with prejudice.

**A.    Clark's claims for damages against the Corrections Defendants in their official capacities should be dismissed as a matter of law.**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the citizens of the United States by citizens of another State, or by Subjects of any foreign State." U.S. Const. Amend XI.  The text of the Eleventh Amendment clearly bars suits against a state by citizens of other states and aliens.  However, the Supreme Court has interpreted the amendment to bar damage suits in federal court against a state by its own citizens, <u>Hans v. Louisiana,</u>

134 U.S. 1 (1890), unless the State has waived its immunity or "Congress has exercised its undoubted power under §5 of the Fourteenth Amendment to override that immunity." Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989).

Plaintiff's federal cause of action is based on a 42 U.S.C. §1983 claim. Section 1983 provides, in relevant part, that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. §1983 (emphasis added). Under the Eleventh Amendment, Clark cannot sustain a claim for money damages against the Department of Corrections as an agency of the state. Will, 491 U.S. at 66; Quern v. Jordan, 440 U.S. 332, 342 (1979). Similarly, to the extent that the Defendants are sued in their official capacities, the State is the real party in interest.[41] Will, 491 U.S. at 71. Therefore, the Eleventh Amendment also bars Plaintiff's § 1983 claim for damages against

---

[41] Moreover, states, their agencies, and officials sued in their official capacities are not "persons" within the meaning of §1983. Cf. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 688 (1978)(finding that municipalities are persons within §1983); Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785 (1973)(holding that municipalities are not shielded by the Eleventh Amendment). Cf. Tunnell v. Office of Public Defender, 583 F. Supp. 762, 769 (E.D. N.Y. 1984)(noting "Monell, [which established liability based on a custom and policy basis and a failure to train and/or supervise basis] involved claims against a municipality, not a state or state official, and hence is not pertinent."). This too supports dismissal of the claims against the Corrections Defendants in their official capacities.

11

the Corrections Defendants to the extent that they are sued in their official

capacities.

### B.    Clark's claims should be dismissed for failure to allege personal involvement of the Corrections Defendants.

A Section 1983 action must allege that the defendant actually participated in

or had actual knowledge of and acquiesced in the events forming the basis of the

claims.[42]  Clark fails to link the Corrections Defendants to the central acts that he

complains about:  The failure to inform him of his diagnosis of HCV, and to have

in place a HCV protocol to treat his illness.  Instead, his allegations against the

Corrections Defendants offer no basis for liability other than one based upon their

respective supervisory positions as the Secretary, Superintendent, and Corrections

---

[42]      See Chimenti v. Kimber, Civil No. 3:CV-01-0273, slip op. at 15, 16 (M.D. Pa. Mar. 15, 2002)(Vanaskie, C.J.)(finding "[t]he mere fact that the Commonwealth Defendants [that included Secretary Horn, a Superintendent, and two nurses] responded to [the inmates] grievances does not support an inference that they were deliberately indifferent to his medical needs.  They were entitled to rely upon the advise of health are professionals.)(citing Johnson v. Harding, Civil No. 3:CV-99-977, slip op. at p.8)(M.D. Pa. Feb. 29, 2000)(Vanaskie, C.J.)(finding that is there no constitutional right to a grievance procedure, to the extent Plaintiff contends the Commonwealth Defendants violated his constitutional rights by not taking corrective action on medical complaints, said allegations fail to state a claim upon which relief may be granted)(citation omitted)). A copy of Chimenti is attached hereto pursuant to Pa.MDLR 7.8(a) as Exhibit A.  See also Thomas v. Meyers, Civil No. 3:CV-00-1887, slip op. at 8, 9 (M.D. Pa. Mar. 25, 2002)(Caputo, J.)(finding in a claim factually and legally on point with Clark's Complaint that Defendants Meyers and Lidgett should be dismissed from the action).  A copy of Thomas is attached hereto pursuant to Pa.MDLR 7.8(a) as Exhibit B.

health Care Administrator: *Respondeat superior* alone cannot be a basis for a Section 1983 suit.[43]   Therefore, summary judgment should be granted to the Corrections Defendants' as a matter of law and the claims against them dismissed with prejudice.

### C.    Clark's allegations of the Corrections Defendants' deliberate indifference to his HCV condition are not actionable as a matter of law.

The Court of Appeals for the Third Circuit has established that "a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff."[44]   Clark does not allege in the Complaint that the Corrections Defendants are physicians treating him in a professional capacity.[45] Rather, Clark admits numerous times throughout his Complaint that he was provided with access to a physician.[46]   Therefore, the Corrections Defendants (and

---

[43]     See Rizzo v. Goode, *supra;* Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976).

[44]     See Chimenti, slip. op. at 17, (citing Durmer v. O'Carroll, 991 F.2d 64, 49 (3d Cir. 1993)).  A copy of Chimenti is attached hereto pursuant to Pa. MDLR 7.8(a) as Exhibit A.

[45]     See generally Complaint, pp. 1-11.

[46]     See Complaint (doc. 1), ¶¶ 10, 14, 21, 26, 30-33.

the Department of Corrections dating back to 1992) met their Constitutional obligations as set forth in Estelle v. Gamble to provide medical care to Clark.[47]

Moreover, a "serious medical need" has been defined as "one that has been diagnosed by a physician, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."[48] On its face, the alleged serious medical need in this case does not qualify as one apparent to even a layperson. The diagnosis of HCV is not one that is readily apparent to laymen. Indeed, Clark' own allegations indicate that he was diagnosed only after a "blood test."[49]

Determining the propriety of treatment for HCV (which is at the heart of Clark's action), as contrasted with a bleeding wound, opens the door for impermissible, second guessing of the course of treatment that a trained physician provided. Courts disavow any attempt to second-guess a particular course of treatment, which remains a question of sound professional judgment.[50] A disagreement between the doctor and a plaintiff as to the medical diagnosis and

---

[47]    See generally Estelle v. Gamble, 429 U.S. 97 (1976) (holding the government has an obligation to provide medical care to those it is punishing by incarceration).

[48]    See Sheldon v. Pezley, 49 F.3d 1312, 1316 (8th Cir. 1995).

[49]    See Complaint, ¶¶ 10-12.¶

[50]    See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); McAleese v. Owens, 770 F. Supp. 255, 258 (M.D. Pa. 1991).

14

treatment does not constitute deliberate indifference.[51]   Yet, this is precisely what

Plaintiff attempts to do through this 1983 action: He is disputing the course of

treatment he as a non-physician believes he should have received for HCV, and

would; therefore, knows better than the physicians the Corrections Defendants

provided.[52]   Clark inappropriately asks this Court to substitute its judgment for the

trained medical personnel who regularly saw him during the relevant times of his

incarceration.

A disagreement between an inmate and a physician over the course of

treatment is no greater than a disagreement between physicians.  As the Third

Circuit has correctly recognized "[c]ertainly, no claim is presented when a doctor

disagrees with the professional judgment of another doctor.  There may, for

example, be several ways to treat an illness."[53]  The Third Circuit reasoned that if

differences in opinion between two medical professionals cannot be a basis for an

---

[51]      See Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir.1987)).  Bednar v.
County of Schuylkill, 29 F.Supp.2d 250, 253 (E.D. Pa. 1998).  Accord Monmouth
County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3rd Cir.
1987).

[52]      See Plaintiff's Answers to the Corrections Defendants interrogatories to
Plaintiff, Responses 1, 13, attached to the Supporting Documents to the
Corrections Defendants Brief in Support to their Motion for Summary Judgment
("Supporting Documents"), as Exhibit 1.

[53]      See White v. Napoleon, 897 F.2d 103, 110 (3d Cir.1990).

15

Eighth Amendment claim, then a medically, untrained correctional official cannot be found liable if he relies on the opinions of a medical professional.[54]

The Corrections Defendants cannot and should not be held liable for the medical decisions by the doctors and nurses who diagnosed Clark's medical conditions, and chose, in the exercise of their medical judgment, not to treat it. Clark's allegations amount to a disagreement in his treatment; therefore the Corrections Defendants are entitled to summary judgment as a matter of law, and the Complaint against them should be dismissed with prejudice.

## II.    CLARK'S CLAIMS ARE BARRED BY QUALIFIED IMMUNITY.

The United States Supreme Court has held that defendants may invoke qualified immunity from liability for damages claims "insofar as their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[55] Here, the Corrections Defendants are entitled to qualified immunity because there is no clearly established law now, nor at any relevant time, that they (as Corrections Administrators) had an obligation to inform Clark of his allegedly positive Hepatitis test.

---

[54]    See Durmer, 991 F.2d at 69 ("Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.")

[55]    See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

16

The qualified immunity doctrine recognizes "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."[56]  A defendant is immune from a Section 1983 claim if a reasonable person in his position could have believed that his actions were proper in light of the existing law and should be denied only if, in light of the existing law, the unlawfulness should have been apparent.[57]

"The availability of the defense turns on the 'objective legal reasonableness' of the allegedly unlawful official action 'assessed in light of the legal rules that were clearly established at the time it was taken.'"[58]  The qualified immunity analysis is:  "(1) Whether the plaintiffs allege a violation of their statutory or constitutional rights; (2) whether the right alleged to have been violated was clearly established in the existing law at the time of the violation; and (3) whether a reasonable official should have known that the alleged action violated the plaintiffs' rights."[59]  ·

---

[56]     Id. at 807 (internal quotations and citation omitted).

[57]     See Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (internal quotation marks omitted)."  Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991), cert. denied, 503 U.S. 962 (1992).

[58]     See Anderson, 483 U.S. at 640.

Following the Supreme Court's lead, the Third Circuit directed that the right in question must be defined with particularity rather than abstractly.[60] Thus, the questions presented here are:

> (1) between 1992 and 1999, it was clearly established that a supervisory corrections official had a duty to notify an inmate that he had been diagnosed with HCV (assuming for purposes of the argument that the Corrections Defendants indeed knew of the diagnosis);

> (2) between 1992 and 1999 it was clearly established that a supervisory corrections official had a duty to have a HCV treatment protocol in place; and

> (3) between 1992 and 2001 it was clearly established that a supervisory corrections official had a duty to have a HCV protocol in place requiring a physician to utilize a liver biopsy prior to treating an inmate with the drug Interferon.

Clearly, supervisory corrections officials are not medical providers, nor are there any allegations that a physician-patient relationship existed between the Corrections Defendants and Plaintiff from 1992-2001. In fact, Clark's medical records and test results are confidential.[61] To survive qualified immunity, it must have been clearly established that a correction official, such as three Corrections Defendants in this case, had not only a right, but also a duty to violate a patient's

---

[59]    Id. citing Rouse v. Plantier, 182 F. 3d. 192, 196-97 (3d. Cir. 1999).

[60]    See Doe v. County of Centre, 242 F.3d 437, 454-55 (3d. Cir. 2001)

privacy in his medical records in order to advise him of a positive Hepatitis test. No Court has so held.  This is a novel legal issue just like the issue in the <u>Doe</u> case.

Further, just as the county in <u>Doe</u> had a separate legal duty to protect the health of its foster children, which conflicted with the purported right of the plaintiff, correction officials are bound by the duty not to violate a patient's privacy in the confidentiality of their medical records.[62]  Here, as in <u>Doe</u>, because the right in question was not clearly established at the time, the Corrections Defendants are entitled to qualified immunity as a matter of law, and Clark's Complaint against them should be dismissed with prejudice.

---

[61]   <u>See</u> 42 Pa. C.S. § 5929.

[62]   <u>See</u> <u>Doe</u>, *supra* at 18.

## CONCLUSION

**WHEREFORE**, for the above-stated reasons, this Honorable Court should grant summary judgment in favor of the Corrections Defendants and dismiss the claims against them with prejudice.

Respectfully submitted,
Office of General Counsel

BY: _____

John J. Talaber
Assistant Counsel
Pa. Department of Corrections
55 Utley Drive
Camp Hill, PA 17011
(717) 731-0444
Attorney Id. No. 83279

Dated:  April 19, 2002

⑤②
3/15/02
TS

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FILED
SCRANTON

MAR 1 5 2002

PER_____
DEPUTY CLERK

|  |  |  |
|---|---|---|
| **SALVATORE CHIMENTI,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL NO. 3:CV-01-0273** |
| **ROGER KIMBER, ET AL.,** | : | **(Chief Judge Vanaskie)** |
| **Defendants.** | : | |

## MEMORANDUM

### BACKGROUND

This pro se civil rights action pursuant to 42 U.S.C. § 1983 was initiated by Salvatore

Chimenti, an inmate presently incarcerated at the State Correctional Institution, Huntingdon,

Pennsylvania (SCI-Huntingdon).   Plaintiff's in forma pauperis application was previously

construed as a motion to proceed without full prepayment of fees and costs, and granted.

Named as Defendants are Secretary Martin Horn and Chief Hearing Examiner Robert S

Bitner of the Pennsylvania Department of Corrections (DOC) and the following SCI-Huntingdon

officials:  Superintendent Frederick Frank and Nurses Patricia Yarger and Patricia Everhart.

Also named are five employees of Wexford Health Sources, Inc., a health care service which

provides medical treatment to SCI-Huntingdon inmates on a contractual basis:  Peter Baddick,

M.D., David Rowe, D.O., Gerald Kaufer, M.D., Site Coordinator Carol Pollock L.P.N., and

Farrohk Mohadjerin, M.D.  The Plaintiff is also proceeding against Roger Kimber, M.D., who is

identified as being a former SCI-Huntingdon Medical Director.

Chimenti states that he has been confined at SCI-Huntingdon since 1991.  Blood tests

conducted during 1991 revealed that Plaintiff had elevated liver enzymes.  As a result, a non-

defendant, Doctor Reiners, ordered a liver biopsy.  The biopsy tested positive for Hepatitis C.

Between 1991 and 1996, Chimenti was treated by various physicians who are not named as

defendants in this action.  During 1996, Plaintiff's Hepatitis-related symptoms "became more

severe and pronounced."  (Dkt. Entry # 1, ¶10.)  As a result, blood testing was performed in

December, 1996.

The then newly-appointed SCI-Huntingdon Medical Director, Defendant Doctor

Mohadjerin, reviewed the results of the blood test with Chimenti on or about January 15, 1997.

The test revealed that Chimenti had elevated liver enzyme levels.

In April of 1997, Chimenti filed Grievance No. 0057-97, complaining of the alleged lack

of medical care provided by Dr. Mohadjarin and the Wexford Health Group.  (See Ex. "B" to

Plaintiff's Complaint.)  As relief, Chimenti asked that Dr. Mohadjarin "recuse himself from

treating me . . . and to also recuse himself from making any medical decisions regarding any

types of tests, x-rays, operations, doctor consultations, or any other medical decisions

pertaining to my health."  Chimenti also requested that "Dr. Rieners or Dr. Aranenda attend to

me in the future."  (Id., p. 6.)  Chimenti unsuccessfully pursued this grievance through the final

2

review stage, with DOC Commissioner Horn sustaining the denial of the grievance in a letter dated June 27, 1997. (Ex. "E" to the Complaint.) Chimenti did not pursue a civil action with respect to this matter.

During the summer of 1997, Chimenti was referred to Dr. Gaugler, who ordered a liver biopsy and testing to determine the condition of the Hepatitis-C. In October of 1997, when testing had not been undertaken, Chimenti complained in writing to Defendant Dr. Kaufer. (See Exs. "F" and "G" to the Complaint.) By letter dated November 12, 1997, Defendant Pollock responded to Chimenti's letters to Dr. Kaufer. (Ex. "H" to the Complaint.) Chimenti did not pursue an administrative grievance with respect to the matters covered in his letter to Dr. Kaufer.

In the interim, on November 5, 1997, a liver biopsy was performed and Dr. Gaugler recommended Interferon therapy. Chimenti received Interferon therapy for about 3 ½ months, beginning in December of 1997. (Complaint, ¶¶ 40-41.) Dr. Mohadjarin discontinued the Interferon therapy in March of 1998 because the Hepatitis C was "'not fully responding to treatment.'" (Id., ¶ 41.) Chimenti alleges that Dr. Gaugler recommended that the Interferon treatment be intensified, but Dr. Mohadjarin refused. (Id, ¶ 46-47.) Thereafter, Chimenti asked that Dr. Mohadjarin approve "Rebetron Therapy," but he again declined to order the treatment. (Id., ¶ 49-52.)

On February 10, 1999, Chimenti initiated another administrative proceeding concerning

3

his medical care. This grievance, assigned No. 0037-99, was "lodged against SCI-[Huntington

Medical Dept., Dr. Mohadjarin, Wexford Health Sources, Inc., and the D.O.C." (Complaint, Ex

"I," p. 1.) Chimenti sought to compel implementation of the Rebetron therapy. By letter dated

May 10, 1999, the denial of Chimenti's grievance was sustained on final review. (Complaint,

Ex. "O".) No additional administrative grievances were pursued by Chimenti.

 Chimenti did not bring this lawsuit until February 13, 2001. Chimenti alleges that he did

not receive any treatment for hepatitis from March of 1998 until June 26, 2000. (Complaint, ¶

65.) He further alleges that, as a result, his condition deteriorated substantially. (Id., ¶ 66.)

 He acknowledges, however, that on June 26, 2000, he started receiving  Rebetron

therapy. (Id., ¶ 68.) On December 13, 2000, Defendant Dr. Kimber ordered that this treatment

be discontinued because Chimenti's condition continued to deteriorate. (Id., ¶ 72.) Chimenti

alleges that Defendants Drs. Kimber and Baddick then refused to provide him any additional

treatment. His complaint contends that he has been diagnosed with cirrhosis of the liver. He

further avers that he "now languishes in a prison cell, suffering from an extremely advanced life-

threatening illness...." (Complaint, ¶ 79.) As relief for the alleged deliberate indifference of the

Defendants, Chimenti requests compensatory and punitive damages plus an injunctive decree

directing his transfer to the State Correctional Institution at Pittsburgh, Pennsylvania (SCI-

Pittsburgh) for the purpose of being evaluated as a liver transplant candidate.

 On May 29, 2001, the Wexford employees who have been sued in this case,

4

Defendants Baddick, Rowe, Kaufer, Pollock, and Mohadjerin (hereinafter the Wexford

Defendants) submitted a motion to dismiss. See Dkt. Entry # 29. Shortly thereafter, Dr.

Kimber filed a motion to dismiss the complaint for failure to state a claim upon which relief may

be granted. (See Dkt. Entry # 30.)  The remaining Defendants, Horn, Bitner, Frank, Yarger,

and Everhart (hereinafter the Commonwealth Defendants) also filed a motion to dismiss. (See

Dkt. Entry # 32.)  Briefing has been completed on the respective motions, and they are ripe for

consideration.

**DISCUSSION**

"The test in reviewing a motion to dismiss for failure to state a claim is whether, under

any reasonable reading of the pleadings, plaintiff may be entitled to relief." Holder v. City of

Allentown, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must

"accept as true the factual allegations in the complaint and all reasonable inferences that can

be drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990);

Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1168 (3d Cir.

1997). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third

Circuit added that when considering a motion to dismiss based on a failure to state a claim

argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether

they are entitled to offer evidence to support their claims."  Finally, it is additionally well-settled

that pro se complaints should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520

5

(1972).

The separate motions to dismiss raise some common grounds. Specifically, Dr. Kimber

and the Wexford Defendants assert that dismissal is appropriate on the ground that Chimenti

did not adequately exhaust administrative remedies. Both the Wexford and Commonwealth

Defendants argue that the complaint fails to set forth a valid claim of deliberate indifference.

### A. Failure to Exhaust Administrative Remedies

Dr. Kimber maintains that the claim asserted against him was not included in Chimenti's

administrative grievances.[1] The Wexford Defendants' argument that Chimenti failed to exhaust

his administrative remedies is twofold. First, they point out that the two administrative

complaints that Chimenti pursued did not name nor seek relief on account of actions or inaction

of Baddick, Rowe, Kaufer and Pollock. And second, the Wexford Defendants contend that

Chimenti is not entitled to pursue his claims in this Court because the relief requested --

monetary damages and a transfer to SCI-Pittsburgh for evaluation for a liver transplant -- was

not sought in the administrative complaint process.

---

[1]    The Complaint alleges that Dr. Kimber became the prison's Medical Director during
"October/November 2000." (Dkt Entry # 1, ¶ 69.)  On December 13, 2000, Kimber allegedly
discontinued Chimenti's Rebetron therapy because his illness "failed to respond to said
treatment." (Id. at ¶ 72.)  Thereafter, on January 18, 2001, Kimber informed the Plaintiff that a
second referral made by Doctor Reiners for Chimenti to be examined by a gastroenterologist
had been rejected by Doctor Baddick, Wexford's Regional Director. The complaint concludes
that Kimber refused to provide Plaintiff with needed treatment.

6

Section 1997e(a) of Title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under
> section 1979 of the   Revised Statutes of the United States (42
> U.S.C. 1983), or any other Federal law, by a prisoner confined in
> any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

The Supreme Court has made clear that prisoners must exhaust administrative

remedies as to any claim that arises in the prison setting, regardless of any limitations on the

kind of relief that may be gained through a grievance process. See Porter v. Nussle, 122 S.Ct.

983, 992 (2002)("we hold that the PLRA's exhaustion requirement applies to all inmate suits

about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong"); Booth v. Churner, 121 S.Ct. 1819,

1825 n.6 (2001)("we hold . . . that Congress has provided in § 1997e(a) that an inmate must

exhaust [administrative remedies] irrespective of the forms of relief sought and offered through

administrative avenues"). Thus, prisoners are required to exhaust available administrative

remedies prior to seeking relief pursuant to  § 1983 or any other federal law.

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance

Review System. DC-ADM 804 (effective January 1, 2001). With certain exceptions not

applicable here, DC-ADM 804, Section VI ("Procedures") provides that, after attempted informal

resolution of the problem, a written grievance may be submitted to the Grievance Coordinator;

an appeal from the Coordinator's decision may be made in writing to the Facility Manager or

7

Community Corrections Regional Director; and a final written appeal may be presented to the
Secretary's Office of Inmate Grievances and Appeals.  A prisoner, in seeking review through
the grievance system, may include requests for "compensation or other legal relief normally
available from a court."  (DC-ADM 804-4, issued April 29, 1998.)  Furthermore, although
"[g]rievances must be submitted for initial review to the Facility/Regional grievance Coordinator
within fifteen (15) days after the events upon which the claims are based," allowances of
extensions of time for good cause "will normally be granted if the events complained of would
state a claim of a violation of a federal right." ( Id.)

      With respect to Dr. Kimber's failure to exhaust argument, Plaintiff contends the he was
subjected to a continuous denial of medical treatment and all available administrative remedies
were exhausted as evidenced by Exhibits "L" and "O" to the original complaint. ( See Dkt. Entry
# 37, ¶ 8.)  The two exhibits cited by Chimenti relate to Grievance 0037-99, which was filed and
ruled upon long before Dr. Kimber assumed his duties as Medical Director at SCI-Huntingdon.
Specifically, as established by Exhibit "O", final administrative review of said grievance
concluded on May 10, 1999, over a year before Medical Director Kimber began his tenure.
Plaintiff's earlier grievance, No. 0057-97 was likewise initiated and reached final disposition
long before Dr. Kimber's involvement.

      Moreover, Plaintiff's attempt to avoid compliance with the exhaustion requirement on the
basis that he was subjected to a continuing pattern of deliberate indifference is not compelling.

8

Clearly, Dr. Kimber cannot be held accountable for the actions of his predecessors. The filing

of an administrative grievance regarding prior actions allegedly taken by other correctional

officials simply does not permit this Court to entertain unexhausted claims against Kimber. To

do so would undermine the purpose of § 1997e(a).[2]  Consequently, since Plaintiff did not

initially seek administrative relief through the DOC grievance procedure prior to asserting

claims against Dr. Kimber in federal court, his claims against him are unexhausted and must be

dismissed, without prejudice, pursuant to § 1997e(a).[3]

    An identical conclusion is compelled with respect to Doctors Baddick, Rowe and Kaufer,

as well as Nurse Pollock.  Plaintiff's initial grievance, # 0057-97, was filed against "Dr.

Mohadjerin and the Wexford Health Group." (Complaint, Ex. "B", p. 1.)  As previously noted,

Plaintiff requested that Dr. Mohadjerin be removed as his treating physician and be replaced by

Doctor Reiners or Aranenda.  The Complaint did not mention any of the remaining Wexford

Defendants by name, and did not seek any other relief.

---

   [2] It is additionally noted that in May, 2001, Plaintiff, by his own admission, initiated a grievance against Kimber regarding the rejection of his request to be transferred to the University of Pittsburgh in order to be evaluated by a liver specialist. (See Dkt. Entry # 45, Exhibit "C".) Chimenti's action undermines his apparent argument that he felt that it was unnecessary to seek administrative relief against Kimber.

   [3] A discussion regarding Kimber's alternative argument that Chimenti failed to allege any facts which could support a deliberate indifference claim is thus unnecessary.

9

Plaintiff's second grievance, No. 0037-99, filed February 10, 1999, was "lodged against

SCI-H, Medical Dept., Dr. Mohadjerin, Wexford Health Sources, Inc. and the DOC."(Complaint,

Ex. "I", p. 1.) Chimenti asserted that he had not been provided with Rebetron therapy in a

timely fashion and requested that he be provided with said treatment. Once again, with the

exception of Dr. Mohadjerin, the grievance did not mention any of the remaining Wexford

Defendants by name, nor were there any discernible claims asserted against those individuals.

Since Baddick, Rowe, Kaufer, and Pollock were not named or mentioned in either of the

administrative grievances initiated by Chimenti, the instant claims asserted against them have

not been exhausted. The mere inclusion of the Wexford Group in both grievances is not

enough to show that Chimenti was complaining of discrete instances of medical treatment

relative to any of these defendants. Moreover, his complaint shows that none of these

defendants had more than a passing or tangential connection with Chimenti's medical care.

For example, Nurse Pollock's connection to Chimenti appears to have been restricted to

answering letters he wrote to Dr. Kaufer in the Fall of 1997.[4] Under these circumstances,

dismissal of Chimenti's claims against these defendants for failure to exhaust administrative

---

[4] A review of the complaint reveals that Plaintiff states that he sent Dr. Kaufer two letters
during October, 1997. (See id. at ¶ 32-3), and Exhibits "F"& "G.") His complaint maintains
that Pollock denied him treatment in a November 1997 response to the aforementioned
October letters. (See id. at ¶ 35, and Exhibit "H".) Finally, Plaintiff claims that Kaufer and Rowe
acted improperly in responding to two referrals made by Doctor Mohadjerin in June or July of
1997. (See id. at ¶ 28.)

remedies is warranted.

The fact that Chimenti pursued two separate grievances against Dr. Mohadjerin does

not necessarily satisfy the exhaustion requirement.  The Third Circuit, in an unreported

decision, has suggested that an inmate may not pursue a claim for monetary relief when such a

claim was not pursued administratively.  See Geisler v. Hoffman, Civil No. 99-1971, slip op. at 4

(3d Cir. Sept. 12, 2000).  A learned member of this Court, relying upon Geisler, has held that an

inmate plaintiff's failure to seek monetary damages in prison grievance proceedings precluded

the inmate from seeking such relief in a civil rights action.  See Laird v. Pennsylvania

Department of Corrections, Civil No. 3:CV-00-1039, slip op. at 3 (M.D. Pa. Sept. 26, 2001

(Nealon, J.).)

Chimenti did not include a request for monetary damages in his administrative

complaints.  Moreover, he did not seek a transfer to another institution in those complaints.

Thus, Chimenti's claims against Dr. Mohadjerin for monetary and equitable relief would appear

to be foreclosed as a consequence of his failure to seek such relief through the DOC grievance

process.[5]  Even if the exhaustion requirement had been satisfied as to Dr. Mohadjerin, however,

Chimenti has not presented a viable claim against him.

---

[5]It appears that Dr. Mohadjerin is no longer employed as the Medical Director for SCI-
Huntington by the Wexford Group.  Under these circumstances, the equitable relief sought by
Chimenti in this case could not be awarded, at least insofar as Dr. Mohadjerin is concerned.

11

### B. The Claims Against Dr. Mohadjerin

Dr. Mohadjerin asserts that since Plaintiff acknowledges that he was provided with extensive treatment, his complaint "merely establishes a disagreement between an inmate and medical professionals with respect to the appropriate course of treatment," (Dkt. Entry # 34, page 14.)  The remaining Wexford Defendant concludes that such disagreement does not rise to the level of a viable Eighth Amendment claim.

As recognized in Estelle v. Gamble, 429 U.S. 97 (1976), the government has an "obligation to provide medical care for those whom it is punishing by incarceration."  Id. at 103. A constitutional violation, however, does not arise unless there is "deliberate indifference to serious medical needs of prisoners" which constitutes "unnecessary and wanton infliction of pain."  Id. at 104 (citation omitted).  The proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).  Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106.  Where a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  It is true, however, that if inadequate

12

treatment results simply from an error in medical judgment, there is no constitutional violation. See id.

After being diagnosed with Hepatitis C in 1991, numerous physicians, including specialists, provided Chimenti with varied treatment.  Shortly after assuming his duties at SCI-Huntingdon, Doctor Mohadjerin met with Chimenti in January, 1997 and thereafter became involved in his treatment.  In May, 1998, Doctors Gaugler (a non-defendant Gastroenterologist) and Mohadjerin disagreed as to whether Plaintiff should both remain on, and be provided with increased Interferon therapy.  (See Dkt. Entry # 1, ¶ 46.)  During that same month, Plaintiff alleges that Doctor Mohadjerin told him that a new treatment, Rebetron therapy,[6] was not yet available because it was awaiting approval by the Food and Drug Administration (FDA).  Moreover, said approval was required before "the plaintiff would be treated in any fashion."( Id. at ¶ 49.)  The following month the FDA issued its approval.  (See id. )  That same month, Medical Director Mohadjerin allegedly told Chimenti that before "plaintiff could receive the new therapy" a protocol for treatment between Wexford and the DOC had to be established.  (Id. at ¶ 52.)  Plaintiff notes  that a protocol for Rebetron therapy was established by the Center for Disease Control in October, 1998.  (See id. at ¶ 64.)  In addition, Mohadjerin referred Chimenti to Dr. Gaugler in November of 1998.  An agreement regarding the Rebetron protocol was

_____

[6] Plaintiff describes Rebetron therapy as being a combination of Interferon and Ribavirin. (See Dkt. Entry # 1, ¶ 49.)

13

allegedly reached by January 1, 1999.

However, in February, 1999, Plaintiff claims that Dr. Mohadjerin informed him that he still could not receive Rebetron therapy because the "DOC had backed out of protocol negotiations with Wexford." (Dkt. Entry #1, ¶ 55.) Finally, some twenty-seven (27) months after the FDA issued its approval, Plaintiff began his Rebetron therapy on June 26, 2000. This therapy continued until Dr. Kimber replaced Mohadjerin as the prison's Medical Director. (Id. at ¶ 69-70.)

There are no allegations that the remaining Wexford Defendant, Dr. Mohadjerin, had personal involvement in any delays during the FDA's approval process or the protocol negotiations between the DOC and Wexford. All of the Plaintiff's other allegations concerning Mohadjerin are based on decisions made by that Defendant with respect to the course of Chimenti's treatment. At best, those claims represent disagreement between Plaintiff and Dr. Mohadjerin with respect to Chimenti's treatment. Since the record demonstrates that Chimenti has been provided with ongoing treatment during his confinement at SCI-Huntingdon, under the standards announced in Estelle and Farmer, the allegations asserted against Mohadjerin are insufficient for purposes of setting forth a viable claim of deliberate indifference.[7]

---

[7]Dr. Mohadjerin also asserts that the claims raised against him are limited by the applicable statute of limitations to those matters that occurred within two (2) years of the filing of the complaint in February of 2001. Plaintiff counters that the alleged deliberate indifference by

(continued...)

## C. **The Claims Against the Commonwealth Defendants**

The Commonwealth Defendants consist of three non-medical officials: Secretary Horn, Chief Hearing Examiner Bitner and Superintendent Frank, and two members of the SCI-Huntingdon medical staff, Nurses Yarger and Everhart. Collectively, they seek dismissal on the basis that there are no allegations that they were personally involved in any constitutional misconduct and Plaintiff's disagreements over the treatment he received are not actionable under § 1983.

Each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.

---

[7](...continued)
Mohadjerin was part of a continuing pattern of constitutional misconduct enabling him to recover for matters that occurred more than 2 years before this action was brought. In addition, included in Plaintiff's second grievance, No. 0037-99, are allegations which pre-date February 1, 1999. It is unclear whether the limitations period as to such matters should be tolled while administrative processes are being pursued. Dr. Mohadjerin's counsel has not addressed either the continuing wrong theory or the tolling question. Consequently, a proper determination as to the merits of his statute of limitations argument cannot be made at this time.

Rode, 845 F.2d at 1207.

On April 27, 1997, Nurse Everhart responded to a letter sent by the Plaintiff to Dr. Mohadjerin. (Complaint, Ex. "A".)  In her response, Everhart noted that there was no cure for hepatitis and that Dr. Mohadjerin had concluded that "the side effects of providing interferon outweigh the treatment itself." ( Id. ) During that same month, Chimenti filed his initial inmate grievance.  The grievance, which requested that either Doctor Rieners or Dr. Aranenda replace Dr. Mohadjerin, was initially denied by Nurse Yarger on May 1, 1997.  Subsequent unsuccessful appeals to Superintendent Frank and Commissioner Horn followed.  (See Complaint Exs. "D" and "E".)

As a result of the alleged breakdown in protocol negotiations between Wexford and the DOC,  Plaintiff initiating a second grievance, No. 0037-99, asserting that he was being treated unjustly because inmates at other correctional facilities were being provided with Rebetron treatment.  See id. at Exhibit I. Nurse Yarger provided an initial response to the grievance on February 6, 1999, informing Chimenti that there was no DOC policy instructing DOC medical vendors not to provide treatment for hepatis disorders and that the vendors had been directed to provide appropriate and adequate care when necessary. (See id. at Exhibit "J".)  Plaintiff unsuccessfully appealed Nurse Yarger's decision to both Superintendent Frank and Chief Hearing Examiner Bitner.  Plaintiff's complaint concludes that the Commonwealth Defendants,

16

by failing to act on his internal complaints and administrative grievances, were directly involved in actions which purportedly allowed his hepatitis to go untreated for a period of twenty-seven (27) months beginning in June, 2000.

The Court of Appeals for the Third Circuit in <u>Durmer</u> established that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. None of the remaining Commonwealth Defendants is a physician. Furthermore, the record of this action clearly demonstrates that during all relevant periods Plaintiff was under the care of a physician. In February 1999, Doctor Mohadjerin told Chimenti that the protocol negotiations between the DOC and Wexford had broken down. There are no allegations which could support an inference that any of the remaining Commonwealth Defendants were involved in those protocol negotiations regarding the Rebetron therapy or that they deliberately delayed the implementation of the Rebetron treatment for non-medical reasons. The mere fact that the Commonwealth Defendants responded to Chimenti's grievances does not support an inference that they were deliberately indifferent to his medical needs. They were entitled to rely upon the advice of the health care professionals. There is no allegation that any of the Commonwealth Defendants improperly interfered with the health care professionals or adversely influenced the care and treatment Chimenti received. Consequently, under the standards announced in <u>Durmer</u>, there is no basis for an Eighth Amendment claim against any of the Commonwealth

17

Defendants.[8]

## CONCLUSION

Since Chimenti failed to pursue an administrative grievance against Drs. Kimber,

Kaufer, Baddick and Rowe, as well as Nurse Pollock, the claims against those Defendants

must be dismissed without prejudice pursuant to § 1997e(a).   Plaintiff's claims against Dr.

Mohadjerin and the Commonwealth Defendants fail to assert a viable claim of deliberate

indifference.  An appropriate Order will follow.


Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania


DATED: MARCH 15, 2002

---

[8] Moreover, there is no constitutional right to a grievance procedure.  See Jones v. North
Carolina Prisoners' Labor Union, Inc., 443 U.S. 119, 137-38 (1977)(Burger, C.J., concurring)("I
do not suggest that the [grievance] procedures are constitutionally mandated.").  Accordingly, to
the extent Plaintiff contends that the Commonwealth Defendants violated his constitutional
rights by not taking corrective action on his medical complaints, said allegations fail to state a
claim upon which relief may be granted.  See Johnson v. Harding, Civil No. 3:CV-99-977, slip
op. at p. 8 (Feb. 29, 2000)(Vanaskie, C.J.).

18

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SALVATORE CHIMENTI,                          :

      Plaintiff,                           :
                                             :
v.                                           :   CIVIL NO. 3:CV-01-0273
                                             :
ROGER KIMBER, ET AL.,                        :   (Chief Judge Vanaskie)
                                             :
      Defendants.                          :

**FILED**
**SCRANTON**
MAR 1 5 2002

PER_____
**DEPUTY CLERK**

## O R D E R

NOW, THIS 15th DAY OF MARCH, 2002, for the reasons set forth in the foregoing

Memorandum, **IT IS HEREBY ORDERED THAT:**

    1.    The Wexford Defendants' motion to dismiss (Dkt. Entry # 29) is

**GRANTED.** The claims against Baddick, Rowe, Kaufer and Pollock are dismissed without

prejudice for failure to exhaust administrative remedies. The claim asserted against Dr.

Mohadjerin is dismissed for failure to state a claim upon which relief may be granted.

    2.    Defendant Roger Kimber M.D.'s motion to dismiss (Dkt Entry # 30) is **GRANTED.**

The claims against Kimber are dismissed without prejudice for failure to exhaust administrative

remedies

    3.    The Commonwealth Defendants' motion to dismiss (Dkt. Entry # 32) is **GRANTED.**

The claims against the Commonwealth Defendants are dismissed for failure to state a claim

upon which relief may be granted.

4.     The Clerk of Court is directed to **CLOSE** the case.


                         Thomas I. Vanaskie, Chief Judge
                         Middle District of Pennsylvania



O:\PRO_SE\VAN_WIE\OPINIONS\CHIMENTI,MTDS1

# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD THOMAS,
          Plaintiff,

       v.

ROBERT W. MEYERS, *et al.*,
          Defendants

:
:
:
:
:
:
:
:

CIVIL NO. 3:CV-00-1887

(JUDGE CAPUTO)

FILED
SCRANTON

MAR 2 5 2002

PER _____
DEPUTY CLERK

## MEMORANDUM

Plaintiff, Richard Thomas, an inmate presently confined in the State Correctional Institution, Waymart, Pennsylvania, ("SCI-Waymart") filed this civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff proceeds *pro se*. During the relevant time period of this action, plaintiff was incarcerated at the State Correctional Institution at Rockview ("SCI-Rockview"). Defendants in this action include the following Department of Corrections employees at SCI-Rockview (moving defendants): Robert Meyers, superintendent; Terry Whitman and David Wakefield, deputy superintendents; and Larry Lidgett, former health care administrator.

The complaint was accompanied by an application to proceed *in forma pauperis*. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996) imposed new obligations on prisoners who file suit in federal court and wish to

1

proceed *in forma pauperis* under 28 U.S.C. § 1915, *e.g.*, the full filing fee ultimately must be paid (at least in a non-habeas suit).[1]

In his third amended complaint, plaintiff alleges defendants from 1989 to 1998 failed to disclose he had hepatitis and failed to provide proper medical care. Thomas seeks declaratory relief as well as nominal, compensatory, and punitive damages.

Currently pending before this Court are moving defendants' motion for judgment on the pleadings. (Doc. 74). Also pending before this Court is plaintiff's motion for leave to file an amended complaint to identify previously unnamed defendants and add a medical malpractice claim, (Doc. 81), motion to amend medical report, (Doc. 83), motion for appointment of counsel, (Doc. 85), and second motion to amend attached medical report, (Doc. 86).

Because plaintiff relies upon a theory of *respondeat superior* as to the moving defendants, defendants' motion for judgment on the pleadings will be granted. Plaintiff's motion to file an amended complaint will be denied and plaintiff's claims as to the remaining defendants will be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) because plaintiff's action is barred by the statute of limitations, 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief may be granted, and 42 U.S.C. § 1997(e)(a) for failing to exhaust administrative remedies. Plaintiff's motions to

---

1.     The plaintiff completed this Court's form application to proceed *in forma pauperis* and authorization to have funds deducted from his prison account. The Court then issued an administrative order directing the superintendent at SCI-Waymart to commence deducting the full filing fee from plaintiff's prison trust fund account.

amend his medical report will be granted. Plaintiff's motion for appointment of counsel will

be dismissed as moot.

## BACKGROUND

A.    Relevant Procedural History

Plaintiff initiated this action with the filing of a complaint and an application for

*in forma pauperis* status on October 25, 2000. (Docs. 1, 2). By court order dated November

2, 2000, the Court granted Thomas *in forma pauperis* status and directed the United States

Marshal to serve the complaint on defendants.[2] A waiver of reply was entered by counsel

for the moving defendants on December 5, 2000.

Pursuant to court order granting plaintiff's motion for leave to file an amended

complaint, Thomas filed his first amended complaint on December 14, 2000. (Doc. 15).

Defendant Wexford Health Sources, Inc. submitted a waiver of reply to plaintiff's

amendment complaint on January 5, 2001. (Doc. 20).

On July 11, 2001, the Court granted moving defendants motion for more definite

statement. (Doc. 41). In the same order, plaintiff's second amended complaint was denied

and plaintiff was directed to file an amended complaint. Pursuant to court order, Thomas

filed his third amended complaint on August 2, 2001. (Doc. 45).[3]

---

2.    Regarding DOC employees, summons were *only* issued as to the moving defendants
and numerous "John and Jane Doe" defendants. *See* Original Complaint (Doc. 1).
Summons was also issued as to defendant Wexford Insurance Co.

3.    As part of his amended complaint, Thomas added the following defendants:
Martin Horn, "former secretary of Pennsylvania;" Joseph Lehaman and David Owens,
Jr., "state officials for Department of Corrections;" various John and Jane Does,

3

On December 7, 2001, moving defendants filed their answer to Thomas' third amended complaint. (Doc. 72). On December 10, 2001, the moving defendants filed their motion for judgment on the pleadings. (Doc. 74). The motion is fully briefed and ripe for consideration.[4]

On January 29, 2002, plaintiff filed a motion for leave to file another amended complaint. (Doc. 81). Plaintiff seeks to identify the various Jane and John Doe defendants. The defendants consist of numerous medical doctors, a nurse, and a former superintendent at SCI-Rockview. Plaintiff also seeks to add a medical malpractice claim. Because plaintiff's original complaint is barred by the statute of limitations and the matter is not properly before this Court, the motion will be denied since the identification of the Doe defendants has no impact on the statute of limitation issue.

Plaintiff is also seeking to add additional medical documents to his record. (Docs. 83, 86). By letter dated February 14, 2002, moving defendants stated they did not oppose

---

employees of SCI-Rockview; Dr. John Symons and various unnamed employees of Wexford Health Sources, Inc.; Dennis Roth, warden of Montgomery County Correctional Facilities ("MCCF"); Julie Algaron, deputy warden of MCCF; various unnamed employees at MCCF; Donald Vaughn, superintendent at state correctional institution at Graterford ("SCI-Graterford"); and various unnamed employees at SCI-Graterford. (Doc. 45, ¶¶ 4-8).

4. On February 14, 2002, counsel for moving defendants waived their right to file a reply brief via letter to the Court. (Doc. 84).

the first request by plaintiff.[5]  Because the medical reports are consistent with plaintiff's

allegations in his amended complaint, the motions will be granted.[6]

B.      **Factual Background**[7]

On or about February 23, 1989, Thomas was transferred from SCI-Graterford to

SCI-Rockview where he was housed for more than eleven (11) years.  Plaintiff alleges that

in April of 1989, unnamed doctors or nurses at SCI-Rockview Medical Department took a

blood sample and tested it for diseases.  Plaintiff asserts that the results of the blood test

revealed he had the hepatitis virus and his liver was deteriorating faster than normal.

Thomas contends the results were not made available to him, and, therefore, he could not

seek medical care to treat the disease.  Plaintiff states he did not receive any medical

treatment for his hepatitis virus until October 1999.

Thomas contends that in April 1989 there was no protocol or medical treatment

for inmates infected with hepatitis B or C and that it was not until January 2000 that SCI-

Rockview and the DOC had " [a] medical 'protocol' from (sic) inmates affected with the

Hepatitis C virus dispite (sic) an epidemic at that prison."  Plaintiff further contends that

_____

5 .    Plaintiff's second motion was filed after receipt of defendants' letter.

6 .    The Court may consider these documents in resolving the motion to dismiss
without converting it into one for summary judgment since there is no dispute among
the parties as to their authenticity and plaintiff's complaint refers to the substance of
these documents.  *See Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d
1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly
authentic document that a defendant attaches as an exhibit to a motion to dismiss if the
plaintiff's claims are based on the document.").

7 .    *See* Third Amended Complaint, ¶¶ 42-65.

defendants intentionally exhibited deliberate indifference by denying him medical treatment for the hepatitis virus from 1989 to 1996. Thomas asserts that the intentional concealment of his condition by unnamed prison officials at SCI-Rockview allowed the disease to grow worse since, in his opinion, his medical needs were "objectively sufficiently serious."

Thomas alleges that on October 15, 1998, Dr. John Symons, a Wexford employee, informed him that he had the hepatitis virus since 1989; specifically, Dr. Symons allegedly informed Thomas that he had cirrhosis of the liver, caused by a lack of proper medical care. Thomas contends he was introduced to Dr. Eggler, also a Wexford employee, who became his treating physician.

Thomas concludes that moving defendants knew he carried the hepatitis virus and intentionally refused to provide a minimum level of necessary medical care causing an excessive risk to his health. Thomas argues that the moving defendants, as reasonable persons, should have recognized the severity of his illness, yet intentionally concealed his hepatitis conditions for a period of eleven years causing the diseases to grow worse.

## DISCUSSION

### A.    Standard of Review

Fed. R. Civ. P. 12(c) states, in part, that "[a]fter the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings." In determining a motion for judgment on the pleadings, there must be no dispute of material facts and the moving party must be entitled to judgment as a matter of law. When a motion for judgment on the pleadings is based on failure to state a claim, the same

standards apply that pertain to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Phalo v. Ohio Civil Rights Commission*, 2001 WL 506525, *2 (S.D. Ohio April 17, 2001). Moving defendants submit that based on the pleadings before this Court, there are no disputes of material facts and moving defendants are entitled to judgment as a matter of law. (Doc. 77, p. 7).

A court, in rendering a decision on a motion to dismiss, must accept the veracity of the plaintiff's allegations. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *White v. Napoleon*, 897 F.2d 103, 106 (3d Cir. 1990). A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *ALA, Inc. v. CCAIR, Inc.* 29 F.3d 855, 859 (3d Cir. 1994). The reviewing court must consider only those facts alleged in the complaint and accept all of the allegations as true. *Id.*

In *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996), the Court of Appeals for the Third Circuit added that when considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." "The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990); *Independent*

*Enters., Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1168 (3d Cir. 1997). This Court will now discuss defendants' motions in light of the standards set forth above and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

B.      *Respondeat Superior*

The moving defendants contend that plaintiff's allegations regarding them fails to state a claim upon which relief can be granted because Thomas is relying solely upon a theory of *respondeat superior*. (Doc. 77, p. 9). Moving defendants further assert that plaintiff's statements are conclusory allegations that are not supported by specific facts and Thomas fails to link the moving defendants to the central acts that he alleges in his complaint. (*Id.*). In his opposing brief, Thomas contends moving defendants were provided with sound medical findings and had an obligation to inform him of his chronic illness. (Doc. 82, p. 9).

It is well-settled that claims brought under §1983 cannot be premised on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976). As explained in *Rode*:

> A defendant in a civil rights action must
> have personal involvement in the alleged
> wrongs. . . . [P]ersonal involvement can be
> shown through allegations of personal
> direction or of actual knowledge and acqui-

8

> escence. Allegations of participation or
> actual knowledge and acquiescence, however,
> must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

Although a complaint is to be liberally construed in favor of the plaintiff (*See:*
Fed.R.Civ.P. 8(f)), the Court does not have to accept every allegation it contains as true.
*Pennsylvania House, Inc. v. Barrett*, 760 F.Supp. 439, 449 (M.D.Pa. 1991)(McClure, J.).
Furthermore, conclusory allegations of law, unsupported conclusions and unwarranted
inferences need not be accepted as true. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957);
*Flanagan v. Shively*, 783 F. Supp. 922, 927 (M.D. Pa. 1992).

An application of the above standards to Thomas' third amended complaint clearly
shows that he has failed to set forth a cognizable claim against the moving defendants. Not
only does plaintiff fail to comply with Fed. R. Civ. P. 8, he clearly is relying upon a theory
of *respondeat superior*. Plaintiff's complaint, with respect to those defendants, does not state
with appropriate particularity any personal knowledge or acquiescence on their part.
Plaintiff merely offers conclusory statements. Accordingly, the moving defendants, Meyers,
Whitman, Wakefield, and Lidgett are entitled to an entry of dismissal and defendants'
motion for judgment on the pleadings will be granted.[8]

---

8. Plaintiff also relies upon a theory of *respondeat superior* as to nonmoving defendants
Horn, Lehaman, Owens, Roth, Algaron, and Vaughn who were added to the instant case
in plaintiff's third amended complaint, but, based on the record before the Court, does
not appear to have been served. Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) those
defendants are summarily dismissed from the instant action because plaintiff fails to
state a claim for which relief is available.

C.    **Statute of Limitations**

Title 28 U.S.C. § 1915 imposes obligations on prisoners who file civil actions in federal court and wish to proceed *in forma pauperis*. Section 1915(e)(2) provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

In reviewing the applicability of the statute of limitations to an action filed pursuant to § 1983, a federal court must apply the appropriate state statute of limitations which governs personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 n.9 (3d Cir. 1996). The United States Supreme Court clarified its decision in *Wilson* when it held that the residual or general applicable state personal injury statute of limitations should be applied in § 1983 actions. *Owens v. Okure*, 488 U.S. 235, 245-49 (1989); *Little v. Lycoming County*, 912 F. Supp. 809, 814 (M.D. Pa.), aff'd mem., 101 F.3d 691 (3d Cir. 1996). Pennsylvania has a personal injury statute of limitations of two years. *Fitzgerald v. Larson*, 769 F.2d 160, 162 (3d Cir. 1985); *Smith v. City of Pittsburgh*, 764 F.2d 188, 194 (3d Cir.), *cert. denied*, 474 U.S. 950 (1985); *Little*, 912 F. Supp. at 814; *see* 42 Pa. C.S.A. § 5524 (Supp. 1997).

The question of when a cause of action accrues is a question of federal law. *Smith v. Wambaugh*, 887 F. Supp. 752, 755 (M.D. Pa. 1995), *aff'd.*, 87 F.3d 108 (3d Cir. 1996). "In general, a section 1983 claim accrues when the facts which support the claim are, or

should be, apparent to a person with a reasonably prudent regard for his rights and when the identity of the person or persons responsible for the alleged violation is known or reasonably should have been known to the plaintiff." *Id.* ( citations omitted).

Thomas filed his complaint on October 25, 2000. Plaintiff states that on October 15, 1998, he was informed that he had hepatitis and that he had the infection since 1989." (Doc. 45, ¶ 51).   As such, his claims are clearly time barred.

Although this is not jurisdictional, and the statute of limitations defense may be voluntarily waived, it is certain that if this case was permitted to go forward in regards to the remaining defendants, motions to dismiss would be filed and would have to be granted.[10] It has been held that a district court may properly dismiss as frivolous an *in forma pauperis* complaint when it is apparent on the face of the complaint that the statute of limitations has expired. *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995); Myers v. Vogal, 960 F.2d 750, 750-51 (8th Cir. 1992); *Street v. Vose*, 936 F.2d 38, 39 (1st Cir. 1991) (per

---

9.   Plaintiff contends in his opposing brief that he filed his original complaint in May 2000. (Doc. 82, p. 13). However, in May 2000, plaintiff filed a writ of mandamus which was construed to be a § 1983 action and transferred to the United States District Court in the Eastern District of Pennsylvania. The only named respondent/defendant in that matter was the Court of Common Pleas for Montgomery County. *See Thomas v. Court of Common Pleas of Montgomery County*, Civil No. 3:CV-00-0893 (M.D. Pa. June 13, 2000)(Caputo, J.). Several documents were filed with plaintiff's original complaint and all were date filed on October 25, 2000. (Docs. 1-3, 5-7). Plaintiff fails to provide an explanation for the late filing but merely contends that he filed the complaint on May 9, 2000, which is not supported by the record before the Court.

10.   As is evident in the instant motion for judgment on the pleadings in which moving defendants raised the statute of limitations as another ground for dismissal of the third amended complaint.

curiam), *cert. denied*, 502 U.S. 1063 (1992); *Norris v. Vaughn*, Civ. No. 00-1856, slip op. at 3-4 (M.D. Pa. Oct. 30, 2000) (Rambo, J.); *Wicks v. Horn*, Civ. No. 98-0171, slip op. at 3-4 (M.D. Pa. Feb. 24, 1998) (Vanaskie, J.); *Clark v. Belfonti*, Civ. No. 96-1164, slip op. at 3-4 (M.D. Pa. July 2, 1996) (Rambo, C.J.). Accordingly, Thomas' third amended complaint will be dismissed as legally frivolous as to the remaining defendants, pursuant to 28 U.S.C. §1915(e)(2)(B)(i) because it is clearly time barred.

Although Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires," the district court retains the discretion to deny leave to amend "on the ground that an amendment would be futile." *Smith v. National Collegiate Athletic Ass'n*, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999). The running of a statutory limitations period can be grounds for a finding of futility. *See, e.g., Baker,* 50 F.3d at 1189-90. Thomas' § 1983 claims against the newly identified defendants in his proposed amended complaint are also precluded by Pennsylvania's two-year statute of limitations for personal injury actions. *See Bougher v. University of Pittsburgh*, 882 F.2d 74, 78-79 (3d Cir. 1989). The defendants in the proposed amended complaint are not new to the action, they are just now properly named. The actual names of the John and Jane Doe defendants does not create a "relating back" issue because the actual identification of the defendants does not change the fact that the original and amended complaints were time barred by the statute of limitations. Plaintiff's proposed medical malpractice claim is likewise time barred. As a result, Thomas' request for leave to amend his third amended complaint is denied.

12

**D.    Exhaustion of Administrative Remedies**

The Court further notes that even if the complaint was timely before me, Thomas' third amended complaint would be summarily dismissed for failure to exhaust his administrative remedies.  Section 1997(e)(a) of Title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Supreme Court has made clear that prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through a grievance process.  *See Porter v. Nussle*, 122 S.Ct. 983, 992 (2002)("we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Booth v. Churner*, 121 S.Ct. 1819, 1825 n. 6 (2001)("we hold ... that Congress has provided in § 1997e(a) that an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues.).  Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to § 1983 or any other federal law.

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance Review System.  DC-ADM 804 (effective October 20, 1994).  With certain exceptions not

13

applicable here, DC-ADM 804 provides for an administrative review of institutional grievances. A grievance is a complaint submitted by an inmate related to a problem encountered during the course of confinement. DC-ADM 804 provides that an inmate may submit a written grievance to the prison's Grievance Coordinator. An appeal from the decision of the Grievance Coordinator may be made in writing to the prison superintendent, and a final written appeal may be presented to the Chief Hearing Examiner for the Department of Corrections.

Effective May 1, 1998, the Department of Corrections amended DC-ADM 804 to provide that a prisoner, in seeking review through the grievance system, may include requests for "any claims concerning violations of Department of Corrections directives, regulations, court orders, or other laws." DC-ADM 804-4 issued April 29, 1998. This was the policy in place at the time plaintiff filed his grievance.[11]

Plaintiff contends he exhausted his administrative remedies based on Grievance No. 0440-99 which was filed on July 2, 1999. The grievance states:

> I have been incarcerated in the state system since August 23, 1988. Lasty (sic) year I was informed by the medical staff of this prison that I have been diagnosed with Hepatitis C, (sic) and B. My blood has been periodically tested, but no treatment has been provided.

---

11.    DC-ADM 804 has since been amended effective January 1, 2001. As of January 1, 2001, all inmates under the jurisdiction of the Department who have been personally affected by a Department or institution action or policy are permitted to file a grievance, to file an appeal to the facility manager from the initial grievance review, and to file a final appeal of the grievance decision to the Secretary's Office of Inmate Grievances and Appeals.

(Doc. 45, Plt. exh. DC-804 Part I). The Grievance Coordinator stated his complaint had been reviewed by the nurse supervisor and the DOC was attempting to finalize a policy for the treatment of Hepatitis C. (Doc. 45, Plt. exh. DC-804 Part II). The response further noted that "[a]s long as you are being periodically tested for the liver enzymes and they have not risen dramatically, you may not need treatment at this time." (*Id.*). Thomas was directed to speak with the doctors to see where he stood in reference to treatment. (*Id.*).

Thomas' grievance does not mention any of the defendants by name, does not seek any relief including monetary, and fails to identify any specific acts or omissions performed by a particular individual. The fact plaintiff pursued a generic grievance regarding his diagnosis and treatment does not necessarily satisfy the exhaustion requirement. The Third Circuit, in an unreported decision, has suggested that an inmate may not pursue a claim for monetary relief when such a claim was not pursued administratively. *See Geisler v. Hoffman*, Civil No. 99-1971, *slip op.* at 4 (3d Cir. Sept. 12, 2000). Two members of this Court, relying upon *Geisler*, have held that an inmate plaintiff's failure to seek monetary damages in prison grievance proceedings precluded the inmate from seeking such relief in a civil rights action. *See Laird v. Pennsylvania Department of Corrections*, Civil No. 3:CV-00-1039, *slip op.* at 3 (M.D. Pa. Sept. 26, 2001)(Nealon, J.).); *Chimenti v. Kimber, et al.*, Civil No. 3:CV-01-0273, *slip op.* at 11 (M.D. Pa. March 15, 2002)(Vanaskie, CJ.).)

Thomas did not include a request for monetary damages in his grievance nor did he seek declaratory relief. Thus, plaintiff's claims against defendants for monetary and equitable relief would appear to be foreclosed as a consequence of his failure to seek such

relief through the DOC grievance process.   Plaintiff's third amended complaint and proposed amendments are subject to dismissal pursuant to § 1997(e)(a).

## CONCLUSION

Because plaintiff relies solely upon a theory of *respondeat superior*, defendants Meyers, Whitman, Wakefield, and Lidgett's motion for judgment on the pleadings will be granted.  The third amended complaint will be summarily dismissed as to the remaining defendants for failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B)(ii); failure to exhaust administrative remedies, 42 U.S.C. § 1997(e)(a); and as frivolous for being time barred, 28 U.S.C. § 1915(e)(2)(B)(i). Plaintiff's motion for leave to file an amended complaint is denied as futile.  Plaintiff's motions to add medical documents are granted.  Finally, plaintiff's motion for appointment of counsel will be dismissed as moot.  An appropriate order follows.

A. RICHARD CAPUTO
United States District Judge

Dated:  MARCH 25, 2002

16

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD THOMAS,                  :
    Plaintiff,                   :          CIVIL NO. 3:CV-00-1887
                         :
    v.                           :          (JUDGE CAPUTO)
                         :
                         :
ROBERT W. MEYERS, *et al.*,       :
    Defendants                   :

**FILED
SCRANTON**

MAR 2 5 2002

PER _____
DEPUTY CLERK

## ORDER

NOW, THEREFORE, THIS 25th DAY OF MARCH, 2002, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for judgment on the pleadings as to defendants Meyers, Whitman, Wakefield, and Lidgett (Doc. 74) is **granted**.

2. The third amended complaint (Doc. 45) is **summarily dismissed** as to the remaining defendants for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); as legally frivolous because time barred by the statute of limitations pursuant to 28 U.S.C. § 1915(e)(2)(B)(i); and failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e)(a).

3. Plaintiff's motion for leave to file an amended complaint (Doc. 81) is **denied** as futile.

4. Plaintiff's motions to add medical documents (Docs. 83, 86) are **granted**.

5.      Plaintiff's motion for appointment of counsel (Doc. 85) is **dismissed** as moot.

6.      The Clerk of Court is directed to close the case.[12]

7.      Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

A. RICHARD CAPUTO
United States District Judge

---

12.    The dismissal of this action does not relieve plaintiff of the obligation to pay the full filing fee. Until the filing fee is paid in full, the Administrative Order previously issued is binding on the superintendent of SCI-Waymart, as well as the warden or superintendent of any correctional facility to which Thomas is transferred.

18

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CLARK,                                        :
                                                     :
    Plaintiff,                              :
                                                     :
                                                     :    Civil Action No. 01-CV-0764
    v.                                      :
                                                     :    (Judge William W. Caldwell)
LARRY LIDGETT, et. al.,                              :
                                                     :
    Defendants.                             :

## CORRECTIONS DEFENDANTS' CERTIFICATE OF
## COMPLIANCE WITH PaMDLR 7.8(b)

The Corrections Defendants, by and through their attorney, John J. Talaber,

Assistant Counsel for the Pennsylvania Department of Corrections, pursuant to the

United States District Court for the Middle District of Pennsylvania, Local Rule

7.8(b), hereby certify that the attached Brief in Support is four thousand five

hundred twenty one (4, 521) words as counted by the word processing system used

to prepare this document.

                                 Respectfully submitted,

                                 John J. Talaber
                                 Assistant Counsel
                                 Attorney Id. No. 83279

Pa. Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444
Dated: April 19, 2002

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CLARK,                      :
                                    :
    Plaintiff,                 :
                                    :   Civil Action No. 01-CV-0764
    v.                         :
                                    :   (Judge William W. Caldwell)
LARRY LIDGETT, et. al.,             :
                                    :
    Defendants.                :

## PROOF OF SERVICE

The undersigned hereby certifies that the Corrections Defendants' Brief In Support to

their Motion for Summary Judgment was served upon the person(s) in the manner indicated

below.

Service by first-class mail
addressed as follows:

William Clark, AY-5585        James D. Young, Esquire
SCI-Rockview               Lavery, Faherty, Young & Patterson, PC
Box A                      The Kunkel Building
Bellefonte, PA  16823        225 Market Street, Suite 304
                                P.O. Box 1245
                                Harrisburg, PA  17108-1245

*Jennifer J Schade*
Jennifer J. Schade
Clerk Typist II

PA Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444

Dated:  April 19, 2002