ORIGINAL

28
4/23
vf

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Docket No.  01-CV-0764

WILLIAM CLARK,

Plaintiff,

v.

LARRY LIDGETT, et al.,

Defendants.

**FILED**
HARRISBURG, PA

APR 2 2 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## CORRECTIONS DEFENDANTS' BRIEF IN SUPPORT TO THEIR
## MOTION FOR SUMMARY JUDGMENT

James M. Sheehan
General Counsel
Commonwealth of Pennsylvania

Michael A. Farnan, Chief Counsel
John J. Talaber, Assistant Counsel
Supreme Court I.D. No. 83279

Pennsylvania Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444
(Counsel for Defendants)

Dated:  April 22, 2002

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF THE CASE ........................................................................... 1

STATEMENT OF THE QUESTIONS PRESENTED .................................................. 10

ARGUMENT ................................................................................................ 11

**I.    SUMMARY JUDGMENT SHOULD BE GRANTED TO THE
CORRECTIONS DEFENDANTS BECAUSE THERE ARE NO
GENIUNE DISPUTES OF MATERIAL FACT, AND CLARK FAILS
TO STATE MERITORIOUS EIGHTH AMENDMENT VIOLATIONS
AS A MATTER OF LAW** ........................................................................ 11

    A.    Clark's claims for damages against the Corrections Defendants in their
official capacities should be dismissed as a matter of law ............................. 11

    B.    Clark's claims should be dismissed for failure to allege personal
involvement of the Corrections Defendants ................................................ 13

    C.    Clark's claims of the Corrections Defendants' deliberate indifference to
his HCV condition are not actionable as a matter of law ............................... 14

**II.    CLARK'S CLAIMS ARE BARRED BY QUALIFIED IMMUNITY** .............. 17

CONCLUSION ............................................................................................ 21

# TABLE OF AUTHORITIES

**Federal Cases**                                                                      Page(s)

Anderson v. Creighton, 483 U.S. 635 (1987) ...................................................18, 19
Bednar v. County of Schuylkill, 29 F. Supp. 2d 250 (E.D. Pa. 1998) ........................... 16
Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir.1987) ............................................. 16
Chimenti v. Kimber, Civil No. 3:CV-01-0273, slip op.,
    (M.D. Pa. Mar. 15, 2002) ....................................................................13, 14
Doe v. County of Centre, 242 F.3d 437 (3d. Cir. 2001) .........................................19, 20
Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993) ..............................................14, 17
Estelle v. Gamble, 429 U.S. 97 (1976) ........................................................... 15
Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976) ........................ 14
Hans v. Louisiana, 134 U.S. 1 (1890) ............................................................ 12
Harlow v. Fitzgerald, 457 U.S. 800 (1982) ....................................................17, 18
Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979) ....................... 15
Jermosen v. Smith, 945 F.2d 547 (2d Cir. 1991),
    cert. denied, 503 U.S. 962 (1992) ........................................................... 18
Johnson v. Harding, Civil No. 3:CV-99-977, slip op.(M.D. Pa. Feb. 29, 2000) ............ 13
McAleese v. Owens, 770 F. Supp. 255 (M.D. Pa. 1991) ......................................... 15
Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658 (1978) ............................. 12
Monmouth County Correctional Institutional Inmates v. Lanzaro,
    834 F.2d 326 (3d Cir. 1987) .................................................................. 16
Moor v. County of Alameda, 411 U.S. 693 (1973) ............................................... 12
Quern v. Jordan, 440 U.S. 332 (1979) ........................................................... 12
Rouse v. Plantier, 182 F. 3d. 192 (3d. Cir. 1999) ............................................... 19
Sheldon v. Pezley, 49 F.3d 1312 (8th Cir. 1995) ................................................ 15
Thomas v. Meyers, Civil No. 3:CV-00-1887, slip op. (M.D. Pa. Mar. 25, 2002) ........... 13
Tunnell v. Office of Public Defender, 583 F. Supp. 762 (E.D. N.Y. 1984) .................... 12
White v. Napoleon, 897 F.2d 103 (3d Cir. 1990) ................................................ 16
Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) ..................................... 12


**Federal Law**

Pa.MDLR 7.8(a) ...............................................................................13, 14
U.S. Const. Amend XI ......................................................................... 11
U.S.C. §1983 ...............................................................................1, 12
42 U.S.C. §1997(e) ..............................................................................2


**State Law**

42 Pa. C.S. § 5929 ............................................................................. 20

## STATEMENT OF THE CASE

**A.     Identity of the Parties and Statement of Claim**

Plaintiff William Clark is an inmate currently incarcerated at the State Correctional Institution at Rockview ("SCI-Rockview").[1]  The Department of Corrections employees named as Defendants ("Corrections Defendants") are: (1) former Secretary of the Department, Martin Horn; (2) former SCI-Rockview Superintendent, Robert Meyers; and (3) former Corrections Health Care Administrator, Larry Lidgett.[2]  Additionally, Clark named the following as defendants: (1) Wexford Health Sources, Inc. ("Wexford"); and (2) Wexford Medical Director, Dr. John Symons.[3]  Clark is suing the Defendants in their official and individual capacities.[4]

This is a 42 U.S.C. §1983 *pro se* action alleging deliberate indifference to the treatment of Clark's Hepatitis C ("HCV") condition in violation of his Eighth and Fourteenth Amendment rights to the United States Constitution.[5]  Clark also

---

[1]     See Complaint (doc. 1), ¶ 2.

[2]     See Complaint, ¶¶ 3,4, 7.

[3]     The non Corrections Defendants are represented by James D. Young , Esquire.  See Entry of Appearance (doc. 11).

[4]     See Complaint, ¶¶ 3-7.

[5]     See Complaint, ¶¶ 8-58.

has pendent state claims of medical malpractice and negligence.[6]  Clark seeks

declaratory and injunctive relief, as well as, compensatory and punitive damages.[7]

## B.    Relevant Procedural History

Clark filed his Complaint on May 21, 2001.[8]  All Defendants waived service

of summons on August 2, 2001.[9]  On September 10, 2001, Defendants Wexford

and Dr. Symons waived reply to the Complaint pursuant to 42 U.S.C. §1997(e).[10]

On September 14, 2001, the Corrections Defendants also waived reply to the

Complaint.[11]  On January 2, 2002, Clark served the Corrections Defendants with:

(1) a Request for Production of Documents directed to all Defendants; (2)

Interrogatories directed Defendant Lidgett; and (3) Interrogatories directed to

Defendants Horn and Meyers.[12]  On February 4, 2002, the Corrections Defendants

sought an enlargement of time to respond to Clark's aforementioned discovery

---

[6]    See Complaint, p.1 "Preliminary Statement"

[7]    See Complaint, Relief Requested, pp. 10-11.

[8]    See Complaint (doc. 1).

[9]    See Waiver of Summons (doc. 12).

[10]    See Waiver of Reply to Complaint (doc. 13).

[11]    See Waiver of Reply to Complaint (doc. 14).

[12]    See Supporting Documents to the Corrections Defendants' Motion for a
Protective Order ("Supporting Documents")(doc. 19).

requests.[13]  The Court, by Order dated February 8, 2002, granted the Corrections

Defendants' Motion directing them to respond to Clark's discovery requests on or

before March 21, 2002.[14]  On March 21, 2002, the Corrections Defendants served

Clark with a response to his Request for Production of Documents.[15]

     On March 25, 2002, the Corrections Defendants filed their Motion for

Summary Judgment, as well as, a Motion for Protective Order and a stay of their

obligation to respond to Clark's outstanding and future discovery requests with a

supporting brief and exhibits.[16]  On April 9, 2002, the Corrections Defendants

requested, and were later granted an enlargement of time to file this Supporting

Brief, Statement of Material Facts, and Supporting Documents to their Motion for

Summary Judgment.[17]  On April 12, 2002, the Corrections Defendants were served

with Clark's Brief in Opposition to their Motion for a Protective Order, thus

making their Reply Brief due on April 25, 2002.[18]  The Corrections Defendants

---

[13]    See Motion for an Enlargement of Time (doc. 15).

[14]    See Order (doc. 16).

[15]    See Defendants' Response to Plaintiff's Request for Production of Documents, attached to the Supporting Documents (Doc. 19) as Exhibit D.

[16]    See Motion for Summary Judgment (doc. 20); Motion for a Protective Order with Supporting Brief and Exhibits (Docs. 17-19).

[17]    See Motion for Enlargement of Time (Doc. 21); Order (Doc. 23).

[18]    See Plaintiff's Brief in Opposition (Doc. 22).

now timely file their Supporting Brief, Statement of Material Facts, and Supporting

Documents to their Motion for Summary Judgment.

**C.    Statement of Facts as Alleged**

In November 1984, Clark was committed to the State Correctional

Institution at Graterford ("SCI-Graterford") for a term of imprisonment of five (5)

to fifteen (15) years.[19]  Sometime in 1989, Clark was paroled from SCI-Graterford

to a Community Corrections Center; however, in early 1992, Clark was

recommitted to SCI-Graterford as a technical parole violator.[20]  Clark avers that

upon his return to SCI-Graterford in 1992, a blood sample was drawn, and a

notation was made in his medical record that was infected with HCV, yet he

not advised or cautioned by "Department health care workers" of his positive

status.[21]  Clark claims that in 1992, the medication Interferon was available to treat

his HCV condition, but the Department of Corrections did not evaluate or treat him

for treatment.[22]  Clark was re-paroled in late 1992.[23]

---

[19]     See Complaint, ¶ 8.

[20]     See Complaint, ¶¶ 9-10.

[21]     See Complaint, ¶¶ 10-14.

[22]     See Complaint, ¶ 17, 19.

[23]     See Complaint, ¶ 15.

4

Sometime in 1995 Clark was "returned to prison" but was released in April 1996, and once again, alleges that he was not "advised or cautioned by Department health care workers regarding his having HCV.[24]  Clark alleges that the failure to inform him of his HCV prevented him "from receiving treatment in his community, causing him to damage his liver further through activities harmful to those with HCV, and precluding notice so that he would not accidentally spread HCV to others . . . ."[25]

In late 1996, Clark was re-incarcerated and transferred to SCI-Rockview.[26] Clark avers that "[a]t no time between late 1996 and October 1999, was he advised of or cautioned by the Department health care workers as to his having HCV."[27] As noted in the paragraph above, Clark avers this lack of knowledge of his HCV resulted in not being able to pursue treatment, further damage to his liver, and he could not prevent the accidental spread of HCV to others.[28]

In October 1999, Clark states that he requested the SCI-Rockview medical department to give him a AIDS and HCV test; after the test, Clark was informed

---

[24]    See Complaint, ¶¶ 20-23.

[25]    See Complaint, ¶ 22.

[26]    See Complaint, ¶ 25.

[27]    See Complaint, ¶ 26, 28.

[28]    See Complaint, ¶ 27.

that he was HCV positive, and at some point prior to October 1999, that he also had both hepatitis A and B.[29]  Further, Clark avers that he first learned through examination of Department of Correction's medical records that he was infected with HCV as early as 1992, and claims that he was never informed of this prior to October 1999.[30]

Soon thereafter, Clark inquired about treatment for his HCV, and avers that he was told that "despite the large number of HCV positive inmates currently in the state prison system, the Department did not at that time have a treatment protocol for HCV, and, therefore, Plaintiff would not be receiving Interferon or any other medication to treat his HCV."[31]  Clark claims that the failure of the Department and SCI-Rockview, between 1992 and 1999, in not having a HCV treatment protocol in place, resulted in not being able to pursue treatment, caused damage to his liver, and prevented the accidental spread of HCV to others.[32]

Clark avers that "[t]he Centers for Disease Control has determined that people who have tested positive for HCV should have a liver biopsy to determine the exact HCV genotype, to determine the feasibility of treatment, and to assess the

---

[29]    See Complaint, ¶¶ 30, 31.

[30]    See Complaint, ¶ 32.

[31]    See Complaint, ¶ 33.

[32]    See Complaint, ¶ 34.

amount and extent of liver damage."[33]  Clark complains that between October 1999 and September 2000, despite making "several verbal and written requests to Defendants Horn, Meyers, Wexford, Symons, and Lidgett that he be provided with a liver biopsy and be treated for his HCV . . . " the requests were refused.[34]  Clark also avers that he exhausted his administrative remedies through the Department's grievance process but his requests were once again refused.[35]

Clark avers that on September 15, 2000, eight years after the Department first became aware of his HCV, he began receiving treatment through the drug Interferon to potentially clear the virus.[36]  However, Clark avers that the Center for Disease Control has determined that early detection and treatment in the only proper course for HCV, and that early treatment increases the success rate for clearing the virus and minimizing damage to the liver.[37]  Clark submits that the failure of the Defendants to treat his HCV earlier allowed his liver to be further

---

[33]     See Complaint, ¶ 35.

[34]     See Complaint, ¶ 36.

[35]     See Complaint, ¶ 37, 43.

[36]     See Complaint, ¶ 38.

[37]     See Complaint, ¶ 39.

damaged. Additionally, Clark argues that following Center for Disease Control recommendations, he should have been given a liver biopsy, but not treated with the drug Interferon.[38]

Overall, Clark claims that the Corrections Defendants were deliberately indifferent to his serious medical needs because: (1) between 1992 and 1999, they failed to notify or failed to have in place a notification protocol to ensure that Clark was informed he had HCV; (2) between 1992 and 1999, they failed to have in place a HCV treatment protocol; and (3) between 1992 and March 2001, they failed to have in place a HCV protocol that would require Clark to receive a liver biopsy for proper diagnosis prior to being treated with the drug Interferon.[39] Similarly, Clark makes the same allegations against Wexford and Dr. Symons.[40]

**D.    Statement of Relevant Material Facts**

On December 1, 1999, Clark filed an inmate grievance at SCI-Rockview that was given the number ROC-708-99 requesting treatment for his HCV condition. On December 15, 1999, the SCI-Rockview Grievance Coordinator provided Clark with a response and information regarding the treatment he was receiving for HCV. On December 20, 1999, Clark filed an appeal to Superintendent Meyers

---

[38]    See Complaint, ¶¶ 39-42.

[39]    See Complaint, ¶¶ 44-46, 56-58.

[40]    See Complaint, ¶¶ 50-55.

disagreeing with the December 15, 1999 response. On December 20, 1999,

Superintendent Meyers responded to Clark's appeal and agreed with the Grievance

Coordinator's response. On December 29, 1999, Clark appealed Superintendent

Meyers' decision to the Department of Corrections Chief Hearing Examiner. On

January 4, 2000, the Chief Hearing Examiner upheld the decision of

Superintendent Meyers.[41] Further, Clark admits that he is not a physician.[42] Clark

admits that on numerous occasions while incarcerated under the care, custody and

control of the Department of Corrections, medical personnel examined him.[43]

---

[41]    See Corrections Defendants' Response to Plaintiff's Request for Production of Documents, Response 1, Grievance Packet for ROC-076-99, attached to the Supporting Documents as Exhibit 1.

[42]    See Plaintiff's Answers to the Corrections Defendants interrogatories to Plaintiff, Responses 1, 13, attached to the Supporting Documents to the Corrections Defendants Brief in Support to their Motion for Summary Judgment ("Supporting Documents"), as Exhibit 2.

[43]    See Complaint (doc. 1), ¶¶ 10, 14, 21, 26, 30-33.

## STATEMENT OF QUESTIONS PRESENTED

I.    SHOULD SUMMARY JUDGMENT BE GRANTED TO THE CORRECTIONS DEFENDANTS BECAUSE THERE ARE NO GENIUNE DISPUTES OF MATERIAL FACT, AND CLARK FAILS TO STATE MERITORIUS EIGHTH AMENDMENT VIOLATIONS AS A MATTER OF LAW?

        Suggested Answer:      Yes

II.    ARE CLARK'S CLAIMS AGAINST THE CORRECTIONS DEFENDANTS BARRED BY QUALIFIED IMMUNITY?

        Suggested Answer:      Yes

## ARGUMENT

I.  **SUMMARY JUDGMENT SHOULD BE GRANTED TO THE
    CORRECTIONS DEFENDANTS BECAUSE THERE ARE NO
    GENIUNE DISPUTES OF MATERIAL FACT, AND CLARK FAILS
    TO STATE MERITORIOUS EIGHTH AMENDMENT VIOLATIONS
    AS A MATTER OF LAW.**

The Corrections Defendants, for purposes of this Motion for Summary

Judgment only, take the averments in Clark's Complaint as true; however, they

also submit a "Statement of Material Facts", pages 8-9 *supra*, containing additional

information necessary for resolution of this matter that they believe are not

disputed between the parties.  As a matter of law based on the arguments that

follow, summary judgment should be granted to the Corrections Defendants and

the Complaint against them dismissed with prejudice.

   A.  **Clark's claims for damages against the Corrections
       Defendants in their official capacities should be dismissed as
       a matter of law.**

The Eleventh Amendment provides that "[t]he Judicial power of the United

States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the citizens of the United States by citizens of another

State, or by Subjects of any foreign State."[44]  The text of the Eleventh Amendment

clearly bars suits against a state by citizens of other states and aliens.  However, the

Supreme Court has interpreted the amendment to bar damage suits in federal court

---

[44] See U.S. Const. Amend XI.

against a state by its own citizens unless the State has waived its immunity or

"Congress has exercised its undoubted power under §5 of the Fourteenth

Amendment to override that immunity."[45]  Plaintiff's federal cause of action is

based on a 42 U.S.C. §1983 claim.  Section 1983 provides, in relevant part, that:

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or
> causes to be subjected, any citizen of the United States . . . to
> the deprivation of any rights, privileges, or laws, shall be liable
> to the party injured in an action at law . . . .[46]

Under the Eleventh Amendment, Clark cannot sustain a claim for money damages

against the Department of Corrections as an agency of the state.[47]  Similarly, to the

extent that the Defendants are sued in their official capacities, the State is the real

party in interest.[48]  Therefore, the Eleventh Amendment also bars Clark's § 1983

---

[45]    See Hans v. Louisiana, 134 U.S. 1 (1890); See also Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989).

[46]    See 42 U.S.C. §1983 (emphasis added).

[47]    See Will, 491 U.S. at 66; Quern v. Jordan, 440 U.S. 332, 342 (1979).

[48]    Moreover, states, their agencies, and officials sued in their official capacities are not "persons" within the meaning of §1983.  Cf. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 688 (1978)(finding that municipalities are persons within §1983); Moor v. County of Alameda, 411 U.S. 693 (1973)(holding that municipalities are not shielded by the Eleventh Amendment).  Cf. Tunnell v. Office of Public Defender, 583 F. Supp. 762, 769 (E.D. N.Y. 1984)(noting "Monell, [which established liability based on a custom and policy basis and a failure to train and/or supervise basis] involved claims against a municipality, not a state or state official, and hence is not pertinent.").  This too supports dismissal of the claims against the Corrections Defendants in their official capacities.

claim for damages against the Corrections Defendants to the extent that they are

sued in their official capacities.

### B.     Clark's claims should be dismissed for failure to allege personal involvement of the Corrections Defendants.

A section 1983 action must allege that the defendant actually participated in

or had actual knowledge of and acquiesced in the events forming the basis of the

claims.[49]  Clark fails to link the Corrections Defendants to the central acts that he

complains about:  The failure to inform him of his diagnosis of HCV, and to have

in place a HCV protocol to treat his illness.  Instead, his allegations against the

Corrections Defendants offer no basis for liability other than one based upon their

respective supervisory positions as the Secretary, Superintendent, and Corrections

---

[49]     See Chimenti v. Kimber, Civil No. 3:CV-01-0273, slip op. at 15, 16 (M.D. Pa. Mar. 15, 2002)(Vanaskie, C.J.)(finding "[t]he mere fact that the Commonwealth Defendants [that included Secretary Horn, a Superintendent, and two nurses] responded to [the inmate's] grievances does not support an inference that they were deliberately indifferent to his medical needs.  They were entitled to rely upon the advise of health are professionals.") (citing Johnson v. Harding, Civil No. 3:CV-99-977, slip op. at p.8)(M.D. Pa. Feb. 29, 2000)(Vanaskie, C.J.)(finding that is there no constitutional right to a grievance procedure and to the extent Plaintiff contends the Commonwealth Defendants violated his constitutional rights by not taking corrective action on medical complaints, said allegations fail to state a claim upon which relief may be granted)(citation omitted)).  A copy of Chimenti is attached hereto pursuant to Pa.MDLR 7.8(a) as Exhibit A.  See also Thomas v. Meyers, Civil No. 3:CV-00-1887, slip op. at 8, 9 (M.D. Pa. Mar. 25, 2002)(Caputo, J.)(finding in a claim factually and legally on point with Clark's Complaint that Defendants Meyers and Lidgett should be dismissed from the action).  A copy of Thomas is attached hereto pursuant to Pa.MDLR 7.8(a) as Exhibit B.

Health Care Administrator:  *Respondeat superior* alone cannot be a basis for a Section 1983 suit.[50]   Therefore, summary judgment should be granted to the Corrections Defendants as a matter of law and the claims against them dismissed with prejudice.

### C.    Clark's allegations of the Corrections Defendants' deliberate indifference to his HCV condition are not actionable as a matter of law.

The Court of Appeals for the Third Circuit has established that "a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff."[51]   Clark does not allege in the Complaint that the Corrections Defendants are physicians treating him in a professional capacity.[52] Rather, Clark admits numerous times throughout his Complaint that he was provided with access to a physician.[53]   Therefore, the Corrections Defendants (and

---

[50]    See Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976).

[51]    See Chimenti, slip. op. at 17, (citing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)).  A copy of Chimenti is attached hereto pursuant to Pa. MDLR 7.8(a) as Exhibit A.

[52]    See generally Complaint, pp. 1-11.

[53]    See Complaint (doc. 1), ¶¶ 10, 14, 21, 26, 30-33.

the Department of Corrections dating back to 1992) met their Constitutional obligations as set forth in Estelle v. Gamble to provide medical care to Clark.[54]

Moreover, a "serious medical need" has been defined as "one that has been diagnosed by a physician, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."[55]  On its face, the alleged serious medical need in this case does not qualify as one apparent to even a layperson.  The diagnosis of HCV is not one that is readily apparent to laymen.  Indeed, Clark's own allegations indicate that he was diagnosed only after a "blood test."[56]

Determining the propriety of treatment for HCV (which is at the heart of Clark's action), as contrasted with a bleeding wound, opens the door for impermissible, second guessing of the course of treatment that a trained physician provided.  Courts disavow any attempt to second-guess a particular course of treatment, which remains a question of sound professional judgment.[57]  A disagreement between the doctor and a plaintiff as to the medical diagnosis and

---

[54]   See generally Estelle v. Gamble, 429 U.S. 97 (1976) (holding the government has an obligation to provide medical care to those it is punishing by incarceration).

[55]   See Sheldon v. Pezley, 49 F.3d 1312, 1316 (8th Cir. 1995).

[56]   See Complaint, ¶¶ 10-12.¶

[57]   See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); McAleese v. Owens, 770 F. Supp. 255, 258 (M.D. Pa. 1991).

treatment does not constitute deliberate indifference.[58]   Yet, this is precisely what Clark attempts to do through this 1983 action:[59]   Clark inappropriately asks this Court to substitute its judgment for the trained medical personnel who regularly saw him during the relevant times of his incarceration.

Further, a disagreement between an inmate and a physician over the course of treatment is no greater than a disagreement between physicians.  As the Third Circuit has correctly recognized "[c]ertainly, no claim is presented when a doctor disagrees with the professional judgment of another doctor.  There may, for example, be several ways to treat an illness."[60]  The Third Circuit reasoned that if differences in opinion between two medical professionals cannot be a basis for an Eighth Amendment claim, then a medically untrained correctional official cannot be found liable if he relies on the opinions of a medical professional.[61]

---

[58]      See Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir.1987).  Bednar v. County of Schuylkill, 29 F.Supp.2d 250, 253 (E.D. Pa. 1998).  Accord Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

[59]      See Plaintiff's Answers to the Corrections Defendants interrogatories to Plaintiff, Responses 1, 13, attached to the Supporting Documents as Exhibit 2.

[60]      See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

[61]      See Durmer, 991 F.2d at 69 ("Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.")

The Corrections Defendants cannot and should not be held liable for the medical decisions by the doctors and nurses who diagnosed Clark's medical conditions, and chose, in the exercise of their medical judgment, not to treat his HCV with the drugs Clark desires.  Clark's allegations amount to a disagreement in his treatment; therefore the Corrections Defendants are entitled to summary judgment as a matter of law, and the Complaint against them should be dismissed with prejudice.

## II.    CLARK'S CLAIMS ARE BARRED BY QUALIFIED IMMUNITY.

The United States Supreme Court has held that defendants may invoke qualified immunity from liability for damages claims "insofar as their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[62]  Here, the Corrections Defendants are entitled to qualified immunity because there is no clearly established law now, nor at any relevant time, that they (as Corrections Administrators) had an obligation to inform Clark of his positive HCV test.

The qualified immunity doctrine recognizes "the need to protect officials who are required to exercise their discretion and the related public interest in

---

[62]    See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

encouraging the vigorous exercise of official authority."[63]  A defendant is immune

from a Section 1983 claim if a reasonable person in his position could have

believed that his actions were proper in light of the existing law and should be

denied only if, in light of the existing law, the unlawfulness should have been

apparent.[64]

"The availability of the defense turns on the 'objective legal reasonableness'

of the allegedly unlawful official action 'assessed in light of the legal rules that

were clearly established at the time it was taken.'"[65]  The qualified immunity

analysis is:  "(1) Whether the plaintiffs allege a violation of their statutory or

constitutional rights; (2) whether the right alleged to have been violated was

clearly established in the existing law at the time of the violation; and (3) whether a

reasonable official should have known that the alleged action violated the

plaintiffs' rights."[66]

---

[63]   Id. at 807 (internal quotations and citation omitted).

[64]   See Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97
L.Ed.2d 523 (1987) (internal quotation marks omitted)."  See also Jermosen v.
Smith, 945 F.2d 547, 550 (2d Cir. 1991), cert. denied, 503 U.S. 962 (1992).

[65]   See Anderson, 483 U.S. at 640.

[66]   Id. (citing Rouse v. Plantier, 182 F. 3d. 192, 196-97 (3d. Cir. 1999)).

18

Following the Supreme Court's lead, the Third Circuit directed that the right

in question must be defined with particularity rather than abstractly.[67]  Thus, the

questions presented here are:

> (1) between 1992 and 1999, was it clearly established
> that a supervisory corrections official had a duty to notify
> an inmate that he had been diagnosed with HCV
> (assuming for purposes of the argument that the
> Corrections Defendants indeed knew of the diagnosis);

> (2) between 1992 and 1999, was it clearly established
> that a supervisory corrections official had a duty to have
> a HCV treatment protocol in place; and

> (3) between 1992 and 2001, was it clearly established
> that a supervisory corrections official had a duty to have
> a HCV protocol in place requiring a physician to utilize a
> liver biopsy prior to treating an inmate with the drug
> Interferon.

Clearly, supervisory corrections officials are not medical providers, nor are

there any allegations that a physician-patient relationship existed between the

Corrections Defendants and Clark from 1992-2001.  As noted on pages 14-17,

*supra*, Clark was provided with access to and treated by medical personnel

throughout his incarceration, and it was the treating medical personnel, and not

corrections administrators with direct knowledge of an inmate's medical

---

[67]    See <u>Doe v. County of Centre</u>, 242 F.3d 437, 454-55 (3d. Cir. 2001)

19

condition.[68]  To survive qualified immunity, it must have been clearly established that a correction official, such as three Corrections Defendants in this case, had not only a right, but also a duty to violate a patient's privacy in his medical records in order to advise him of a positive Hepatitis test.  No Court has so held.  This is a novel legal issue just like the issue in the Doe case.

Further, just as the county in Doe had a separate legal duty to protect the health of its foster children, which conflicted with the purported right of the plaintiff, correction officials are bound by the duty not to violate a patient's privacy in the confidentiality of their medical records.[69]  Here, as in Doe, because the right in question was not clearly established at the time, the Corrections Defendants are entitled to qualified immunity as a matter of law, and Clark's Complaint against them should be dismissed with prejudice.

---

[68]  See 42 Pa. C.S. § 5929 (the physician/patient privilege requires that "[n]o physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries.")

[69]  See Doe, supra at 19.

## <u>CONCLUSION</u>

**WHEREFORE**, for the above-stated reasons, this Honorable Court should grant summary judgment in favor of the Corrections Defendants and dismiss the claims against them with prejudice.

Respectfully submitted,
Office of General Counsel

BY: _____

John J. Talaber
Assistant Counsel

21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CLARK,                          :
                                        :
    Plaintiff,       :
                                        :
                                        :   Civil Action No. 01-CV-0764
    v.               :
                                        :   (Judge William W. Caldwell)
LARRY LIDGETT, et. al.,                 :
                                        :   JURY TRIAL DEMANDED
    Defendants.      :

## CORRECTIONS DEFENDANTS' CERTIFICATE OF COMPLIANCE WITH Pa.MDLR 7.8(b)

The Corrections Defendants, by and through their attorney, John J. Talaber,

Assistant Counsel for the Pennsylvania Department of Corrections, pursuant to the

United States District Court for the Middle District of Pennsylvania, Local Rule

7.8(b), hereby certify that the attached Brief in Support is four thousand seven

hundred seventy-six (4, 776) words as counted by the word processing system used

to prepare this document.

Respectfully submitted,

John J. Talaber
Assistant Counsel
Attorney Id. No. 83279

Pa. Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444
Dated: April 22, 2002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CLARK,                :

      Plaintiff,           :

                            :     Civil Action No. 01-CV-0764

      v.                     :

                            :     (Judge William W. Caldwell)

LARRY LIDGETT, et. al.,      :

                            :

      Defendants.        :

### PROOF OF SERVICE

The undersigned hereby certifies that the Corrections Defendants' Brief In Support to

their Motion for Summary Judgment was served upon the person(s) in the manner indicated

below.

Service by first-class mail
addressed as follows:

William Clark, AY-5585          James D. Young, Esquire
SCI-Rockview                    Lavery, Faherty, Young & Patterson, PC
Box A                           The Kunkel Building
Bellefonte, PA  16823          225 Market Street, Suite 304
                                   P.O. Box 1245
                                   Harrisburg, PA  17108-1245

_Jennifer L Schade_
Jennifer L. Schade
Clerk Typist II

PA Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444

Dated:   April 22, 2002