IN THE UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF PENNSYLVANIA

ORIGINAL

**WILLIAM CLARK**

    PLAINTIFF

VS.

**MARTIN HORN**, SECRETARY,
PENNSYLVANIA DEPARTMENT OF
CORRECTIONS, **ROBERT MEYERS**,
SUPERINTENDENT, STATE CORRECTIONAL
INSTITUTION AT ROCKVIEW;
**WEXFORD HEALTH SOURCES,
INC.**, HEALTH CARE PROVIDER AT
THE STATE CORRECTIONAL INSTITUTION
AT ROCKVIEW; **JOHN SYMONS**,
M.D., MEDICAL DIRECTOR, STATE
CORRECTIONAL INSTITUTION AT
ROCKVIEW; **LARRY LIDGETT**,
HEALTH CARE ADMINISTRATOR,
STATE CORRECTIONAL INSTITUTION AT
ROCKVIEW,

    DEFENDANTS.

NO. 1:CV-01-0764

(JUDGE CALDWELL)

JURY TRIAL DEMANDED

FILED
HARRISBURG, PA

MAY 1 7 2002

MARY E. D'ANDREA, CLERK
Per _____

PLAINTIFF'S RESPONSE TO CORRECTIONS DEFENDANTS'

REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO

THEIR MOTION FOR A PROTECTIVE ORDER

    PLAINTIFF COMES BEFORE THIS HONORABLE COURT AND IN AFFIRMATION OF OPPOSITION, AVERS, AND CLARIFIES IN RESPONSE THE FOLLOWING:

    THAT, THE AVERMENTS OF THIS RESPONSE REFUTE;

        (1)   THE ERRONEOUS FILING OF DEFENDANT'S "MOTION FOR A PROTECTIVE ORDER"

        (2)   "MOTION FOR SUMMARY JUDGMENT

        (3)   DEFENDANTS RESPONSE FOR PRODUCTION OF DOCUMENTS.

    DEFENDANTS CLAIM, THEY SHOULD BE RELIEVED OF THEIR OBLIGATIONS PENDING THE DISPOSITION OF THEIR "MOTION FOR SUMMARY JUDGMENT," AND THAT THE OUTCOME OF THIS MOTION COULD SUBSTANTIALLY EFFECT THE SCOPE OF THE PENDING DISCOVERY REQUESTS.

-1-

FEDERAL RULE OF CIVIL PROCEDURE 56(c) STATES THE PROCEDURE FOR GRANTING SUMMARY JUDGMENT AND SAYS, IN PERTINENT PART:

[T]HE JUDGMENT SOUGHT SHALL BE RENDERED FORTHWITH IF THE PLEADINGS, DEPOSITIONS, ANSWERS TO INTERROGATORIES, AND ADMISSIONS ON FILE, TOGETHER WITH THE AFFIDAVITS, IF ANY, SHOW THAT THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT AND THAT THE MOVING PARTY IS ENTITLED TO A JUDGMENT AS A MATTER OF LAW.

IN CONSIDERING A MOTION FOR SUMMARY JUDGMENT, THE COURT MUST VIEW THE FACTS AND ALL INFERENCE TO BE DRAWN THEREFROM IN THE LIGHT MOST FAVORABLE TO THE NON-MOVING PARTY. - 60 IVY STREET CORP. V. ALEXANDER, 822 F.2D 1432, 1435 (1987) - SEC V. BLAVIN, 760 F.2D 706, 710 (6TH CIR. 1985).

A COURT SHOULD DISMISS A CLAIM PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CAUSE OF ACTION ONLY IF IT APPEARS CERTAIN THAT NO RELIEF COULD BE GRANTED UNDER ANY SET OF FACTS WHICH COULD BE PROVED. - HISHON V. KING & SPALDING, 467 U.S. 69, 73, 104 S.CT. 2229, 2232, 81 L.ED. 2D 59 (1984).

GRANTING SUCH MOTION DETERMINES THE MERITS AT AN EARLY STAGE OF A PLAINTIFF'S CASE, THEREFORE THE COURT MUST ACCEPT AS TRUE ALL OF THE ALLEGATIONS IN THE PLEADINGS AND MUST GIVE THE PLAINTIFF THE BENEFIT OF EVERY FAVORABLE INFERENCE THAT MAY BE DRAWN FROM THOSE ALLEGATIONS. SCHROB V. CATTERSON, 948 F.2D 1402, 1405 (3RD CIR. 1991).

MOREOVER, A PRO SE COMPLAINT MUST BE LIBERALLY CONSTRUED AND HELD TO LESS STRINGENT STANDARD THAN FORMAL PLEADINGS. ESTELLE V. GAMBLE, 429 U.S. 97, 97 S.CT. 285, 50 L.ED. 2D 251 (1976).

A PRO SE ACTION "CAN ONLY BE DISMISSED FOR FAILURE TO STATE A CLAIM IF IT APPEARS "BEYOND DOUBT THAT THE PLAINTIFF CAN PROVE NO SET OF FACTS IN SUPPORT OF HIS CLAIM WHICH WOULD ENTITLE HIM TO RELIEF." - HAINES V. KERNER, 404 U.S. 519, 521, 92 S.CT. 594, 596, 30 L.ED. 2D 652 (1972).

PLAINTIFF CLAIMS THE FACTS OF THE ISSUES, AS WELL AS DISCOVERY OF THIS SUIT, MIGHT AFFECT THE OUTCOME OF THE SUIT. - ANDERSON V. LIBERTY LOBBY INC., 477 U.S. 742, 106 S.CT. 2505, 91 L.ED. 2D 202 (1986).

PLAINTIFF'S CLAIMS ARE MADE IN GOOD FAITH.

PLAINTIFF CLAIMS THE MATERIAL FACT THAT DEFENDANTS HAVE FAILED, EVEN AT AND UP TO THIS POINT; TO ORDER, AND IN THE APPLICATION OF PROPER PREVENTATIVE CARE, INVESTIGATE FURTHER PLAINTIFF'S HEALTH BY INVESTIGATION BY WAY OF A "LIVER BIOPSY". THIS IS ONE OF PLAINTIFFS CLAIMS AT THE CORE OF THIS SUIT.

HARRIS V. THIGPEN, 941 F.2D 1495 (11TH CIR. 1991)

AT 1505 - "IN INSTITUTIONAL LEVEL CHALLENGES TO PRISON HEALTH CARE SUCH AS THIS ONE, SYSTEMIC DEFICIENCIES CAN PROVIDE THE BASIS FOR A FINDING OF DELIBERATE INDIFFERENCE... DELIBERATE INDIFFERENCE TO INMATES HEALTH NEEDS MAY BE SHOWN, FOR EXAMPLE, BY PROVIDING THAT THERE ARE "SUCH SYSTEMATIC AND GROSS DEFICIENCIES IN STAFFING, FACILITIES, EQUIPMENT, OR PROCEDURES THAT THE INMATE POPULATION IS EFFECTIVELY DENIED ACCESS TO ADEQUATE MEDICAL CARE...

INADEQUATE CARE AND PROCEDURE IS THE ESSENCE OF PLAINTIFFS CLAIMS.

FAGAN V. DISTRICT OF COLUMBIA, 136 F.R.D.S. (D.D.C. 1991)

AT 7 - "IT IS REASONABLE TO EXPECT DEFENDANTS TO HAVE THE INFORMATION PLAINTIFFS SEEK AND FOR THE INFORMATION TO BE ACCESSIBLE IN DEFENDANTS FILES. PLAINTIFF SHOULD NOT SUFFER IF THE INFORMATION IS NOT EASILY ACCESSIBLE..."

FOR WHAT EVER REASON, DEFENDANTS HAVE NOT IN GOOD FAITH ALLOWED PLAINTIFF PROPER DISCOVERY NOR ADEQUATELY GIVEN PLAINTIFF OPPORTUNITY AND ACCESSIBILITY TO DISCOVER THE DOCUMENTS IN QUESTION HERE.

"DEFENDANTS REPLY" PAGE 2, (THE PROCEDURAL HISTORY) IS DOCUMENTED FOR THE COURT WHICH MAY BE JUDGED BY THEM, SHOWS THE ACTIONS OF DEFENDANTS IN RELATION TO THE DISCOVERY PROCESS.

PLAINTIFF HAS ALREADY NOTED, - RATHER THAN DEFENDANTS, PROVIDING A FULL AND PROPER RESPONSE TO PLAINTIFF, DEFENDANTS HAVE FILED MOTIONS AT ISSUE HEREIN.

IN DEFENDANTS "MOTION FOR ENLARGEMENT OF TIME" DATED APRIL 25, 2002, #25 - ... "SPECIFICALLY TO OBTAIN DETAILS OF WHEN THE EXCHANGE TOOK PLACE."

PLAINTIFF AVERS, ON THE CONTRARY CORRECTIONS DEFENDANTS HAVE NOT PROVIDED IN PROPER RESPONSE AND PRESENTS THESE FACTS: --

ON APRIL 25, 2002 PLAINTIFF WROTE A LETTER TO THE CLERK OF COURTS EXPLAINING THE ELABORATE PROCEDURE PLAINTIFF WAS FORCED TO GO THROUGH IN ORDER TO TRY TO GET "DISCOVERY DOCUMENTS." SEE EXHIBIT #1.

PLAINTIFF WAS ALLOWED APPROXIMATELY TWENTY (20) MINUTES TO LOOK THROUGH OVER FOUR HUNDRED (400) PAGES OF MEDICAL RECORDS, WHICH PLAINTIFF HAS NO PROFESSIONAL KNOWLEDGE OF. THIS AMOUNTS TO APPROXIMATELY 3 SECONDS PER VIEWING, PER PAGE. EVEN WITHOUT ENDORSING MR. RACKOVANS CLAIMS OF 40 MINUTES, THIS WOULD AMOUNT TO APPROXIMATELY 6 SECONDS PER VIEWING, PER PAGE.

THE CHAIN OF EVENTS WHICH OCCURRED CONCERNING THE DISCOVERY OF MEDICAL DOCUMENTS ORIGINALLY APPEARED TO BE MADE IN GOOD FAITH, BUT CIRCUMSTANCES CHANGED.

PLAINTIFF IN LETTER (EXHIBIT #1) WAS TOLD BY MR. RACKOVAN IT WOULD BE EASIER TO HAVE A SECRETARY COPY THEM. NO ELABORATE FEE WAS MENTIONED.

PLAINTIFF AVERS, HE IS PREJUDICED BY DEFENDANTS SCHEME, AND (1) INMATES WHO WISH TO HAVE DOCUMENTS COPIED OF THEIR RECORDS, IN SOME CASES, COUNSELORS MAY PRODUCE SAID DOCUMENTS FOR THEM, FREE OF CHARGE. (2) IF AN INMATE SEEKS RECORDS FROM "RECORDS OFFICE" A TEN CENT (10¢) PER COPY IS CHARGED TO INMATES.

PLAINTIFF MAY VERY WELL BE A "LITIGANT" INVOLVED IN A MEDICAL SUIT, HOWEVER HE IS AN "INMATE" HOUSED WITH "SIMILARLY SITUATED" INDIVIDUALS.

INMATES AT "ROCKVIEW" DO NOT HAVE ACCESS TO PHOTO COPYING MACHINES EXCEPT THROUGH A PROPER CHANNEL AT THE INSTITUTION LIBRARY. ALL DOCUMENTS TO BE COPIED AT THE LIBRARY, THE FEE IS TEN CENTS (10¢).

PLAINTIFF PRESENTS COPYS OF DCM-003 FROM THE INMATE HANDBOOK. SEE EXHIBIT #2. PERTINENT PART V. TREATMENT INFORMATION - (C) MEDICAL RECORDS: (C,1) ACCESS BY THE SUBJECT INMATE. (SEE SECTION V.E.)

SECTION V. C,2. ACCESS BY PERSONS OTHER THAN THE SUBJECT INMATE:

SECTION V. C,2 - a.(2) (DEALS WITH PAYING COST) NOTE: - V.C,2. ACCESS BY PERSONS OTHER THAN THE SUBJECT INMATE. (SECTION V.E. MAKES NO MENTION OF PAYING COST BY INMATE.)

ON APRIL 28, 2002, PLAINTIFF DID MAKE ANOTHER ATTEMPT TO GO THROUGH PROPER CHANNELS WITH THE DEFENDANTS FOR A PROPER RESPONSE. SEE EXHIBIT #3.

MR. RACKOVAN HAS DETERMINED THAT NOW 45 MINUTES WAS SUFFICIENT. SEE EXHIBIT #4.

-4-

PETITIONER HAS WRITTEN THE COURT IN PURSUIT OF WHETHER HE HAS FORMA PAUPERIS STATUS AND WHAT HE MAY DO JUST TO BE ABLE TO SEE THE "DISCOVERED DOCUMENTS" HE WAS TO BE GIVEN. SEE EXHIBIT #5.

THESE CIRCUMSTANCES AND PROCESS OF DISCOVERY OF DOCUMENTS SHOWN IN THE EXHIBITS AND HEREIN, DISADVANTAGES PLAINTIFF, THIS IS ONE REASON FOR PLAINTIFF'S NEED OF "COUNSEL" SO HE MAY NOT BE DISADVANTAGED BY THE TACTICS OF THE DEFENDANTS.

PLAINTIFF PRESENTS, AS EARLY AS OCTOBER 11, 2001 IF NOT SOONER, DEFENDANTS HAVE BEEN AWARE THAT MR. ROBERT E. LASSEN HAS BEEN THE PARALEGAL HELPING PRESENT THIS CASE AND IN THE TIMELY FILING OF SAID COMPLAINT.

PLAINTIFF DOES NOT HAVE THE KNOWLEDGE NOR EXPERTISE TO PRESENT THIS COMPLAINT PROPERLY AS HAS BEEN THE PRESENTATION.

PLAINTIFF AVERS, THAT FROM FILING OF COMPLAINT TO PRESENT, HE HAS BEEN IN CONSTANT AND DIRECT CONTACT BY PHONE AND MAIL IN ORDER TO FILE AND PRESENT SAID COMPLAINT. SEE EXHIBIT 6.

IT WAS NOT UNTIL DEFENDANTS FILED FOR MOTION FOR PROTECTIVE ORDER AND PROPOSED MOTION FOR SUMMARY JUDGMENT DID PLAINTIFF BY DISCIPLINARY THREAT FIND HIMSELF DISADVANTAGED AND ADVERSELY AFFECTED IN HIS PURSUIT OF THIS PRESENT COMPLAINT.

WHEN PLAINTIFF FILED "BRIEF IN OPPOSITION" HE SENT A LETTER RELATING THE DISADVANTAGE OF BEING "BARRED" FROM HIS LEGAL HELP TO THIS COURT.

PLAINTIFF CLAIMS THE CONNECTION APPEARS MORE THAN A COINCIDENCE. SEE EXHIBIT 7.

DENYING PLAINTIFF LEGAL AID, WHICH CERTAINLY CAN HARDLY BE DEEMED A SECURITY RISK, THIS ACTION IS WITHIN THE SCOPE OF JOHNSON V. AVERY 89 S.CT. 747 (1969), HE HAVING A GRIEVANCE CANNOT PROPERLY PURSUE IT WITHOUT COUNSEL OR LEGAL HELP, ESPECIALLY THE NEED FOR SOMEONE ON THE OUTSIDE TO SECURE AND PERFECT CERTAIN PERTINENT PROCESS, WHICH NOW HE HAS BEEN PLACED IN JEOPARDY OF "SEVERE RESTRAINT" TO CONTACT MR. LASSEN, OF COURSE OF WHICH HE HASN'T. HE WOULD BE DOUBLY DISADVANTAGED IN R.H.U. (RESTRICTED HOUSING UNIT).

"JOHNSON" AT 755 "THE COOPERATION AND HELP OF LAWYER, AS WELL AS OF LAWYERS, IS NECESSARY IF THE RIGHTS OF [R]EASONABLE ACCESS TO THE COURTS" IS TO BE AVAILABLE TO THE INDIGENTS AMONG US."

DEFENDANTS HAVE EFFECTIVELY DISADVANTAGED PLAINTIFF, HOWEVER THIS RESPONSE IS TIMELY AT BEST AND AS CAN BE, TO SECURE THE RIGHTS AND RELIEF THAT PLAINTIFF SEEKS.

THE VERY NATURE OF A PORTION OF PLAINTIFFS COMPLAINT WHERE BETWEEN OCTOBER 1999 AND SEPTEMBER 2002 WHERE "VERBAL AND WRITTEN REQUESTS FOR TREATMENT WERE REFUSED," SUBSTANTIATE REASON PLAINTIFF AVERS, FOR SUMMARY JUDGMENT TO BE DENIED THE DEFENDANTS, AND THERE MOTION FOR PROTECTIVE ORDER TO BE DISMISSED.

SMITH V. JENKINS, 919 F.2D 90 (8TH CIR. 1990)

THE DELIBERATE INDIFFERENCE STANDARD CAN BE MET BY SHOWING – "GROSSLY INCOMPETENT OR INADEQUATE CARE," "A DOCTOR'S DECISION TO TAKE AN EASIER AND LESS EFFICIOUS COURSE OF TREATMENT," OR "MEDICAL CARE SO INAPPROPRIATE AS TO EVIDENCE INTENTIONAL MALTREATMENT OR A REFUSAL TO PROVIDE ESSENTIAL CARE. AT 93.

PLAINTIFF IN THIS CASE WAS ENTITLED TO PROVE HIS CASE BY ESTABLISHING THAT "DEFENDANTS" COURSE OF TREATMENT, OR LACK THEREOF, SO DEVIATED FROM PROFESSIONAL STANDARDS THAT IF AMOUNTED TO DELIBERATE INDIFFERENCE.

ID.   THE COURT IS "PARTICULARLY TROUBLED" BY THE ABSENCE OF THE PLAINTIFF'S MEDICAL RECORDS FROM THE COURT RECORD. THEY MUST BE REVIEWED BEFORE HIS CLAIM IS DISMISSED.

THE COURT HOLDS, IT WOULD BE INCONGIOUS TO DENY THE NONMOVING PARTY THE ABILITY TO PRESENT THE NECESSARY PROOF TO WITHSTAND A MOTION FOR SUMMARY JUDGMENT – AS THE DISTRICT COURT DID HERE BY DENYING THE RULE 706 MOTION – AND THEN GRANT SUMMARY JUDGMENT AGAINST THE NONMOVING PARTY SIMPLY BECAUSE THE NONMOVING PARTY HAS FAILED TO COME FORWARD WITH SUCH PROOF.

PLAINTIFF RESTATES HIS DISADVANTAGE IN THE ABSENCE OF LEGAL AID AND HAS NEED OF INDEPENDENT COUNSEL "ON THE OUTSIDE" WHO CAN PROCESS INFORMATION AND SECURE EVALUATION OF PERTINENT DOCUMENTS BY EXPERTS WHICH PLAINTIFF IS AT A LOSS TO DO UPON HIS OWN AND AT THE MOMENT IS UNSURE OF WHAT COURSE IS NECESSARY TO PROCEED TO SECURE THESE NECESSITIES TO PERFECT THIS COMPLAINT.

DEGIDO V. PUNG, 920 F.2D 525 (8TH CIR. 1990)

"A FINDING OF DELIBERATE INDIFFERENCE DOES NOT REQUIRE A SHOWING OF INTENT; IT IS SUFFICIENT TO SHOW THAT DEFENDANTS HAVE "DISREGARDED A KNOWN OR OBVIOUS RISK THAT IS VERY LIKELY TO RESULT IN THE VIOLATION OF A PRISONERS CONSTITUTIONAL RIGHTS. (QUOTING "CANTON" 532)

AT 533 – ...[A] CONSISTENT PATTERN OF RECKLESS OR NEGLIGENT CONDUCT

IS SUFFICIENT TO ESTABLISH DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS.

THE DISTRICT COURT'S FINDING OF DELIBERATE INDIFFERENCE WAS SUPPORTED BY EVIDENCE THAT THE PRISON "LACKED ADEQUATE ORGANIZATION AND CONTROL IN THE ADMINISTRATION OF HEALTH SERVICES" IN THAT "NO ONE WAS RESPONSIBLE FOR THE OVERALL SUPERVISION AND CONTROL OF HEALTH SERVICES" UNTIL HIRING OF A MEDICAL DIRECTOR WITH PUBLIC HEALTH TRAINING IN 1986. THERE WAS NO WRITTEN PROTOCOL CONCERNING TB TESTING AND CONTROL; LITTLE INFORMATION ON TB WAS AVAILABLE AT THE PRISON; NOT ALL INMATES WERE TESTED FOR TB ON INTAKE AND TWO-STEP TESTING (FOLLOW-UP EIGHT TO TEN WEEKS LATER) WAS NOT DONE. THE ADMINISTRATION OF TUBERCULOSIS MEDICATION WAS DEFICIENT. DEFENDANTS IGNORANCE AND LACK OF ADMINISTRATIVE GUIDANCE "CAUSED DELAYED DIAGNOSES OF CASES WERE DISCOVERED." NEGLECT IN THE TREATMENT OF SEVERAL INDIVIDUAL CASES IS DESCRIBED, ALONG WITH INADEQUATE METHODS OF INVESTIGATING THE CONTACTS OF IDENTIFIED TB CASES.

ADMINISTRATIVE REMEDIES THROUGH DEPARTMENT GRIEVANCE PROCESS SUPPORT DENIAL AND REFUSAL OF PLAINTIFFS REQUESTS.

PLAINTIFF OFFERS THIS BEING A PART OF THE CLAMS OF THIS SUIT, PREVENTATIVE CARE AS WELL AS CARE FOR SICKNESS, A DUTY OF THE DEFENDANTS AND RIGHT OF THE PLAINTIFF THIS SHOULD BE CONSIDERED A GENUINE ISSUE WHICH VERY WELL MIGHT AFFECT THE OUTCOME OF THE SUIT.

JOHNSON V. BUSHY, 953 F.2D 349 (8TH CIR. 1991)

THE DISTRICT COURT PROPERLY INSTRUCTED THE JURY THAT SERIOUS MEDICAL NEEDS "ONE THAT HAS BEEN DIAGNOSED BY A PHYSICIAN AS REQUIRING TREATMENT..."

PLAINTIFF PRESENTS THIS IS A PORTION OF THE CARE OF PLAINTIFFS CLAIMS.

JOHNSON V. LOCKHART, 941 F.2D 705 (8TH CIR.)

AT 707: "ABDICATION OF POLICY-MAKING AND OVERSIGHT RESPONSIBILITIES CAN REACH THE LEVEL OF DELIBERATE INDIFFERENCE AND RESULT IN THE UNNECESSARY AND WANTON INFLICTION OF PAIN TO PRISONERS WHEN TACIT AUTHORIZATION OF SUBORDINATES MISCONDUCT CAUSES CONSTITUTIONAL INJURY."

McCARGO V. VAUGHN, 778 F. SUPP. 1341 (E.D. PA. 1991)

AT 1342 - "AN INJUNCTION CAN BENEFIT PERSONS WHO ARE NON PARTIES TO THE LITIGATION EVEN IF NO CLASS HAS BEEN CERTIFIED.

IN LIGHT OF AFOREMENTIONED CASE LAW, PLAINTIFF IN FACT SHOULD NOT BE BARRED FROM HIS CLAIMS SET FORTH IN THIS COMPLAINT.

PLAINTIFF AVERS, CLAIMS PRESENTED IN THIS COMPLAINT ARE TAKEN IN GOOD FAITH WITH A SUBSTANTIATED SHOWING TO ALLOW PLAINTIFF TO PROCEED WITH THIS COMPLAINT.

WHEREFORE, PLAINTIFF RESPECTFULLY REQUESTS THIS HONORABLE COURT DENY THE CORRECTIONS DEFENDANTS "MOTION FOR A PROTECTIVE ORDER, AND GRANT SUCH OTHER RELIEF TO PLAINTIFF AS THE COURT FEELS IS WARRANTED AND NECESSARY TO PRESERVE THE INTEGRITY OF THESE PROCEEDINGS.

DATE MAILED; _5/15/02_

RESPECTFULLY SUBMITTED:

WILLIAM CLARK, PRO SE
BOX A,   AY-5585
BELLEFONTE, PA. 16823-0820

<u>CERTIFICATE OF SERVICE</u>

I, WILLIAM CLARK, CERTIFY THAT I HAVE THIS DAY SERVED UPON THE BELOW INDICATED PERSON(S) A TRUE AND CORRECT COPY OF THE FOREGOING DOCUMENT BY PLACING SAME IN THE UNITED STATES MAIL, POSTAGE PREPAID, ADDRESSED AS FOLLOWS:

JAMES D. YOUNG, ESQ.          JOHN J. TALABER, ESQ.
301 MARKET STREET, SUITE 800   OFFICE OF CHIEF COUNSEL
P.O. BOX 1245                55 UTLEY DRIVE
HARRISBURG, PA. 17108-1245     CAMP HILL, PA. 17011

RESPECTFULL SUBMITTED:

WILLIAM CLARK, PRO SE
BOX A, AY-5585
BELLEFONTE, PA. 16823-0820

DATE MAILED: 5/15/02

EXH. 1 (PG. 1)

WILLIAM CLARK                                                    4/25/02
BOX A #AY5585
BELLEFONTE, PA. 16823


RE: No. 1: CV-01-0764


TO THE CLERK OF COURTS,


I RECENTLY SUBMITTED TO THIS HONORABLE COURT A
PLAINTIFFS BRIEF IN OPPOSITION TO DEFENDANTS HORN, MEYERS
AND LIDGETTS MOTION FOR PROTECTIVE ORDER. I ALSO ADDRESSED
IN A COVER LETTER WITH THE BRIEF ABOVE THE LOSS OF MY LEGAL
ASSISTANCE.

I NOW COME HUMBLY TO THIS COURT WITH ANOTHER PROBLEM
THAT HAS ARISEN FROM MY LITIGATION. I WAS TOLD BY MY
PARALEGAL IN THE LAST CORRESPONDENCE I WAS ALLOWED THAT I
SHOULD NOW REQUEST TO SEE MY MEDICAL RECORDS AND WAS ADVISED
TO GET THEM ALL COPIED. SHORTLY AFTERWARDS, I REQUESTED A
MEETING WITH A MR. RACKOVAN, GRIEVANCE COORDINATOR FOR S.C.I.
ROCKVIEW (BY INSTITUTIONAL REQUEST SLIP) AND WAS CALLED TO MEET
WITH HIM ON APRIL 18, 2002. HE LAID OUT THE RECORDS AND TOLD
ME I COULD GO THROUGH THEM. TWENTY MINUTES LATER HE CAME
BACK INTO THE ROOM AND TOLD ME I HAD A FEW MINUTES LEFT, THAT
HE HAD SOMETHING ELSE TO DO. I HAD EXACTLY ONE HALF HOUR TO
LOOK THROUGH OVER 400 PAGES OF MEDICAL RECORDS. NEEDLESS TO

EXH. 1 (PG. 2)

SAY, I DIDN'T GET A CHANCE TO GO THROUGH MUCH. I DO NOT
BELIEVE I WAS GIVEN A PROPER OPPORTUNITY TO GO THROUGH MY
MEDICAL RECORDS. I DID LOOK FOR SPECIFIC PAGES THAT I
KNOW WERE IN MY RECORD, AND WERE NOT THERE AT THAT TIME, SO
I TOLD MR. RACKOVAN THAT I WANTED COPIES OF EVERYTHING. I
FEEL THIS WAS THE ONLY WAY I WAS GOING TO HAVE THE OPPORTUNITY
TO PERUSE MY RECORDS CORRECTLY. HE THEN SIGNED MY PASS AND STATED
IT WOULD BE EASIER TO HAVE A SECRETARY DO THEM RATHER THEN TO
SEND THEM TO THE LIBRARY. (WE INMATES PAY 10¢ A COPY FOR LEGAL
WORK THROUGH THE LIBRARY.) BECAUSE OF THAT FACT, I ASSUMED I WOULD
BE PAYING A LITTLE OVER $40.00.

ON APRIL 25, 2002, I WAS TOLD BY A WORK OFFICER TO REPORT TO MY
BLOCK AND WHEN I GOT THERE I WAS SHOWN A "CASH SLIP" FOR COPIES
IN THE AMOUNT OF $152.00 AND SOME CHANGE. IT WAS BROKEN DOWN TO SO
MUCH FOR THE FIRST TEN(10) COPIES, A LITTLE LESS PER COPY FOR THE NEXT
20 COPIES AND 28¢ PER COPY FOR THE REMAINDER. I DID NOT SIGN THE
CASH SLIP.

1) IF I HAD THE OPPORTUNITY TO VIEW MY RECORD PROPERLY I WOULD
   BE ABLE TO COPY ONLY NECCESARY DOCUMENTS, AND IN FACT, FIND
   WHETHER PAGES WERE MISSING.

2) THE COST THAT THEY ARE TRYING TO CHARGE ME, I FEEL PREJUDICES
   ME, WHEN IN FACT, HAD THEY TAKEN THEM TO THE LIBRARY TO BE COPIED,
   I WOULD HAVE ONLY BEEN CHARGED 10¢ A PAGE.

3) I BELIEVE I SHOULD HAVE BEEN ALLOWED THE OPPORTUNITY TO VIEW THE

EXH I (PG.3)

RECORD AND DETERMINE IF, IN FACT, ANY PAGES WERE MISSING. I FEEL I AM DISADVANTAGED BY THIS AND ALSO NOT BEING ABLE TO COPY ONLY WHAT PAGES ARE NEEDED.

THE COST OF THE COPIES ($152.00) IS AN OVER EXHORBITANT PRICE AS I MAKE 42¢ AN HOUR, 40 HRS. A WEEK.

I NOW AM DISADVANTAGED YET AGAIN AS I CANNOT AFFORD TO PAY FOR MY ASSUMED COMPLETE RECORD.

I PRAY THIS HONORABLE COURT HELP IN THIS MATTER, AND MY PREVIOUS PLEA, AND, OR INVOKE JURISDICTION TO HAVE MY RECORD PRODUCED IN A PROPER MANNER.

RESPECTFULLY SUBMITTED,

WILLIAM CLARK

(3)

*EXH. 2 (PG. 1)*

| DC-ADM 003 Administrative Directive | COMMONWEALTH OF PENNSYLVANIA |
|---|---|
| **Subject:**<br><br>RELEASE OF INFORMATION | DEPARTMENT OF CORRECTIONS<br><br> |

## I. PURPOSE

It is the policy of the Bureau of Correction to cooperate with governmental agencies, representatives of the media, attorneys and other private citizens by providing information requested unless the release of the data is restricted by law or would impact adversely upon an interest which the Bureau of Correction has a legitimate reason to protect. Described in this directive are the kinds of information the release of which are required or prohibited by law or Bureau policy. The procedures described herein have been established to insure that release of information is accomplished in an orderly and accountable manner.

## II. CRIMINAL HISTORY RECORDS INFORMATION

A. <u>Definition:</u>

1. Criminal History Records Information is that data which results from the initiation of criminal proceedings, including identifiable descriptions, mugshots, dates and notations of arrests, indictments, information, other formal criminal charges, sentence status reports, sentencing orders, and any other documents concerning disposition of criminal charges.

2. The term does not include intelligence, investigative, or treatment information, the release of which is addressed in sections V and VI of this directive.

B. <u>Release to Criminal Justice Agencies Mandatory:</u>

Criminal History Records Information must be disseminated by the Bureau of Correction upon request to <u>any</u> criminal justice agency. The requesting person or agency should be informed that the information which the Bureau of Correction will release is only that which is in its own files and that a complete criminal history is available from the Central Repository, the Pennsylvania State Police. However, the Bureau of Correction may not decline to release the Criminal History Record Information which is in its possession.

C. <u>Release to Individuals and Non-Criminal Justice Agencies Discretionary:</u>

Requests by individuals or non-criminal justice agencies may be honored by the Bureau of Correction or referred to the Central Repository, Pennsylvania State Police.

Criminal History Record Information which is to be disseminated to a person or agency which is <u>not a criminal justice agency</u>, must be edited to exclude all notations of arrests, indictments, or other information relating to the initiation of criminal proceedings where there is a disposition of acquittal, charges are dismissed or withdrawn, a nolle proseque is entered, the proceedings are indefinitely postponed or the individual is otherwise not found guilty of committing an alleged criminal act where three years have elapsed from the time of arrest and no proceedings are pending seeking conviction or where no conviction has occurred.

The Bureau of Correction may require the person or non-criminal justice agency requesting this information to pay for the costs of reproduction, including staff time.

*EXH. 2 (PG. 2)*

DC-ADM 003

D. Logging Requirements:

1. Mandatory: Each time Criminal History Record Information is released, a notation must be made in the file of the inmate who is the subject of the information which was released. The notation must include: a description of the information released, the source of the information, method of release (eg. in writing or via telephone), to whom and the date the information was released. Forms should be designed to facilitate the orderly logging of this information.

2. Purpose: The law requires this logging to insure that if it is ever discovered that there was an error in the Criminal History Record Information which had been compiled with regard to any person, any agency which has released information will be able to notify those to whom the information was released of the error.

3. Errors in Criminal History Record Information: If it is discovered that there is an error in any Criminal History Record Information which has been disseminated, notice of the error must be given to each individual and agency to whom the information was disseminated. This notice is to be given only when it is discovered the information disseminated is incorrect . Modification or vacation of sentences subsequent to dissemination is not an error which requires notice.

4. Information released from Central Office: When Criminal History Record Information is re-released by anyone in the Bureau of Correction Central Office, the records office at the institution where the inmate is confined must be notified so that the release may be logged in the JBC-15.

5. Information released from the institution where the subject inmate is confined: Responsibility for the release and logging of Criminal History Record Information should be delegated to one person or to a small group of persons to insure that the disseminations are accurately logged.

6. Dissemination of Criminal History which does not link a particular inmate to a specific offense or sentence (eg. a list of all inmates at a state correctional institution who are from Philadelphia County or, the number of inmates who have received a death sentence) is not governed by the Criminal History Record Information Act and need not be logged.

## III. PRE-SENTENCE INVESTIGATION REPORTS

Pre-sentence Investigation Reports shall be released only as follows:

A. To a court,

B. To persons or agencies having a legitimate professional interest in the information upon court order.

## IV. MATTERS OF PUBLIC RECORD

A. The Bureau of Correction must provide access for citizens of the Commonwealth to those documents in its custody which are "public records" within the meaning of 65 P.S. 66.1, et. seq. These documents must be available for examination at reasonable times. Photocopying shall be permitted at the expense of the person requesting the copies.

B . A public record generally is defined as:

1. Any information dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property, and

DC-ADM 003

*EXH. 2 (pg.3)*

 2. Any document which establishes the rights, privileges, or obligations of any person, group of persons or agency.

C. However, the term public record does not include:

 1. Information which would disclose the initiation, progress or result of an investigation under-taken by an agency in the performance of its official duties, or

 2. Information access to which is governed by another section of this memorandum or otherwise prohibited by law or court order,

 3. Information which would operate to prejudice or impair a person's reputation or personal security, or

 4. Information which would result in the loss of federal funds by the Commonwealth, any of its political subdivisions or municipal authorities, or

 5. Documents which are not in final form, or

 6. Documents which are generated as a result of discussions and, therefore, do not contain final decisions on a subject included in IV. B.

D. Determination of what documents are public records within the meaning of this section is often difficult. Questions as to interpretation shall be referred to the Office of the Chief Counsel for reso-lution.

## V.  TREATMENT INFORMATION

A. All treatment records in the custody of the Bureau of Correction are the property of the Bureau of Correction, and not of the subject inmate. There are cases where inmates, their representatives or others have a legitimate need for access to these documents. In those cases the need for access to the documents shall be balanced against the interests of the Bureau to keep the documents confidential.

B. No treatment information, including medical and mental health data, shall be released outside the agency unless the release is authorized in writing by the person who is the subject of the in-formation, ordered by a court, approved by the Commissioner of Correction or his designee, re-quested by an attorney representing the Bureau of Correction, the parole board assisting with a parole plan, or persons who are providing health care to the subject inmate at Bureau of Cor-rection or county expense. A form appropriate for that purpose is attached (Appendix II). The au-thorization forms will be retained in the health record with notation of what specific information was released, the date of release and the signature of the individual who released the information. Authorization by the subject inmate does not automatically require release.

Original health records shall not be released from the custody of the agency except to an attorney representing the Bureau of Correction or pursuant to court order.

C. Medical Records:

1. Access by the Subject Inmate: Inmates may discuss their own medical records with treatment staff. The inmate is not permitted to possess the originals or copies of these records except as provided in Section V.E. of this directive.

DC-ADM 003

*EXH. 2 (PG. 4)*

2. Access by persons other than the subject inmate:

   a. An attorney representing the subject inmate: Subject to the provisions of VII of this directive, the attorney or someone authorized by him may:

      (1) come to the institution, review the records and make notes; or,

      (2) upon approval of the Superintendent or his designee, obtain a copy of the records by designating specifically what he wishes to review, executing a form by which he agrees that he will not permit his client to obtain from him a copy of any material provided, and paying the costs of reproduction. (Appendix I)

   b. Treatment personnel or facilities outside of the institution and organizations to which the inmate has applied for benefits:

      (1) Physicians and treatment facilities, which are providing treatment to an inmate after his release from custody may request copies of the inmate's medical records. Whenever practical, this request should be in writing. Copies of the medical records shall be provided free of charge to the physician or facility.

      (2) Requests from an agency assisting with a parole plan may be treated similarly.

      (3) Additionally, copies of relevant medical records should be forwarded upon written request to organizations such as the Social Security or Veterans' Administration, to which the inmate has applied for benefits.

      (4) Any records released pursuant to this section shall be marked with a statement that these records are the property of the Bureau of Correction, are released for limited purposes and are not to be given to the subject inmate.

   c. Information released under this section (V.C.2.) may be limited to information required to fulfill the stated purpose of the request.

D. Mental Health Records:

   1. Access by the inmate or his attorney: Inmates may discuss any facet of their mental health treatment with treatment staff. However, neither the inmate nor his attorney shall be permitted to review or to have copies of any of his mental health records unless production is pursuant to court order or requested by an attorney representing the Bureau of Correction.

   2. Legitimate Treatment personnel or facilities outside of the institution and organizations to which the inmate has applied for benefits: Copies of mental health records shall be provided to these persons or organizations upon request. The records released shall be marked to indicate that these records are considered confidential and must not be released to the inmate. Information released under this section (V.D.2.) may be limited to information required to fulfill the stated purpose of the request.

E. Release of health records during the course of litigation: The institution shall provide originals or copies of records whenever directed to do so by court order or by an attorney who is representing the Bureau of Correction or its employees. When, under these circumstances, the copies of health records are released directly to the inmate, the documents shall be marked to show that he has obtained the documents through legitimate means.

DC-ADM 003

*EXH. 2 (pg. 5)*

## VI.  INVESTIGATIVE AND INTELLIGENCE INFORMATION

All investigative and intelligence data compiled by the Bureau of Correction which is not a matter of public record (defined in Section IV B and C) shall be considered confidential and shall be released only upon authorization by the Commissioner of Correction or his designee, an attorney representing the Bureau of Correction, or court order.

## VII  INFORMATION WHICH IS THE SUBJECT OF LITIGATION

Any request made by a person from outside the agency, other than an attorney representing the Bureau of Correction, for information other than Criminal History Record Information, regarding matters currently in litigation, shall be referred to the Public Information or Chief Counsel's Office prior to response to the request.

## VIII. RIGHTS UNDER THIS DIRECTIVE

This directive sets out policy and procedure. It does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. The directive should be interpreted to have sufficient flexibility so as to be consistent with law to permit the accomplishment of the purpose of the directives and policies of the Bureau of Correction.

## IX.  EFFECTIVE DATE

The foregoing has been approved by the Bureau of Correction and shall be effective May 1, 1984. This supersedes all previous directives on this subject and shall apply to all state correctional institutions and regional correctional facilities.

Glen R. Jeffes
Acting Commissioner

*EXH. 2 (pg. 6)*

## REQUEST FOR COPY OF MEDICAL RECORDS

TO _____, Superintendent or Director of _____

I, _____ am the legal representative of _____ , _____

who is an inmate in the custody of the Pennsylvania Bureau of Correction. I request to have sent to me at

the address noted below the following medical records concerning my client: (Must be specific as to dates

and type of information.)

_____

_____

_____

_____

_____

_____

I will use this information  for  the following purpose(s):_____

_____

_____

I enclose a release signed by my client, dated _____, which grants me permission to review

these records.

I agree to pay the Bureau of Correction the cost for reproduction and mailing of these records. I further

agree that I will use the documents I receive only for the purpose stated above, and will not permit my client

or any other inmate to possess any document provided to me pursuant to this agreement or any copy of

such documents as I may subsequently produce.

_____

Signature                              Date

Address:_____

_____

_____

State Correctional Institution

RECEIVED

APR 29

Supt's Assistant Office

*EXH.3 (PG.1)*

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
   MR. RACKOVAN - LITIGATION COORD.

2. Date: 4/28/02

3. By: (Print Inmate Name and Number)
   WILLIAM CLARK  AY5585
   _Willie Clark_
   Inmate Signature

4. Counselor's Name
   GENTZEL

5. Unit Manager's Name
   MORNINGSTAR

6. Work Assignment
   FOOD TRUCK

7. Housing Assignment
   FC

8. Subject: State your request completely but briefly. Give details.

WOULD YOU PLEASE CALL ME OVER SO THAT I CAN DISCUSS THE FOLLOWING WITH YOU?
1) GO THROUGH MY RECORDS WITH THE APPROPRIATE AMOUNT OF TIME TO PICK OUT THOSE RECORDS I FEEL ARE RELEVANT.
2) ASK MR. TALABER ABOUT YOUR COMMENT FROM HIM STATING DOC POLICY ON THE COST OF COPIES.
3) IF ~~THE~~ THE FIRST (2) TWO REQUESTS CAN'T BE SETTLED, YOU MADE THE STATEMENT ABOUT THE COPIES BEING EASIER TO BE DONE THROUGH A SECRETARY THAN TO SEND THEM TO THE LIBRARY. THEY STILL TOOK A WEEK, WHEREAS I COULD HAVE GONE THROUGH THE LIBRARY, GOTTEN THEM THE NEXT DAY AND AT 10¢ A COPY, SAVING ME $100.00.
   THANK YOU FOR YOUR TIME.  Bill Clark

9. Response: (This Section for Staff Response Only)

Mr. Clark,
    You need to understand a few points.
1) Your records are D.O.C. property. If you want copies of them, you have to pay for them. You cannot take those to the library and get them copied for 10¢ a page. You asked for them through litigation, they were provided and you must pay the prevailing litigation rate.
                                    See Reverse →

To DC-14 CAR only ☐            To DC-14 CAR and DC-15 IRS ☐

Staff Member Name _____ / _J. Rackovan_  Date 4/29/02
                          Print                    Sign

Revised July 2000

EXH. 3 (PG. 2)

MR. RACKOVAN
LITIGATION OFFICER

2. I gave you 45 minutes to look through the records. That is sufficient.

3. I understand your unhappiness with the cost, but if you don't want to spend that much, I cannot give you the copies. You need to write to the Court or Mr. Talaber and request an exemption or something and try to get the cost lowered.

4/28/02

EXH. 4

INMATE PASS - SCI ROCKVIEW

DATE: 4/18/02   PASS TO: DW

NO: A4558S   NAME: Clark

FROM: E   TIME: 1405.

SIGNED: _____
Issuing Staff Member

TIME ARRIVED: 2:10 PM   TIME DEPARTED 2:50PM

OFFICIAL SIGNATURE: J. Rackovan
Supt/Asst.

TIME RETURNED _____

TO INITIAL ISSUING STAFF MEMBER: _____

The issuing staff member is responsible to return this pass to the Inmate
Employment Office. Inmate's failure to return this slip to his issuing staff member
will result in non-payment of all wages for entire absence.

EXH. 5

4/29/02

WILLIAM CLARK
BOX A #AY-5585
BELLEFONTE, PA. 16823

RE: 1:CV01-0764

DEAR MS. D'ANDREA,

COULD YOU PLEASE TELL ME IF, AS A PRO SE PETITIONER IN THE ABOVE CAPTIONED MATTER, IF HAVE FORMA PAUPERIS STATUS? MY PROBLEM IS THE COST OF MY MEDICAL RECORDS BEING COPIED AT THE RATE OF APPROX. 37¢ PER COPY FOR ROUGHLY 400 PAGES BEING CHARGED TO ME BY THE DEPT. OF CORRECTIONS. INMATES AT S.C.I. ROCKVIEW PAY 10¢ PER COPY TO HAVE LEGAL WORK DONE.

THANK YOU FOR YOUR TIME AND CONSIDERATION IN THE ABOVE MATTER.

SINCERELY,
William Clark

EXH. 6

EXH. 6

## 2. ADDITIONS TO LIST OF AUTHORIZED INMATE TELEPHONE NUMBERS

| Name | Relationship | Telephone | Address |
|------|-------------|-----------|---------|
| BOB LASSEN | FRIEND | (810) 771-7709 | 17712 LOWELL, ROSEVILLE, MI. 48066 |
| MARY E. CLARK BILL + KAY YOST | | (610) 782-9884 (610) 266-7767 | 1 MARYLAND CIRCLE APT. 130 NAZARETH PA. 18052 |

RECEIVED
AUG 21 2001

The only exception is properly
Any telephone call which you make or receive in any state correctional facility may be intercepted, recorded, monitored, or divulged.

_____
Inmate Signature

## 3. APPROVAL

Any telephone call which you make or receive in any state correctional facility may be intercepted, recorded, monitored, or divulged. The only exception is properly placed telephone calls to or from your attorney.

( ) ALL APPROVED        ( ) ALL APPROVED EXCEPT:

Remarks:

Approving Signature _____    Title _____

Date _____

White - (DC-15)        Canary - Data Entry Records        Pink - Inmate

EXH. 7

PLAINTIFF DOES NOT HAVE COPY
SENT TO THE COURT.

**OFFICE OF CHIEF COUNSEL** JJT/mj

PENNSYLVANIA DEPARTMENT OF CORRECTIONS
55 UTLEY DRIVE
CAMP HILL, PENNSYLVANIA 17011

WILLIAM CLARK    AY-5585
SCI Rockview
Box A
Bellefonte PA 16823



U.S.POSTAGE