IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CLARK,              :
                            :
     Plaintiff              :
                            :   CIVIL NO. 1:CV-01-0764
     vs.                    :
                            :   (Judge Caldwell)
MARTIN HORN, et al.,        :
                            :
     Defendants             :

M E M O R A N D U M

I.   Introduction.

William Clark, an inmate at SCI-Rockview, Pennsylvania, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. Clark has sued certain "Corrections Defendants": Martin Horn, former Secretary of the Pennsylvania Department of Corrections; Robert Meyers, Superintendent at SCI-Rockview; and Larry Lidgett, former SCI-Rockview Corrections Health Care Administrator. He has also named Wexford Health Sources, Inc. and Dr. John Symons, Wexford Medical Director, as defendants.

Presently before the Court is the Corrections Defendants' motion for a protective order pending the resolution of their motion for summary judgment. For the reasons discussed below, Defendants' motion will be denied.

II.   Background.

In his complaint, Clark alleges that in November 1984 he was committed to SCI-Graterford to serve a period of five to fifteen years' confinement. He was paroled in 1989 only to be recommitted as a technical parole violator in 1992. Upon his readmission into the state correctional system, a blood sample was drawn and tested positive for the Hepatitis C virus ("HCV"). Clark alleges he was never advised of his positive status or advised of any treatment options at that time.

In late 1992, Clark was re-paroled from SCI-Graterford. In 1995, Clark was returned to prison and released again in April 1996. Clark avers that at no time during this brief incarceration was he advised of his HCV status or potential treatment.

In 1996, Plaintiff was again returned to prison and later transferred to SCI-Rockview. In October 1999, Clark requested medical screening for AIDS and hepatitis. Upon receipt of his blood work, Clark was advised he had active HCV and had "both Hepatitis A and B." (Doc. 1, Complaint). Clark then examined his medical records from his previous commitments only to learn he had tested positive for HCV as early as 1992.

Clark claims that in 1999 he was advised that the Department of Corrections (DOC) did not have a treatment protocol for HCV and that he would therefore not receive Interferon or any other medical

-2-

treatment for his HCV. Clark claims that his repeated requests between October 1999 and September 2000 for a liver biopsy were refused. However, on September 15, 2000, Clark admits he commenced Interferon treatments for his HCV. He claims the DOC was deliberately indifferent by failing to follow the 1992 guidelines from the Center for Disease Control that advise "early detection and treatment is the only proper course for HCV patients, and that early treatment increases the success rate of clearing the virus and for minimizing damage to the liver." (Doc. 1, ¶39).

On March 25, 2002, Correction Defendants Horn, Meyers and Lidgett filed a motion for summary judgment. Defendants have also filed a statement of material facts, exhibits and a brief in support of their motion for summary judgment. Clark has yet to file a brief in opposition to this motion.

In motiving for a protective order, the Corrections Defendants make the following arguments. First, their summary-judgment motion is dispositive and once resolved would "substantially effect the scope of the pending discovery requests." (Doc. 18). Second, noting that Horn and Lidgett are no longer employed by the DOC, these defendants argue there is good cause for delaying their response to the pending interrogatories as the granting of their motion for summary judgement would result in the dismissal of all claims against them based upon the Eleventh Amendment and qualified

-3-

immunity. Third, defendants note they have responded to Clark's January 2002 request for production of documents and lodged objections to some of them. Defendants argue Clark thus has access to the necessary materials to allow him to respond to their dispositive motion. Finally, defendants note that the requested stay is of limited duration, the pendency of the dispositive motion.

Clark opposes the Corrections Defendants' motion for a protective order by claiming "[d]efendants are 'trying to pull'" something in this case and requests a stay of the summary judgement pleadings to allow "full and complete discovery." (Doc. 22). Clark admits he has received responses to his request for production of documents but notes that at the time of filing his opposition brief he "has not yet had an opportunity to view [the identified] documents" and thus is "not in a position to determine if the Corrections Defendants have complied with the discovery request or raised valid objections."

However, the court notes that since the filing of his opposition to defendants' motion, Clark has filed other documents related to the Correction Defendants' production of documents (docs. 30 and 34) which indicate he has had the opportunity to review the produced documents. While issues regarding the process and expenses incurred associated with that motion are raised, Clark

-4-

has not filed a motion to compel challenging defendants' actual response to his request for production of documents.

With respect to the interrogatories addressed to Horn, Meyers, and Lidgett, Clark does not address his need for any particular response to the interrogatories that would assist him in the presentation of his case or the pending summary judgment motion. He merely asserts the need for these responses "in the interest of justice and fairness." (Doc. 22).

Finally, although Clark has not filed a motion to compel complete and full discovery against either the corrections or Wexford defendants, Clark notes that the Wexford defendants have "simply ignored" all of his discovery requests.[1]

III. Discussion.

The polestar of discovery is relevance. Federal Rule of Civil Procedure 26(b)(1) states that "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

---

[1] We do not have the facts to address this serious allegation concerning Wexford's compliance with discovery, but we caution the parties that failure to respond to properly posed discovery may subject offenders to sanctions.

-5-

"[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible. Rule 26(c) grants federal judges the discretion to issue protective orders that impose restrictions on the extent and manner of discovery where necessary 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.' Fed. R. Civ. P. 26(c)." Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000). The party seeking the protective order pursuant to Fed.R. Civ. P. 26(c) must show good cause for the order. See Smith v. Bic Corp., 869 F.2d 194, 199 (3d Cir. 1989).

Qualified immunity should protect public officials from both "the costs of trial" and "the burdens of broad-reaching discovery" until the threshold immunity question is resolved. Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982). However, the invocation of this defense, does not mandate a stay of discovery as it is also recognized that limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity. Egervary v. Virginia Young, 152 F. Supp. 2d 737, 743 (E.D. Pa. 2001), citing, Crawford-El v. Britton, 523 U.S. 574, 593 n. 14 (1998).

In determining whether to stay discovery while dispositive motions are decided, the trial court "inevitably must balance the

-6-

harm produced by a delay in discovery against the possibility that [a dispositive] motion will be granted and entirely eliminate the need for such discovery." <u>Chavous v. District of Columbia Financial Responsibility and Management Assistance Authority</u>, 201 F.R.D. 1, 3 (D.C.C. 2001) (internal citation omitted).

With these principles in mind we turn to the Correction Defendants' motion for a protective order to relieve them of the obligation to respond to Clark's discovery requests.

    A.  <u>Clark's Request for Production of Documents</u>.

Although defendants seek relief that includes a stay of any obligation to respond to Plaintiff's discovery requests, which by definition includes his request for production of documents, this issue appears moot. There is no dispute that the Correction Defendants have answered Clark's Request for Production of Documents. Although defendants raise objections to portions of this request, they have also identified responding documents and state they have made them available for Plaintiff's inspection and copying.[2] Clark has acknowledged he has had at least one

---

[2] The Federal Rules of Civil Procedure do not require defendants to provide indigent litigants with copies of identified documents. <u>See</u> Fed. R. Civ. P. 34. Nor is the Court required to provide <u>pro se</u> plaintiffs with financial support to cover copying costs.

-7-

opportunity to review the provided documents and request copies.[3] Since Clark has had the opportunity to review the defendants response to his request for production of documents, and he has not filed a motion to compel challenging defendants' response to that discovery request, there is no need to include the document production request in any relief this court may grant with respect to the pending motion for a protective order.

      B.   Defendants' Obligation to Respond to Clark's Interrogatories.

Defendants contend they should not have to be respond to the interrogatories because of their pending motion for summary judgement premised, in part, on Eleventh Amendment immunity and qualified immunity. However, as noted above, these defenses do not automatically preclude any and all discovery requests in anticipation of the resolution of a dispositive motion, especially if any of the responses to Clark's interrogatories will be relevant to plaintiff's claims regardless of how the qualified immunity issue is decided. Although Clark has not articulated any specific harm, prejudice or inability to address matters raised in the Corrections Defendants' summary-judgment motion, the moving

---

[3] Although Clark states he had a limited opportunity to review the documents produced by defendants in connection with his discovery request, he does not claim he was precluded from making an additional appointment to review said items.

-8-

defendants' blanket request not to answer <u>all</u> of plaintiff's interrogatories is extreme when balanced against Plaintiff's need to obtain relevant information for his claims. Balancing the burden of the moving defendants versus Clark's <u>pro se</u> status and potential inability to obtain information relative to each defendants' involvement in his medical treatment, Clark should be permitted answers to discovery. Further, a cursory review of these interrogatories confirms that the Corrections Defendants' burden in responding to these interrogatories is light.

Defendants will have forty-five days from the date of this order to serve Clark with responses to his interrogatories. Clark will have thirty days from his receipt of defendants' discovery responses to file an appropriate response to the Correction Defendants' motion for summary judgement. Defendants' motion for a protective order will be denied.

We will issue an appropriate order.

*William W. Caldwell*
WILLIAM W. CALDWELL
United States District Judge

Date: May 20, 2002