**ORIGINAL**

61
7-30
SC

FILED
HARRISBURG, PA

JUL 29 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CLARK,

      Plaintiff,

      v.

LARRY LIDGETT, et. al.,

      Defendants.

    :
    :
    :
    :    Civil Action No. 01-CV-0764
    :
    :    (Judge William W. Caldwell)
    :
    :    JURY TRIAL DEMANDED
    :

## DEFENDANTS' BRIEF IN SUPPORT OF THE
## JOINT MOTION FOR LEAVE TO DEPOSE PRISONER

## STATEMENT OF THE CASE

**A.    Identity of the Parties and Statement of Claim**

Plaintiff William Clark is an inmate currently incarcerated at the State

Correctional Institution at Rockview ("SCI-Rockview").[1] The Department of

Corrections employees named as Defendants ("Corrections Defendants") are:

(1) former Secretary of the Department, Martin Horn; (2) SCI-Rockview

Superintendent, Robert Meyers; and (3) former Corrections Health Care

Administrator, Larry Lidgett.[2] Additionally, Clark named as defendants the

following that are represented in this action by attorney James D. Young: (1)

---

1    See Complaint (doc. 1), ¶ 2.
2    See Complaint, ¶¶ 3,4, 7.

Wexford Health Sources, Inc. ("Wexford"); and (2) Wexford Medical Director, Dr. John Symons.[3]  Clark is suing the Defendants in their official and individual capacities.[4]

This is a 42 U.S.C. §1983 *pro se* action alleging deliberate indifference to the treatment of Clark's Hepatitis C ("HCV") condition in violation of his Eighth and Fourteenth Amendment rights to the United States Constitution.[5]  Clark also has pendent state claims of medical malpractice and negligence.[6]  Clark seeks declaratory and injunctive relief, as well as, compensatory and punitive damages.[7]

**B.    Relevant Procedural History**

Clark filed his Complaint on May 21, 2001.[8]  All Defendants waived service of summons on August 2, 2001.[9]  On September 10, 2001, Defendants Wexford and Dr. Symons waived reply to the Complaint pursuant to 42 U.S.C. §1997(e).[10]  On September 14, 2001, the Corrections Defendants also waived reply to the Complaint.[11]  This matter is currently in the discovery phase.  Simultaneous with this filing the Corrections Defendants are: (1) seeking leave to withdrawal their

---

3    See Entry of Appearance (doc. 11).
4    See Complaint, ¶¶ 3-7.
5    See Complaint, ¶¶ 8-58.
6    See Complaint, p.1 "Preliminary Statement"
7    See Complaint, Relief Requested, pp. 10-11.
8    See Complaint (doc. 1).
9    See Waiver of Summons (doc. 12).
10   See Waiver of Reply to Complaint (doc. 13).
11   See Waiver of Reply to Complaint (doc. 14).

2

Motion for Summary Judgment, without prejudice to refile; (2) filing two motions

for enlargement of time nunc pro tunc regarding responses to discovery matters;

and (3) filing a motion to set discovery and dispositive motion deadlines in this

action.

**C.    Statement of Alleged Facts**

In November 1984, Clark was committed to the State Correctional

Institution at Graterford ("SCI-Graterford") for a term of imprisonment of five (5)

to fifteen (15) years.[12]  Sometime in 1989, Clark was paroled from SCI-Graterford

to a Community Corrections Center; however, in early 1992, Clark was

recommitted to SCI-Graterford as a technical parole violator.[13]  Clark avers that

upon his return to SCI-Graterford in 1992, a blood sample was drawn, and a

notation was made in his medical record that was infected with HCV, yet he was

not advised or cautioned by "Department health care workers" of his positive

status.[14]  Clark claims that in 1992, the medication Interferon was available to treat

his HCV condition, but at that time the Department of Corrections evaluate him for

treatment.[15]  Clark was re-paroled in late 1992.[16]

---

[12]    See Complaint, ¶ 8.
[13]    See Complaint, ¶¶ 9-10.
[14]    See Complaint, ¶¶ 10-14.
[15]    See Complaint, ¶ 17, 19.
[16]    See Complaint, ¶ 15.

Sometime in 1995 Clark was "returned to prison" but was released in April 1996, and once again, alleges that he was not "advised or cautioned by Department health care workers regarding his having HCV.[17] Clark alleges that the failure to inform him of his HCV prevented him "from receiving treatment in his community, causing him to damage his liver further through activities harmful to those with HCV, and precluding notice so that he would not accidentally spread HCV to others . . . ."[18]

In late 1996, Clark was re-incarcerated and transferred to SCI-Rockview.[19] Clark avers that "[a]t no time between late 1996 and October 1999, was he advised of or cautioned by the Department health care workers as to his having HCV."[20] As noted in the paragraph above, Clark avers this lack of knowledge of his HCV resulted in not being able to pursue treatment, further damage to his liver, and he could not prevent the accidental spread of HCV to others.[21]

In October 1999, Clark states that he requested the SCI-Rockview medical department to give him a AIDS and HCV test; after the test, Clark was informed that he was HCV positive, and at some point prior to October 1999, that he also

---

17    See Complaint, ¶¶ 20-23.
18    See Complaint, ¶ 22.
19    See Complaint, ¶ 25.
20    See Complaint, ¶ 26, 28.
21    See Complaint, ¶ 27.

4

● ●

had both hepatitis A and B.[22]  Further, Clark avers that he first learned through examination of Department of Correction's medical records that he was infected with HCV as early as 1992, and claims that he was never informed of this prior to October 1999.[23]

Soon thereafter, Clark inquired about treatment for his HCV, and avers that he was told that "despite the large number of HCV positive inmates currently in the state prison system, the Department did not at that time have a treatment protocol for HCV, and, therefore, Plaintiff would not be receiving Interferon or any other medication to treat his HCV."[24]  Clark claims that the failure of the Department and SCI-Rockview, between 1992 and 1999, in not having a HCV treatment protocol in place, resulted in his lack of being able to pursue treatment, damage to his liver, and preventing the accidental spread of HCV to others.[25]

Clark avers that "[t]he Centers for Disease Control has determined that people who have tested positive for HCV should have a liver biopsy to determine the exact HCV genotype, to determine the feasibility of treatment, and to assess the amount and extent of liver damage."[26]  Clark complains that between October 1999 and September 2000, despite making "several verbal and written requests to

---

22    See Complaint, ¶¶ 30, 31.
23    See Complaint, ¶ 32.
24    See Complaint, ¶ 33.
25    See Complaint, ¶ 34.
26    See Complaint, ¶ 35.

Defendants Horn, Meyers, Wexford, Symons, and Lidgett that he be provided with a liver biopsy and be treated for his HCV . . . " the requests were refused.[27]  Clark also avers that he exhausted his administrative remedies through the Department's grievance process but his requests were once again refused.[28]

Clark avers that on September 15, 2000, eight years after the Department first became aware of his HCV, he began receiving treatment through the drug Interferon to potentially clear the virus.[29]  However, Clark avers that the Center for Disease Control has determined that early detection and treatment in the only proper course for HCV, and that early treatment increases the success rate for clearing the virus and minimizing damage to the liver.[30]  Clark submits that the failure of the Defendants to treat his HCV earlier allowed his liver to be further damaged.  Additionally, Clark argues that following Center for Disease Control recommendations, he should have been given a liver biopsy, but not treated with the drug Interferon.[31]

Overall, Clark claims that the Corrections Defendants were deliberately indifferent to his serious medical needs because:  (1) between 1992 and 1999, they failed to notify or failed to have in place a notification protocol to ensure the Clark

---

27    See Complaint, ¶ 36.
28    See Complaint, ¶ 37, 43.
29    See Complaint, ¶ 38.
30    See Complaint, ¶ 39.
31    See Complaint, ¶¶ 39-42.

was informed he had HCV; (2) between 1992 and 1999, they failed to have in place a HCV treatment protocol; and (3) between 1992 and March 2001, they failed to have in place a HCV protocol that would require Clark to receive a liver biopsy for proper diagnosis prior to being treated with the drug Interferon.[32] Similarly, Clark makes the same allegations against Wexford and Dr. Symons.[33]

---

[32]    See Complaint, ¶¶ 44-46, 56-58.
[33]    See Complaint, ¶¶ 50-55.

## QUESTION PRESENTED

**SHOULD THE DEFENDANTS BE GRANTED LEAVE TO DEPOSE INMATE CLARK?**

**RECOMMENDED ANSWER:      YES.**

Case 1:01-cv-00764-WWC-PT    Document 61    Filed 07/29/2002    Page 9 of 11

## ARGUMENT

### THE DEFENDANTS SHOULD BE GRANTED LEAVE TO DEPOSE INMATE CLARK.

Fed.R.Civ.P. 30(a)(2) requires that a party obtain leave of court before taking the deposition of a person confined in prison. This limitation applies even if the prisoner is a party to the action. See Miller v. Bluff, 131 F.R.D. 698, 700 (M.D. Pa. 1990) (noting that the inmate plaintiff initiated the lawsuit so "any defendant surely is entitled to take his deposition in conjunction therewith.")(citing Kendrick v. Schnorbus, 655 F.2d 727, 729 (6th Cir. 1981)). "It is well established in civil cases utmost liberality in respect to allowing discovery should prevail in favor of each party against the other party." See Rorer International Cosmetics, Ltd. v. Halpern, 85 F.R.D. 43, 45 (E.D. Pa. 1979) (citations omitted).

The Defendants respectfully request leave to depose Inmate Clark in this action to investigate the averments Plaintiff makes in his Complaint concerning treatment for his Hepatitis C. Allowing the Defendants to depose Plaintiff could clarify the issues presented in this action and is in spirit with this Honorable Court's Memorandum and Order dated May 20, 2002 (doc. 36). Upon completion of the deposition and after the close of discovery, the Corrections Defendants anticipate filing a renewed motion for summary judgment.

9

## CONCLUSION

**WHEREFORE**, in light of the foregoing, the Defendants respectfully request this Court to grant the Joint Motion for Leave to Depose Inmate Clark.

Respectfully submitted,
Office of General Counsel

BY:

John J. Talaber
Assistant Counsel
Pa Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444
Attorney No. 83279

Dated:  July 29, 2002

10

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CLARK,                    :

       Plaintiff,             :

                                   :    Civil No. 01-0764

       v.                     :    (Judge William W. Caldwell)

LARRY LIDGETT, et al.,            :

       Defendants.            :

## PROOF OF SERVICE

The undersigned hereby certifies that the Brief in Support of the Defendants' Joint

Motion for Leave to Depose Prisoner was served upon the person(s) in the manner

indicated below.

Service by first-class mail
addressed as follows:

William Clark, AY-5585              James D. Young, Esquire
SCI-Rockview                       Lavery, Faherty, Young & Patterson, PC
Box A                              The Kunkel Building
Bellefonte, PA  16823              301 Market Street, Suite 800
                                   P.O. Box 1245
                                   Harrisburg, PA  17108-1245


                                                           Marilyn Jones
                                                           Clerk Typist II

PA Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444

Dated:  July 29, 2002