

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Docket No.  1:CV-01-0764

WILLIAM CLARK,

Plaintiff,

v.

MARTIN HORN, et al.,

Defendants.



---

## CORRECTION DEFENDANTS' BRIEF IN OPPOSITION
## TO PLAINTIFF'S MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS

---

James M. Sheehan
General Counsel
Commonwealth of Pennsylvania

Michael A. Farnan, Chief Counsel
John J. Talaber, Assistant Counsel
Supreme Court I.D. No. 83279

Pennsylvania Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444
(Counsel for Corrections Defendants)

Dated:       August 20, 2002

# TABLE OF CONTENTS

STATEMENT OF THE CASE ............................................................................. 1

QUESTIONS PRESENTED ............................................................................. 8

ARGUMENT ................................................................................................... 9

      THE COURT SHOULD NOT ORDER THE CORRECTIONS
      DEFENDANTS TO PROVIDE CLARK WITH DOCUMENTS THAT
      ARE SUBJECT TO THE EXECUTIVE DELIBERATIVE PROCESS
      PRIVILEGE .............................................................................................. 9

CONCLUSION ............................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

Com Ex. Rel. Unified Judicial System v. Vartan, 733 A.2d 1258
(Pa. 1999) ...................................................................................................14

Department of Interior v. Klamath Water Users Protective Association,
121 S.Ct. 1060 (2001) ...............................................................................14

In re executive Office of the President, 215 F.3d 20
(D.C. Cir.2000)..........................................................................................14


**STATUTE(S)**

42 U.S.C. §1983 ...........................................................................................1

Fed.R.Civ.P. 26 (e)..................................................................................9, 15

## STATEMENT OF THE CASE

**A.     Identity of the Parties and Statement of Claim**

Plaintiff William Clark is an inmate currently incarcerated at the State

Correctional Institution at Rockview ("SCI-Rockview").[1] The Department of

Corrections employees named as Defendants ("Corrections Defendants") are:

(1) former Secretary of the Department, Martin Horn; (2) SCI-Rockview

Superintendent, Robert Meyers; and (3) former Corrections Health Care

Administrator, Larry Lidgett.[2] Additionally, Clark named as defendants the

following that are represented in this action by attorney James D. Young: (1)

Wexford Health Sources, Inc. ("Wexford"); and (2) Wexford Medical Director, Dr.

John Symons.[3] Clark is suing the Defendants in their official and individual

capacities.[4]

This is a 42 U.S.C. §1983 *pro se* action alleging deliberate indifference to

the treatment of Clark's Hepatitis C ("HCV") condition in violation of his Eighth

and Fourteenth Amendment rights to the United States Constitution.[5] Clark also

---

[1]     See Complaint (doc. 1), ¶ 2.
[2]     See Complaint, ¶¶ 3,4, 7.
[3]     See Entry of Appearance (doc. 11).
[4]     See Complaint, ¶¶ 3-7.
[5]     See Complaint, ¶¶ 8-58.

1

has pendent state claims of medical malpractice and negligence.[6]  Clark seeks

declaratory and injunctive relief, as well as, compensatory and punitive damages.[7]

## B.    Relevant Procedural History

### 1.    Substantiative Matters

Clark filed his Complaint on May 21, 2001.[8]  All Defendants waived service

of summons on August 2, 2001.[9]  On September 10, 2001, Defendants Wexford

and Dr. Symons waived reply to the Complaint pursuant to 42 U.S.C. §1997(e).[10]

On September 14, 2001, the Corrections Defendants also waived reply to the

Complaint.[11]  On March 25, 2002, the Corrections Defendants filed a Motion for

Summary Judgment, and later filed a Supporting Brief; however, through a motion

filed on July 29, 2002, the Corrections Defendants requested leave to withdrawal

their Motion, which the Court granted on August 6, 2002.[12]  Through the request of

the Defendants, the Court has set a discovery deadline in this matter for November

---

[6]    See Complaint, p.1 "Preliminary Statement"
[7]    See Complaint, Relief Requested, pp. 10-11.
[8]    See Complaint (doc. 1).
[9]    See Waiver of Summons (doc. 12).
[10]    See Waiver of Reply to Complaint (doc. 13).
[11]    See Waiver of Reply to Complaint (doc. 14).
[12]    See Motion for Summary Judgment (doc. 19); Brief in Support (doc.28);
Statement of Material Facts (doc. 24) and Supporting Documents (doc. 26).  See
also Motion (doc. 62); memorandum and Order (docs. 65, 66).

4, 2002, and set the deadline for dispositive motions, if any, for December 4, 2002.[13]

2.    <u>Discovery Matters</u>

Outstanding discovery issues that will soon be ripe for Court resolution involve Plaintiff's Motion to Compel Discovery and Plaintiff's Motion for Sanctions.[14]  Discovery events between the parties include the scheduled deposition of the Clark at SCI-Rockview on September 5, 2002, by counsel for all the parties.  Finally, the Corrections Defendants will serve Clark a supplemental response to his First Request for Production of Documents regarding documents recently found that are responsive to his request; however, similar objections based on the Executive Documents Privilege will be raised with some of this material. Counsel anticipates serving a Supplemental Response pursuant to Fed.R.Civ.P. 26(e), and to provide Clark with free copies of the documents involved, on or before his September 5, 2002 Deposition.

**C.    Statement of Alleged Facts**

In November 1984, Clark was committed to the State Correctional Institution at Graterford ("SCI-Graterford") for a term of imprisonment of five (5)

---

[13]    <u>See</u> Memorandum and Order (docs. 65, 66).

[14]    <u>See</u> Plaintiff's Motion to Compel (doc. 40); Brief in Support (doc. 46); Plaintiff's Motion for Sanctions (doc. 56) Brief in Support (doc. 57); Memorandum and Order dated August 6, 2002 (docs. 65, 66).

to fifteen (15) years.[15]  Sometime in 1989, Clark was paroled from SCI-Graterford to a Community Corrections Center; however, in early 1992, Clark was recommitted to SCI-Graterford as a technical parole violator.[16]  Clark avers that upon his return to SCI-Graterford in 1992, a blood sample was drawn, and a notation was made in his medical record that was infected with HCV, yet he was not advised or cautioned by "Department health care workers" of his positive status.[17]  Clark claims that in 1992, the medication Interferon was available to treat his HCV condition, but at that time the Department of Corrections evaluate him for treatment.[18]  Clark was re-paroled in late 1992.[19]

Sometime in 1995 Clark was "returned to prison" but was released in April 1996, and once again, alleges that he was not "advised or cautioned by Department health care workers regarding his having HCV.[20]  Clark alleges that the failure to inform him of his HCV prevented him "from receiving treatment in his community, causing him to damage his liver further through activities harmful to those with HCV, and precluding notice so that he would not accidentally spread HCV to others . . . ."[21]

---

[15]     See Complaint, ¶ 8.
[16]     See Complaint, ¶¶ 9-10.
[17]     See Complaint, ¶¶ 10-14.
[18]     See Complaint, ¶ 17, 19.
[19]     See Complaint, ¶ 15.
[20]     See Complaint, ¶¶ 20-23.
[21]     See Complaint, ¶ 22.

In late 1996, Clark was re-incarcerated and transferred to SCI-Rockview.[22]

Clark avers that "[a]t no time between late 1996 and October 1999, was he advised

of or cautioned by the Department health care workers as to his having HCV."[23]

As noted in the paragraph above, Clark avers this lack of knowledge of his HCV

resulted in not being able to pursue treatment, further damage to his liver, and he

could not prevent the accidental spread of HCV to others.[24]

In October 1999, Clark states that he requested the SCI-Rockview medical

department to give him a AIDS and HCV test; after the test, Clark was informed

that he was HCV positive, and at some point prior to October 1999, that he also

had both hepatitis A and B.[25]  Further, Clark avers that he first learned through

examination of Department of Correction's medical records that he was infected

with HCV as early as 1992, and claims that he was never informed of this prior to

October 1999.[26]

Soon thereafter, Clark inquired about treatment for his HCV, and avers that

he was told that "despite the large number of HCV positive inmates currently in

the state prison system, the Department did not at that time have a treatment

protocol for HCV, and, therefore, Plaintiff would not be receiving Interferon or any

---

[22]    See Complaint, ¶ 25.
[23]    See Complaint, ¶ 26, 28.
[24]    See Complaint, ¶ 27.
[25]    See Complaint, ¶¶ 30, 31.
[26]    See Complaint, ¶ 32.

other medication to treat his HCV."[27]  Clark claims that the failure of the

Department and SCI-Rockview, between 1992 and 1999, in not having a HCV

treatment protocol in place, resulted in his lack of being able to pursue treatment,

damage to his liver, and preventing the accidental spread of HCV to others.[28]

Clark avers that "[t]he Centers for Disease Control has determined that

people who have tested positive for HCV should have a liver biopsy to determine

the exact HCV genotype, to determine the feasibility of treatment, and to assess the

amount and extent of liver damage."[29]  Clark complains that between October 1999

and September 2000, despite making "several verbal and written requests to

Defendants Horn, Meyers, Wexford, Symons, and Lidgett that he be provided with

a liver biopsy and be treated for his HCV . . . " the requests were refused.[30]  Clark

also avers that he exhausted his administrative remedies through the Department's

grievance process but his requests were once again refused.[31]

Clark avers that on September 15, 2000, eight years after the Department

first became aware of his HCV, he began receiving treatment through the drug

Interferon to potentially clear the virus.[32]  However, Clark avers that the Center for

Disease Control has determined that early detection and treatment in the only

---

[27]     See Complaint, ¶ 33.
[28]     See Complaint, ¶ 34.
[29]     See Complaint, ¶ 35.
[30]     See Complaint, ¶ 36.
[31]     See Complaint, ¶ 37, 43.

proper course for HCV, and that early treatment increases the success rate for clearing the virus and minimizing damage to the liver.[33]  Clark submits that the failure of the Defendants to treat his HCV earlier allowed his liver to be further damaged.  Additionally, Clark argues that following Center for Disease Control recommendations, he should have been given a liver biopsy, but not treated with the drug Interferon.[34]

Overall, Clark claims that the Corrections Defendants were deliberately indifferent to his serious medical needs because:  (1) between 1992 and 1999, they failed to notify or failed to have in place a notification protocol to ensure the Clark was informed he had HCV; (2) between 1992 and 1999, they failed to have in place a HCV treatment protocol; and (3) between 1992 and March 2001, they failed to have in place a HCV protocol that would require Clark to receive a liver biopsy for proper diagnosis prior to being treated with the drug Interferon.[35] Similarly, Clark makes the same allegations against Wexford and Dr. Symons.[36]

---

[32]    See Complaint, ¶ 38.
[33]    See Complaint, ¶ 39.
[34]    See Complaint, ¶¶ 39-42.
[35]    See Complaint, ¶¶ 44-46, 56-58.
[36]    See Complaint, ¶¶ 50-55.

## STATEMENT OF QUESTIONS INVOLVED

**SHOULD THE COURT ORDER THE CORRECTIONS DEFENDANTS TO PROVIDE CLARK WITH DOCUMENTS THAT ARE SUBJECT TO THE EXCUTIVE DELIBERATIVE PROCESS PRIVILEGE?**

**SUGGESTED ANSWER:    NO.**

# ARGUMENT

## THE COURT SHOULD NOT ORDER THE CORRECTIONS DEFENDANTS TO PROVIDE CLARK WITH DOCUMENTS THAT ARE SUBJECT TO THE EXECUTIVE DELIBERATIVE PROCESS PRIVILEGE.

The Corrections Defendants submit that they are substantially justified in their responses to Clark's First Request for Production of Documents, such that a motion to compel is not proper or necessary.[37]  However, based on Clark's objections, issues remain in dispute between the Clark and the Corrections Defendants regarding non-disclose documents that fall under the Executive Documents Privilege; accordingly, the Corrections Defendants' and Department of Correction's respond as follows.[38]

---

[37]    As a preliminary matter, it is important to note that the Pennsylvania Department of Corrections is not a Defendant is this action; instead, three employees or former employees of the Department were named as Defendants.  In cases such as the matter before the Court, the Commonwealth provides legal representation and indemnification for possible damages to employees whose actions are deemed to be within the scope of their employment while using a good-faith exercise of authority.  The named Corrections Defendants do not have copies of the documents Clark seeks in their possession, instead, the Department of Corrections possesses the documents.  In recognition of Clark's *pro se* status and to avoid lengthening discovery in this matter, the Department is waiving the need for Clark to subpoena the material pursuant to Fed.R.Civ.P. 45, and is joining the Corrections Defendants' Brief in Opposition to Plaintiff's Motion to Compel material contained within the Department's possession as if it was a party to this action so that this matter can be quickly resolved.

[38]    The Court should note that some of the issues Clark raises are now moot based on the free copy of the Department of Corrections Medical Record that the

### A.    Clark's Request Number One:

*Each and every copy of request slips (meaning 'sick call slips' or 'requests to medical') and any and all responses to same from prison or medical Department personal relating to Plaintiff's questions or requests pertaining to his Hepatitis C.*[39]

The Corrections Defendants have provided Clark with free copies of his grievances and request slips maintained in his Department of Corrections Inmate File (DC-15) responsive to this request; accordingly, the Corrections Defendants are substantially justified in their response and have complied with Clark's request. Clark's Motion to Compel relating to this document request should be denied subject to the Corrections Defendants Fed.R.Civ.P. 26(e) duty to supplement should additional information be found responsive to this request.

---

Corrections Defendants provided to him, less privileged information at issue *infra*, as well as free copies of disclosed documents responsive to his request. Further, the Corrections Defendants withdrawal of their Motion for Summary Judgment, without prejudice, and the Court's order regarding this issue, has also mooted out some of Clark's arguments.[38]

[39] The Corrections Defendants, for purposes of simplicity in this Brief, direct the Court to their Supporting Documents, and note for the Court that their Responses to Plaintiff's italicized request are available in the Supporting Documents to this Brief; accordingly, citations to each of Clark's requests and the Corrections Defendants Response are not given. See Corrections Defendants' Response to Plaintiff's First Request for Production of Documents dated March 21, 2002, pp.1-5, attached to the Corrections Defendants' Supporting Documents to their Brief in opposition to plaintiff's Motion to Compel ("Supporting Documents"), attached thereto pursuant to Pa.MDLR 5.1(f), as Exhibit A.

**B.    Clark's Requests Numbers Two, Three and Four:**

*Provide copies of all prior draft criteria established by the Commonwealth of Pennsylvania Department of Corrections and/or Wexford Health Sources, Inc., and state whether or not they were ever approved, put into force, or used to make any determination for treatment of individuals with Hepatitis C.*

*Please state the date each such draft criteria was completed, and the names of any and all individuals who worked on, assisted, or in any way, shape, or form contributed to the creation of said guideline drafts.[40]*

*Please provide a copy of the current Hepatitis C treatment protocol, and provide the date it was implemented, including any copies of revisions, the dates of each revision, the names of any and all individuals who worked on, assisted, or in any way, shape or form contributed to the creation of said protocol(s).*

In response to the aforementioned requests, the Corrections Defendants have provided Clark with free copies of an overwhelming majority of the medical documents, correspondence reports, diagnostic test results, and x-ray reports that the Department of Corrections has in its possession responsive to his Request. Further, regarding Hepatitis C Treatment Protocols, the Corrections Defendants provided free copies of medical journal articles, Hepatitis C education materials,

---

[40] The Corrections Defendants, for purposes of simplicity in this Brief in would be a long citation to *ibid*, direct the Court to their Supporting Documents for a copy of the Secretary of the Department of Corrections, Jeffrey A. Beard's, Ph.D, Declaration containing the factual information; accordingly, specific paragraph citations are not given. See Corrections Defendants' Response to Plaintiff's First Request for Production of Documents dated March 21, 2002, pp.1-5, attached to the Corrections Defendants' Supporting Documents to their Brief in opposition to plaintiff's Motion to Compel ("Supporting Documents"), attached thereto pursuant

final versions of the Department of Corrections Hepatitis C Protocol, and a list of

known individuals with their appropriate titles involved in the development of the

Department's Hepatitis C Protocol.  However, the Corrections Defendants are not

disclosing, absent a Court order, certain documents relating to the Department's

Hepatitis C Task Force for the reasons that follow on pages 13 to 14, *infra*.  A brief

explanation of the history of Department's Hepatitis C task Force is necessary to

understand the basis of the Corrections Defendants, and ultimately the Department

of Correction's objection.

In the fall of 1998, Defendant former Secretary horn established a task force

to address the issue of Hepatitis C identification and treatment for the inmate

population.  The Hepatitis C Task Force was comprised of members of a

multidisciplinary group that included staff from: the Bureau of Healthcare, various

correction institutions, and representatives in the psychology field.  Additionally,

representatives from the Department's contracted medical providers, including

Defendant Wexford Health Sources, Inc. were included in the discussions.  The

Hepatitis C Task Force also included representatives from the Pennsylvania

Department of Health and the Pennsylvania Department of Welfare.  The members

were charged with the responsibility of working as a team to identify all the issues

involved in the identification, education, treatment, and follow-up care of those

---

to Pa.MDLR 5.1(f), as Exhibit A.

inmates who tested positive for Hepatitis C, and for ensuring that the care provided was consistent with community standards.

The Hepatitis C Task Force has met since early 1999, and continues to meet to fulfill its obligations. The recommendations of the Hepatitis C Task Force have greatly assisted senior Department of Corrections Staff in developing policies and protocols for Hepatitis C as it relates to the Departments twenty-five (25) state correctional institutions, fifteen (15) community corrections centers and one (1) motivational boot camp located throughout the Commonwealth. Further, through frank and honest discussions, the Hepatitis C Task Force has provided information to the Secretary of the Department and his staff in developing a budget to fulfill the Department's mission. In 2001, the Department budgeted 4.7 million dollars toward treating those infected with the Hepatitis C virus, with anticipated costs in 2002 of at least 5.6 million dollars for this segment of the inmate population.

Clearly, numerous documents have been generated and exchanged between the Hepatitis C Task Force, its members, and senior Department of Corrections staff. As noted on pages 12 and 13, *supra*, many documents have been produced to Clark in discovery, and counsel for the Corrections Defendants will soon be providing, via a Fed.R.Civ.P. 26(e) supplemental disclosure, many documents the Hepatitis C Task Force utilized regarding research, statistics, and population reports. However, the Corrections Defendants object to producing the following

13

materials that are in the possession of the Department of Corrections: (1) Hepatitis

C Task Force Agenda; (2) Hepatitis C Task Force Meeting Minutes; (3) non-

adopted versions of policy and protocols; (4) draft versions of Hepatitis C costs

analysis; and (5) certain documents within Clark's Medical Record containing

psychiatric evaluations surrounding his eligibility for parole.  The Corrections

Defendants and Secretary of the Department, Jeffrey A. Beard, Ph.D. submit that

the materials Clark seeks in this paragraph are within the Executive Documents

Privilege/Deliberate Process Privilege, and therefore, should not be provided to

Clark.[41]

Counsel for the Wexford Defendants has already thoroughly briefed the

legal basis and rationale for the Executive Documents Privilege, and the

Corrections Defendants join in that argument.[42]  Additionally, Secretary Beard, the

administrative head of the Department, has reviewed the documents at issue and

represents under penalty of perjury that "they contain the frank exchange of ideas,

notes, suggestions, proposals, and opinions that occurred during the deliberation of

---

[41]    For a more detailed discussion on the Executive Documents/Deliberative
Process Privilege, see Com Ex. Rel. Unified Judicial System v. Vartan, 733 A.2d
1258 (Pa. 1999)(citations omitted); see also Department of Interior v. Klamath
Water Users Protective Association, 121 S.Ct. 1060 (2001); In re executive Office
of the President, 215 F.3d 20 (D.C. Cir.2000).

[42]    See Defendant Wexford Health Sources, inc. and Dr. Symons' brief in
opposition to Plaintiff's Motion to Compel Discovery (doc. 54), pp. 6-9.

the Department's Hepatitis C issues." Further, Secretary Beard, in invoking the

Executive Documents privilege for this material states, in part, that:

> [P]ermitting the confidential deliberation to become public would
> greatly inhibit the operation of the agency in its ability to develop
> future policies by limiting participants to an exchange of ideas,
> suggestions, proposals, and opinions in a non-confidential format.
> Overall, the quality of administrative decisions in operating this
> agency would suffer and staff would be less likely to place their ideas,
> suggestions, proposals and opinions in a form that would be disclosed
> to the general public prior to the final form of the policy, protocol or
> budget submission.

Secretary Beard also represents to the Honorable Court that he has reviewed the

documents sought to be protected by this privilege, and there does not appear to be

evidence that the Defendants acted in an improper of unconstitutional manner

towards Clark. Should this Court have any doubt as to whether the documents fall

within the Executive Documents Privilege, counsel for the Corrections Defendants

respectfully requests that the materials be examined, *in camera* and *ex parte*, prior

to any disclosure to Clark and the general public.

### C.    Clark's Requests Number Five and Six:

> *Please provide a copy of each and every evaluation for eligibility for the
> Interferon/Ribavirin treatment protocol which was performed on plaintiff
> with regards to his Hepatitis C.*

> *Please provide a copy of Plaintiff's complete medical record.*

The Corrections Defendants have provided Clark with a free copy of his

Department of Corrections Medical Record. Neither the Corrections Defendants

nor the Department has additional information; however, should additional information be found responsive to this Request, it will be supplemented pursuant to Fed.R.Civ.P. 26(e). However, similar to the Hepatitis C Task Force materials, the Corrections Defendants have refused to disclose confidential psychological information contained in Clark's Department Medical Record pursuant to the Executive Documents Privilege.[43]

Clark's request for this information calls for documents provided by numerous correction treatment personnel, including psychiatrists and psychologists. These documents enable the appropriate officials to record their impressions, evaluations, and recommendations with respect to Clark's program and case management. The value of these entries lies in the candid nature of the responses, and if these documents were readily available to inmates to the public, corrections staff would tend to refrain from entering their honest opinions and frank evaluations; consequently, those making decisions regarding Clark would not have the benefit of candid observations of staff in the field.

Further if a prisoner such as Clark knows how staff will evaluate him and how particular responses are likely to be interpreted, he is capable of manipulating the resulting diagnosis. As a result, the inmate's situation will not be assessed accurately, and a valid course of rehabilitative treatment cannot be prescribed.

---

Preservation of the confidential nature of treatment related information is critical to ensure the cooperation of inmates involved in any course of treatment. These subsequent inaccuracies could also result in completely improper institutional placement, and the inmate or others may be exposed to danger; and, it is within the realm of possibility that the inaccuracies could result in premature release from custody on parole, thereby exposing the community at large to danger.

Secretary Beard, in invoking the Executive Documents Privilege, reviewed the materials at issue and represents to this Honorable Court that nowhere in the documents sought does there appear to be evidence that the Defendants acted in an improper or unconstitutional manner toward him. Secretary Beard, as administrative head of the Department invokes this privilege on the Department's behalf believing that the confidential opinions, recommendations or advice they contain would compromise the security and penological mission of the Department. Should this Court have any doubt as to whether the documents fall within the Executive Documents Privilege, counsel for the Corrections Defendants respectfully requests that the materials be examined, *in camera* and *ex parte*, prior to any disclosure to Clark or the general public.

## CONCLUSION

**WHEREFORE**, in light of the foregoing, the Defendants respectfully

request this Court to deny Clark's Motion to Compel.

Respectfully submitted,
Office of General Counsel

BY: _____

John J. Talaber
Assistant Counsel

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WILLIAM CLARK,                          :
                                        :
    Plaintiff,                          :
                                        :   Civil Action No. 01-CV-0764
    v.                                  :
                                        :   (Judge William W. Caldwell)
LARRY LIDGETT, et. al.,                 :
                                        :   JURY TRIAL DEMANDED
          Defendants.              :

**CORRECTIONS DEFENDANTS' CERTIFICATE OF
COMPLIANCE WITH PaMDLR 7.8(b)**

The Corrections Defendants, by and through their attorney, pursuant to the United States District Court for the Middle District of Pennsylvania, Local Rule 7.8(b), hereby certify that the Correction Defendants' Brief in Opposition to Plaintiff's Motion to Compel is 3, 727 words as counted by the word processing system used to prepare this document.

        Respectfully submitted,
        Office of General Counsel

BY: _____
        John J. Talaber
        Assistant Counsel
        Pa. Department of Corrections
        55 Utley Drive
        Camp Hill, PA  17011
        (717) 731-0444
        Attorney Id. No. 83279

Dated: August 20, 2002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CLARK,                    :
                                  :
    Plaintiff,             :
                                  :    Civil No. 01-0764
                                  :
    v.                     :    (Judge William W. Caldwell)
                                  :
LARRY LIDGETT, et al.,            :
                                  :
    Defendants.            :

### PROOF OF SERVICE

The undersigned hereby certifies that the Correction Defendants' Brief in

Opposition to Plaintiff's Motion to Compel was served upon the person(s) in the manner

indicated below.

Service by first-class mail
addressed as follows:

William Clark, AY-5585                    James D. Young, Esquire
SCI-Rockview                              Lavery, Faherty, Young & Patterson, PC
Box A                                     The Kunkel Building
Bellefonte, PA  16823                     301 Market Street, Suite 800
                                          P.O. Box 1245
                                          Harrisburg, PA  17108-1245


                                          Marilyn Jones
                                          Clerk Typist 2

PA Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444

Dated:  August 20, 2002