C to ct.

William Clark
Box A   AY-5585
Bellefonte, Pa. 16823

October 29, 2002

Honorable Judge William W. Caldwell
United States District Judge
U.S. Courthouse
228 Walnut Street
P.O. Box 983
Harrisburg, Pa.  17108



To The Honorable Judge Caldwell,

    I am writing directly to you regarding medical litigation (CIVIL NO. 1:CV-01-0764) in your Honorable Court that I am currently involved in against the Dept. of Corrections and Wexford Medical Services. I am currently incarcerated at S.C.I.@ Rockview in Bellefonte,Pa.

    Your Honor, these proceedings have become so frustrating to me that I feel this letter to you is my only recourse in hope of explaining my current state of mind to you. As you probably know, I was deposed on Sept. 19, 2002 by the defendants lawyer. I began that deposition by letting them know I was sick and on a combination of prescription drugs, including Zoloft, an anti-depressant, Atarax, to help suppress the constant itching I suffer from because of my illness and a side effect from the medicines I take to attempt to fight off the Hepatitis C virus. These drugs, Alpha Interferon and Ribavarin, which also cause a host of other physical side effects, also have caused in myself short term memory loss, confusion and indecisiveness along with serious mood swings. On top of this, I reminded defense counsel that I had filed for appointment of counsel and requested Your Honor to put the depositions in abeyance until a ruling was made. As I was very nervous, I easily became intimidated when told they had Your Honor's Order for Depositions and gave the impression I <u>had</u> to continue. (see deposition transcript)

    I am not a trouble maker, Your Honor, I am someone who is very angry that the D.O.C.'s medical dept. could and should have done more testing in 1992 and could have gotten treated at a much earlier date, which in turn would have improved my chances of beating this virus. I also have issues with the on-going treatment once I was finally started on the treatment, specifically that I was given the dual treatment mentioned above while I had a high iron count before and during my first go-around with these drugs.

    I do not claim to be a medical doctor, but I have read extensively on the subject. After reading about high iron I also consulted with Dr. Symons, Medical Direc-

tor for Wexford Medical Services here at Rockview. He concurred that, in fact, a high iron count decreases the effectability of the treatment. I was sick for six months, sometimes going for days without getting out of bed or eating. In fact, during my second course of treatment with pegolated interferon, Dr. Symons had to cut the dosage of interferon by half because I again suffered many of the side effects associated with this treatment, one of which I lost almost 20 pounds in a very short amount of time and had a marked decrease in my blood platelet count.

In the initial treatment I wasn't made aware of the high iron content problem until the 5th month of the 6 month treatment. I did not respond to treatment, that is, my "enzyme" levels did not decrease into acceptable "normal" levels. The medical dept. did do the correct procedure before my second course of treatment as my iron count had increased again in the year and a half between treatments. This entails phlebotomies being done until iron levels are back to normal ranges.

On top of all this, no one in the medical dept. here and to this day, cannot tell me what condition my liver is in because of their refusal to do a liver biopsy.

Your Honor, I am trying my hardest to find some justice, surely if I had been on the street and sought medical assistance, further testing would have been done upon seeing the results of my blood work in 1992 and I would not have waited almost a year after the diagnosis in October of 1999 for treatment of my chronic condition.

I would also like to convey to you the feeling I am being harassed because of this litigation. One question asked at the deposition was who helps me with this litigation and who types it. I would not name names and informed them I now do my own typing. Four hours after the depositions ended, I was approached by two officers at my cell and informed they had been sent to do an investigative search of our cell. The officers would not tell us why the search was initiated, but later on, my cellmate asked a Lieutenant Vance and was informed that someone had reported that there was a stolen typewriter in the cell and that there was some sort of drug activity involved also. The typewriter was confiscated because there was no proof on my cellmates personal property card that he owned it, but shortly afterward he ordered a new typewriter and when he went to pick it up, a property officer asked him if he would sign off on the confiscated typewriter as they had misplaced all the personal property of an inmate returning from court and wanted to give him that typewriter.

Additionally, no strip search/drug test was demanded of us, both of which are common protocol, especially when allegations of drug activity are made.

I also feel strongly that although the defendants have continually attempted to thwart the discovery process from the start, and that because of the uncertainty I have regarding amended complaints, etc., or waiting for a ruling for appointment of counsel, that I am backed up against a wall.

I also feel that earlier in this litigation, I was cut off from the aid in

pursuing this litigation from a paralegal, Rob Lassen, even though he began helping me before his release and approximately one and a half years afterward.

The final straw for me was that, after I answered in the affirmative to a question regarding anyone but myself having copies of motions, briefs, etc., that Rob Lassen and my parents would be the only ones who would possibly still retain them, subpoenas were issued by D.O.C. counsel to my parents for "medical records". My parents have never received any medical records from me and the fact that defense counsel would harass them is particularily disturbing to me, especially in light of the way they attempted to serve them with the subpoenas. Someone sent by D.O.C. counsel called my parent's home and advised my mom that he was a courier for a lawyer who had represented me in the past and had some important papers he was to deliver to them. Because he would not identify an attorney, my mother informed him that he would have to speak to my father when he got home. This person then told my mom he would stop by the following day, a Saturday. My parents were not home on Saturday but this person showed up the next day, on a Sunday and served separate subpoenas to both of my parents.

Your Honor, my parents were totally unaware of this situation and because of the deceptive manner in which D.O.C. counsel approached this matter, I felt that defense counsel hit a particular low in their continuing harassment surrounding my pursuit of justice in regard to this current litigation.

One last situation I feel should be addressed is that a few weeks after the deposition I was summoned by Mr. Rackovan, litigation coordinator for the D.O.C. I was informed by him that I was there to review my deposition transcript. I know for a fact, that at this initial review, I noticed and noted in my mind, a statement explaining that I would have 30 days to review the transcript, only to be asked by Mr. Rackovan, exactly one hour into my review, if I was done. I informed him that I wasn't and he told me he would call me back the next day. I was not called back the following day or on Friday, but I was called back on Monday, only after writing him a request slip concerning the above and a request to be allowed to contact Mr. Talaber, D.O.C. counsel, by phone, to express my concerns in connection with the subpoenas served on my parents and the circumstances in which they were subjected to. I was told by Mr. Rackovan that he had attempted to contact Mr. Talaber that morning, but that he had not been in the office and that he would contact me in response to Mr. Talaber after he heard back from him. To date, I have never been called back. Incidentally, that 30 day review statement I took note of at the first meeting was nowhere to be found at the second meeting on Monday, and I did my best to review the transcript on a bench in a fairly busy hallway, instead of at my ease in my cell.

Your Honor, I realize the deadline regarding this litigation is upon us, but I

(3)

am totally confused as to the fact that Your Honor has not made a decision on any of a number of motions I have submitted to this Honorable Court. I speak primarily of the "Motion for Appointment of Counsel" because I am at a total loss as to whether I can submit any further motions, etc., or if I am to wait for a ruling on the above-mentioned motion. My time has run out and I have no idea as to how to proceed next, causing me to suffer from extreme anxiety and depression.

Your Honor, I can only hope that this letter helps you to understand the ever constant frustration and despair I am feeling regarding this litigation as I am whole-heartedly sincere in my pursuit of justice.

I pray that Your Honor will, in any way possible, guide me through this maze and that any amount of guidance or action taken in my behalf will be greatly appreciated.

Respectfully Submitted,

*/s/ William Clark*

William Clark

(4)