

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CLARK,                    :
                                  :
        Plaintiff                 :
                                  :       CIVIL NO. 1:CV-01-0764
    vs.                           :
                                  :       (Judge Caldwell)
MARTIN HORN, et al.,              :
                                  :
        Defendants                :



M E M O R A N D U M

I.    Introduction.

        The following motions are pending: (1) Plaintiff's motion
to compel production of documents from the Corrections defendants
(doc. 40); (2) Plaintiff's motion to compel discovery for the
production of documents from Defendants, Wexford Health Sources,
Inc. and John Symons, M.D.  (doc. 41); and (3) Plaintiff's motion
to impose sanctions against Corrections defendants (doc. 56).


II.   Background.

        William M. Clark, an inmate at SCI-Rockview, Bellefonte,
Pennsylvania, filed this pro se civil rights action pursuant to 42
U.S.C. § 1983 alleging deliberate indifference to his Hepatitis C
infection ("HCV") in violation of the Eighth Amendment and making
state-law claims for negligence and medical malpractice.  Clark has
sued certain "Corrections defendants": Martin Horn, former

secretary of the Pennsylvania Department of Corrections; Robert
Meyers, superintendent at SCI-Rockview; and Larry Lidgett, former
SCI-Rockview corrections health care administrator.  He has also
named as defendants Wexford Health Sources, Inc. and Dr. John
Symons, Wexford's Medical Director.

Briefly summarized, Clark alleges that during his on-
again, off-again career as an inmate with the Pennsylvania
Department of Corrections ("DOC"),[1] between 1992 and 1999
defendants withheld from him his positive test results for the
Hepatitis C virus ("HCV").  After learning of his HCV infection in
October 1999, Clark alleges he requested treatment only to learn
that the DOC did not have a treatment protocol for HCV; therefore,
he would not receive at that time Interferon or any other form of
medical treatment for the infection.  Additionally, Clark avers
that all requests for a liver biopsy were refused.  Finally, on or
about September 15, 2000, Clark began receiving Interferon
treatments for his HCV disease.  Plaintiff claims defendants'
refusal to advise him of his condition and subsequent failure to
treat his HCV earlier allowed his liver to be irreparably damaged.

---

[1] Clark was originally committed to SCI-Graterford in 1984.
He was then paroled in 1989 only to be recommitted as a technical
parole violator in 1992.  In late 1992 he was reparoled only to
return again in 1995 and released again in 1996.  At some point in
1996 Clark returned to state incarceration and eventually was
transferred to SCI-Rockview.

He seeks declaratory and injunctive relief, as well as compensatory
and punitive damages.

III.    Relevant Procedural History.

        In May 2001, Clark initiated this action.  In September
of 2001, both the Corrections defendants and Wexford defendants
filed Waivers of Reply to the Complaint.  On January 2, 2002,
Plaintiff served the following discovery: (1) a request for
production of documents on all defendants (doc. 19, exhibit A); and
(2) a set of interrogatories directed specifically to the
Corrections defendants (doc. 19, exhibits B and C).[2]

        After receiving an enlargement of time to respond to
Clark's discovery requests, on March 21, 2002, the Corrections
Defendants served Plaintiff with a response to his Request for
Production of Documents (doc. 19, exhibit D; doc. 73, exhibit A).
In doing so, the DOC produced for examination and inspection copies
of Plaintiff's grievances and request slips pertaining to HCV,

_____

        [2]  Since the current motions to compel relate strictly to
plaintiff's objections to the various defendants' responses to his
request for production of documents, we will not recite the
procedural history of the Corrections defendants' responses to
Clarks' interrogatories other than to note that they were the
subject of our August 6, 2002, memorandum and order (docs. 65 & 66)
addressing these defendants' request for a protective order during
the pendency of their summary-judgment motion which has since been
withdrawn.  Ultimately, the Corrections defendants served Clark
with interrogatory answers on or about August 9, 2002.  See doc.
69.

-3-

portions of his medical chart, copies of final versions of the
DOC's treatment protocols for HCV, medical journals, HCV
educational materials, and the names and titles of individuals
involved in the formulation of the DOC's HCV treatment protocol.
(Doc. 73, Exhibit A).

However, Corrections defendants objected to the following
documents based on relevancy and the executive document privilege:
(1) Hepatitis Task Force Agenda; (2) Hepatitis C Task Force Meeting
Minutes; (3) versions of HCV policies and protocols that were not
adopted; and (4) draft versions of the Hepatitis C cost analysis.
Also, citing the executive document privilege again (although the
DOC produced the majority of Clark's medical records), it withheld
the following materials: (1) psychological reports; (2) suicide
risk indicators for the RHU/SMU; (3) Clark's Cumulative Adjustment
Record; (4) psychological/psychiatry department referral forms; (5)
psychiatric/psychological questionnaire/referral forms; and (6)
psychology 90-day RHU review forms.

On May 22, 2002, the Wexford defendants responded to
Plaintiff's Request for Production of Documents (identical to the
request served on the Corrections defendants). *See* Doc. 55,
Exhibit B. The Wexford defendants noted that the DOC, not Wexford,
was the custodian of the records sought, but joined Corrections
Defendants in asserting objections of relevancy and the

-4-

executive/deliberative process privilege to the request for certain documents.  (*Id*).

In June 2002, Clark filed the motions at issue in this memorandum, separate motions to compel both the Wexford and Corrections defendants to completely respond to his request for production of documents, docs. 40 and 41, and a motion for sanctions against the Corrections defendants based on their allegedly untimely and incomplete discovery responses.

For the reasons set forth below, plaintiff's motions to compel and motion for sanctions will be denied.


III.   Discussion.

A. Legal Standard on Scope of Discovery.

Generally, courts construe the scope of discovery liberally in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Fed. R. Civ. P. 26(b)(1) states that parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence" and "the court may order discovery of any matter relevant to the

-5-

subject matter involved in the action."  "[A]ll relevant material

is discoverable unless an applicable evidentiary privilege is

asserted.  The presumption that such matter is discoverable,

however, is defeasible." *Pearson v. Miller*, 211 F.3d 57, 65 (3d

Cir. 2000).  The phrase "'relevant to the subject matter involved

in the pending action' has been construed broadly to encompass any

matter that bears on, or that reasonably could lead to other matter

that could bear on, any issue that is or may be in the case."

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)

(citation omitted).

However, discovery is not without limitation.  Rule 26

confers discretion on the court to issue protective orders

restricting the extent and manner of discovery if:

> (i) the discovery sought is unreasonably
> cumulative or duplicative, or is obtainable
> from some other source that is more convenient,
> less burdensome, or less expensive; (ii) the
> party seeking discovery has had ample
> opportunity by discovery in the action to
> obtain the information sought; or (iii) the
> burden or expense of the proposed discovery
> outweighs its likely benefit, taking into
> account the needs of the case, the amount in
> controversy, the parties' resources, the
> importance of the issues at stake in the
> litigation, and the importance of the proposed
> discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2).  The court will not permit discovery

where a request is made in bad faith, unduly burdensome, irrelevant

to the general subject matter of the action, or relates to

-6-

confidential or privileged information. *S.S. Fretz, Jr., Inc. v. White Consol. Indus., Inc.*, 1991 WL 21655, at \*2 (E.D. Pa.). However, the burden is on the objecting party to demonstrate in specific terms why a discovery request does not fall within the broad scope of relevance or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

In light of these principles, the Court will address each of Clark's motions.

B. <u>Clark's Motion to Compel the Corrections Defendants' Response to his Request For Production of Documents</u>.

Initially, we note that a majority of the issues raised by Clark were resolved when the Corrections defendants provided Plaintiff with free copies of disclosed documents identified in their discovery response, including over 400 pages of his medical record. However, it appears the following issues related to the Corrections defendants' March 21, 2002, response to Clark's discovery requests remains: (1) a challenge to the completeness of the medical recorded produced; (2) the withholding of psychiatric and psychological information found in Clark's medical record and DC-14; and (3) the refusal to produce identified documents associated with the DOC's Hepatitis C Task Force.

Plaintiff's requests Two, Three and Four read as follows:

-7-

Provide copies of all prior draft criteria established by the Commonwealth of Pennsylvania Department of Corrections and/or Wexford Health Sources, Inc., and state whether or not they were ever approved, put into force or used to make any determination for treatment of individuals with Hepatitis C.

Please state the date each such draft criteria was completed, and the names of any and all individuals who worked on, assisted, or in any way, shape or form contributed to the creation of said guideline drafts.

Please provide a copy of the current Hepatitis C treatment protocol, and provide the date it was implemented, including any copies of revisions, the date of each revision, the names of any and all individuals who worked on, assisted, or in any way, shape or form contributed to the creation of said protocol(s).

In response to these requests, Corrections defendants did produce articles from medical journals, Hepatitis C education materials and final versions of the DOC's Hepatitis C Protocol, along with a list of individuals, identified by title, involved in the development of the protocol. *See* Doc. 73, Exhibit A. However, Corrections defendants object to the production of the following items identified in their original March 2002 response: (1) Hepatitis Task Force Agenda; (2) Hepatitis C Task Force Meeting Minutes; (3) nonadopted versions of HCV policies and protocols; and (4) draft versions of the Hepatitis C cost analysis. *Id.*

While Corrections defendants have asserted privilege over these documents under the deliberative process privilege, since the

-8-

touchstone of any discovery motion is relevance, the primary issue

for decision is whether the documents and information sought relate

to any of the legal or factual issues in dispute.  As noted above,

even relevant material may be protected from discovery by proper

claims of privilege, but again, the initial question is that of

relevance.  If the court makes such a determination, the next step

is to determine whether these documents are protected from

disclosure via a specified and properly asserted privilege.

At issue in this case is Clark's claim that Corrections

defendants knew of, and concealed, his HCV status from him between

1992 and 1999.  He asserts that he was denied all treatment for

this disease until September 15, 2000.  According to Corrections

defendants, in the late fall of 1998, former Secretary Horn, (a

named defendant in this action), established a task force

specifically to address the issue of Hepatitis C within the inmate

population.  This task force was composed of selected

representatives of the DOC's Bureau of Healthcare and Psychology

staff from Central Office and the field, contracted medical care

providers (including Wexford), and representatives from other state

agencies such as the Department of Health and the Department of

Welfare.  (Doc. 72, pp. 11-12).  "The members were charged with the

responsibility of working as a team to identify all the issues

involved in the identification, education, treatment, and follow-up

-9-

care of those inmates who tested positive for Hepatitis C, and for ensuring that the care provided was consistent with community standards." (*Id*. at pp. 12-13). The task force "has met since early 1999, and continues to meet to fulfill its obligations." (*Id*.)

Clearly, the task force's assignment, creating a uniform protocol for the maintenance and care of HCV infected inmates, is relative to the issues at bar. However, if Clark believes draft protocols, budget documents and task force minutes would reveal the DOC's decision to withhold treatment from HCV positive inmates like himself, for any given reason, or established an inappropriate treatment protocol that negatively affected *him*, we disagree as they were drafts, i.e. not a policy or protocol adopted by the DOC in addressing HCV issues. The drafts or internal revisions the task force went through before issuing its final protocol bear little on whether or not Clark himself was afforded appropriate medical care for his HCV at any point in time, pre- or post-issuance of the final HCV protocol. What is germane to Clark's medical treatment is what the DOC and treating physician's did relative to *his* care, not what they were *thinking* of doing relative to the systemic management of HCV within the entire prison population. Treating physicians, even in the absence of a protocol, treat their patients guided by their medical expertise

-10-

and training.  Clark has not alleged that his treating physicians, at any time, directed a specific treatment regimen for his HCV which was then overruled by the DOC, or that the DOC otherwise dictated his medical care overriding the medical determinations of his treating physicians.  Therefore, the court finds the disclosure of: (1) the Hepatitis C Task Force Agenda; (2) Hepatitis C Task Force Meeting Minutes; (3) non-adopted versions of policy and protocols; and (4) draft versions of Hepatitis C cost analysis not relevant to the case at hand nor reasonably calculated to lead to the discovery of admissible evidence.[3]

Further, Corrections defendants are justified in asserting a deliberative process or executive privilege to prevent the disclosure of these documents.  The "deliberative process privilege" and "government documents privilege" protect internal communications offering opinions and recommendations in order to safeguard free expression in giving intra-governmental advice by eliminating the possibility of outside examination as an inhibiting factor.  *Department of the Interior v. Klammath Water Users Protective Ass'n*, 532 U.S. 1, 8-9, 121 S.Ct. 1060, 1065-1066, 149 L.Ed.2d 87 (2001)(*quoting NLRB v. Sears, Roebuck & Co.*, 421 U.S.

---

[3] If the DOC had *any* protocols, or other treatment plans, in place in 1992 (and before the issuance of the Hepatitis C Task Force's initial final protocol) that addressed in any manner, the care and treatment of inmates who tested positive for HCV, the court expects that they have been produced.

132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Id.*

However, executive privilege is not absolute and courts carefully scrutinize the government's invocation of the privilege. The government must first invoke the privilege in an appropriate manner. *United States v. O'Neill*, 619 F.2d 222, 225-226 (3d Cir. 1980).[4] In this case, Secretary Jeffrey Beard, as administrative head of the Pennsylvania Department of Corrections, has signed a declaration that states that he has considered the scope of the records arguably encompassed within Clark's requests; reviewed the identified documents which he believes are confidential and privileged based upon executive, deliberative privilege; and that there are precise and certain reasons for preserving the confidentiality. Secretary Beard notes that the documents

---

[4] In *O'Neill*, the Third Circuit set forth the three criteria required of the government when asserting a government documents privilege: 1) the custodian personally reviewed the material subject to the claim of privilege; 2) a designation and description of the document subject to the privilege; and 3) a statement of the reasons for preserving confidentiality of the communications.

requested "contain the frank exchange of ideas, notes, suggestions,
proposals, and opinions that occurred during the deliberation of
the Department's Hepatitis C issues."  He also notes that public
disclosure of such documents would inhibit participants assigned
the task of developing future policies, or budget documents, in a
nonconfidential environment.  *See* Doc. 73, Exhibit B.  Thus, the
Court concludes that the identified documents meet the *O'Neill*
standard and are protected from disclosure on the basis of the
deliberative process privilege.  Clark's motion to compel
disclosure of these documents is denied.

Plaintiff's requests Five and Six read as follows:

> Please provide a copy of each and
> every evaluation for eligibility for
> the Interferon/Ribavirin treatment
> protocol which was performed on
> plaintiff with regards to his
> Hepatitis C.

> Please provide a copy of Plaintiff's
> complete medical record.

In response to these requests, Corrections defendants
produced the majority of Clark's medical record for his inspection.
Documents not produced were: (1) psychological reports; (2) suicide
risk indicators for the RHU/SMU; (3) Clark's Cumulative Adjustment
Record; (4) psychological/psychiatry department referral forms; (5)
psychiatric/psychological questionnaire/referral forms; and (6)
psychology 90-day RHU review forms.

-13-

Clark moves to compel the complete disclosure of his medical file, in its entirety.  He claims he was not provided with a complete copy of his medical record.  It is not clear from Clark's initial brief in support of his motion to compel if he challenges the defendants' failure to provide him with a free copy of his medical record *and* their position that the identified documents should be withheld.  This position was not further clarified by a reply brief, since Clark did not file one. Therefore, assuming that Clark does in fact challenge Corrections defendants' withholding of this portion of his medical record, we will address their protection from disclosure due to privilege.

Defendants assert that the requested documents are privileged government documents under *O'Neill*, *supra*.  We agree. Defendants have expressed, again via Secretary Beard's declaration, precise and certain reasons as to why the disclosure of these documents would pose a threat to the security of the institution. Defendants explain that if an inmate were to discovery the methods of prison evaluation, he could formulate a response to manipulate the results.  Thus, prison objectives would be undermined. Further, Defendants cite their justified concern that, should this court compel disclosure of employee communications regarding Clark, prison employees would be more hesitant to offer full and honest evaluations.  Generally, inmate files contain a multitude of

-14-

documents, many of which are created by institutional personnel in assessing an inmate's medical, psychological and/or institutional adjustment, parole readiness, etc.  For the security and protection of those staff members whose objective assessments must not be compromised by fears of retaliation or threats by inmates, those documents are not turned over to present or former inmates.  *Cf. Tarlton v. United States*, 430 F.2d 1351 (5th Cir. 1970)(inmate records are confidential and are not subject to inspection by inmate).

This court is convinced by the defendants' briefs and the affidavit of Secretary Beard that the stated reasons for withholding these documents are valid, and that they meet the *O'Neill* standard.  Therefore, the court will deny Clark's motion to compel with respect to the identified psychological information contained in the DOC's medical chart on Clark.

Finally, if Clark doubts the completeness of the medical record produced, we must accept Corrections defendants' representation that they have provided all portions of Plaintiff's medical chart, except for those withheld under privilege.  In the event a responsive medical document has not been produced, and is offered at the time of summary judgment or trial of this matter, Clark may object to the use of the document.

-15-

C. <u>Clark's Motion to Compel Against the
Wexford Defendants</u>.

Clark raises the following objections to the Wexford
defendants' May 22, 2002, response to his January 2002 Request for
Production of Documents: (1) the Wexford defendants' response is
untimely; (2) the Wexford defendants' reliance on Corrections
defendants' response to his request for production of documents is
inappropriate as they are separate parties and thus he is entitled
to a separate response from each set of defendants.  (Doc. 47, p.
4).

In response to Clark's motion to compel, the Wexford
defendants pointed out that the DOC, and not Wexford, is the
custodian of his institutional record and medical chart.  They also
joined Corrections defendants in asserting relevancy objections and
in raising the executive document/deliberative process privilege to
protect the nondisclosure of those portions of Clark's medical
record discussed above, as well as draft documents and minutes
created by the Hepatitis C task force.  (Doc. 54).  They do not
address the untimeliness of their response.

Clark is correct that the Wexford defendants' response to
his discovery request, absent an enlargement of time, was untimely
and violative of Fed. R. Civ. P. 34(b) which generally requires a
response within thirty days.

-16-

However, Clark was not harmed or prejudiced by the Wexford defendants' actions. Clark served identical requests for production of documents on the Corrections and Wexford defendants. In response to the request, the Wexford defendants pointed out that they are not the custodians of the records sought by Clark. Clark has not disputed this. The DOC is the custodian of his prison files, including his institutional and medical file. Clark also has not disputed that upon Corrections defendants' March 21, 2002, response to his document request, he was granted access to the identified nonprivileged items, and ultimately received reproduced copies of these items without charge.

As we have already addressed the appropriateness of the objections raised by the defendants based on relevancy and privilege of the nondisclosed psychological and task force documents, we will dispense with discussing the Wexford defendants' analysis of these issues.

        D. <u>Clark's Motion for Sanctions against the Corrections defendants</u>.

Clark has filed a motion for sanctions (doc. 56) based on Corrections defendants' failure to: (1) comply with the initial disclosure requirements of Fed. R. Civ. P. 26; and (2) comply with this Court's May 20, 2002, order denying their request for a

protective order and requiring them to respond to Plaintiff's discovery within forty-five days of the order (*see* doc. 36).

The first issue can be dispensed with quickly as Fed. R. Civ. P. 26(a)(1)(E) specifically exempts parties in certain types of proceedings from the initial self-disclosure requirements of Fed. R. Civ. P. 26(a)(1). Specifically, "an action brought without counsel by a person in custody of the United States, a state, or a state subdivision" are excluded from the initial disclosure requirements. *See* Fed. R. Civ. P. 26(a)(1)(E)(iii). Thus, as Clark is an inmate in a state correctional facility, who is presently proceeding in this matter without counsel, Corrections defendants are not required to comply with the initial disclosure requirements of Fed. R. Civ. P. 26.

The second basis for Clark's motion for sanctions has already been addressed by this court in our memorandum of August 6, 2002 (doc. 65). By way of some background, pursuant to our order of May 20, 2002, denying Corrections defendants' motion for a protective order, we directed Correction defendants to respond to Plaintiff's discovery within forty-five days of the order, (doc. 36), making Correction Defendants' interrogatory responses due by June 8, 2002. This date passed without Corrections defendants fulfilling their discovery obligations. Clark then promptly filed his motion for sanctions. On July 29, 2002, however, counsel for

-18-

Corrections Defendants filed a *nunc pro tunc* motion for enlargement of time to serve Clark with the long-awaited answers to his interrogatories (doc. 58).  After the court examined Correction defendants' reasons for the tardy interrogatory responses, and found they had merit, the court granted Corrections defendants' *nunc pro tunc* motion.  On August 6, 2002, Corrections defendants served Clark with answers to his interrogatories.  *See* doc. 69.

Important to this consideration of sanctions is the prejudice or harm caused to Clark by the delayed receipt of the interrogatory responses.  We find Clark was not harmed or prejudiced by the delayed responses.

To the extent that Clark bases his request for sanctions on Correction defendants' action of pursuing his deposition when he was "ill" or unfit to participate in the deposition, he has not presented any portion of the deposition for review or a physician's note that would allow the court to evaluate that assertion.

Next, we reject Clark's assertion that Correction defendants' counsel acted improperly in contacting his family for medical records.  We do not have before us the relevant portion of Clark's deposition addressing this matter, but if for the sake of argument Clark identified his parents as possible custodians of his medical information and records, Corrections defendants have every right to subpoena these records.  While Clark may find the manner

-19-

of the process server distasteful, it is often the nature of their job to serve unsuspecting individuals with subpoenas that they might refuse if they knew the real reason for the server's presence.

Finally, there is no basis for expenses under Fed. R. Civ. P. 37(a)(4)(A), related to the failure to make disclosure or cooperate in discovery, as both of Plaintiff's motions to compel will be denied.

IV.    Conclusion.

For the foregoing reasons, Clark's motions to compel and motion for sanctions will be denied.

WILLIAM W. CALDWELL
United States District Judge

Date: December 18, 2002