FILED
HARRISBURG, PA

JAN 0 2 2003

MARY E. D'ANDREA, CLERK
Per _____

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CLARK,                     :     NO.: 1:CV01-0764
                    Plaintiff      :
                                   :
                                   :
           v.                      :
                                   :     (JUDGE CALDWELL)
MARTIN HORN, Secretary,            :
Pennsylvania Department of         :
Corrections; ROBERT MEYERS,        :
Superintendent, State Correctional :     JURY TRIAL DEMANDED
Institution at Rockview;           :
WEXFORD HEALTH SOURCES,            :
INC., Health Care Provider at      :
the State Correctional Institution :
at Rockview; JOHN SYMONS,          :
M.D., Medical Director, State      :
Correctional Institution at        :
Rockview; LARRY LIDGETT,           :
Health Care Administrator,         :
State Correctional Institution at  :
Rockview,                          :
                    Defendants:

## DEFENDANTS, WEXFORD HEALTH SOURCES, INC. AND JOHN SYMONS, M.D.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY:

Plaintiff, William Clark, an inmate incarcerated at the State Correctional Institution - Rockview initiated this civil action by filing a Complaint on or about May 21, 2001.  Plaintiff's Complaint arises out of the conditions of his confinement at SCI-Rockview, including the medical treatment for Hepatitis C ("HCV"), which he received at that facility. Plaintiff's Complaint attempts to assert § 1983 claims for violation of his Eighth and/or Fourteenth Amendment rights, and pendent state claims sounding in negligence.

The Complaint names Wexford Health Sources, Inc., the contracted medical provider at SCI-Rockview, and Wexford's medical director at SCI-Rockview, John Symons, M.D. as Defendants.  Also named as Defendants are the following former and current officials/employees of the Department of Corrections:   Martin Horn (former secretary of the department); Robert W. Myers (superintendent); and Larry Lidgett (former corrections healthcare administrator).

According to the Complaint, Plaintiff alleges that he was first diagnosed as Hepatitis "C" (HCV) positive in 1992, but was not informed

of that diagnosis until October, 1999.  On September 15, 2000, Plaintiff began receiving drug therapy (Interferon) treatment for his HCV.  Clark complains that between October 1999 and September 2000, Defendants refused to provide him with a liver biopsy and treatment for his HCV.  Clark claims that the Defendants' failure to treat his HCV earlier allowed his liver to be further damaged.  In his Complaint, Clark seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

All Defendants waived service of summons on August 2, 2001.  On September 10, 2001, Defendants, Wexford and Dr. Symons, waived reply to Plaintiff's Complaint pursuant to 42 U.S.C. § 1997(e).  On December 4, 2002, the Wexford Defendants filed a Motion for Summary Judgment.  This Brief is in support of the Wexford Defendants' dispositive motion.

## II.    **QUESTIONS PRESENTED**:

A.    **STANDARD OF REVIEW.**

B.    **WHETHER THE WEXFORD DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT, AS A MATTER OF LAW, DUE TO PLAINTIFF'S FAILURE TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES AS REQUIRED BY THE PRISON LITIGATION REFORM ACT, AS AMENDED?**

C.  WHETHER THE WEXFORD DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW, SINCE THE RECORD IS DEVOID OF ANY EVIDENCE TO ESTABLISH DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED?

D.  WHETHER THE WEXFORD DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S PENDENT STATE LAW CLAIMS.

## III. ARGUMENT:

### A.  STANDARD OF REVIEW.

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. In determining whether genuine issues of material fact exist, the United States Supreme Court in Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505 (1986), held that: "The mere existence of a scintilla of evidence in support of the [non-moving] party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." Id., at 2525. Moreover, the inquiry focuses on "whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party may prevail as a matter of law." Id., at 2512.

Once a party has shown an absence of evidence to support the claims of the non-moving party, the non-moving party must do more than simply sit back and rest on the allegations in the complaint. The plaintiff must go beyond the pleadings and by his own affidavits or the discovery on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The substantive law defines which facts are material, that is, which facts may affect the outcome of the lawsuit. Id. If the non-movant bears the burden of persuasion at trial, the moving party may meet its burden by showing that the evidentiary materials of record, if reduced to admissible form, would be insufficient to carry the non-movant's burden at trial. Chippollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir. 1987); cert. dismissed, 483 U.S. 1052 (1987).

**B.    THE WEXFORD DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW DUE TO PLAINTIFF'S FAILURE TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES AS REQUIRED BY THE PRISON LITIGATION REFORM ACT.**

The Pennsylvania Department of Corrections has adopted a Consolidated Inmate Grievance Review System, DC-ADM 804 (effective

October 20, 1994). The Inmate Grievance System provides for a three-step review process, including a determination by the Grievance Coordinator at the facility, an appeal to the Superintendent of the facility, and final review by the Secretary's Office of Inmate Grievances and Appeals. Effective May 1, 1998, the Department of Corrections amended DC-ADM 804 to provide that a prisoner, in seeking review through the grievance system, may include requests for awards of monetary damages. DC-ADM 804-4 was issued on April 29, 1998 and was the policy in place at the time of the medical treatment at issue in Plaintiff's Complaint.

The Supreme Court has made clear that prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be granted through a grievance process. See, Porter v. Nussle, 122 S. Ct. 983, 992 (2002) ("we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.") Booth v. Churner, 121 S. Ct. 1819, 1825 n.6 (2001) ("we hold . . . that Congress has provided in § 1997e(a) that an inmate must exhaust

[administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues.)  Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to § 1983.

Inmate Clark did file two grievances while at SCI-Rockview (ROC-641-01 and ROC-706-99) concerning his Hepatitis C treatment.  It is important to note, however, that in his deposition Plaintiff admitted that neither grievance included a request for monetary damages.  (Clark Dep. Pp. 102-103)  In Thomas v. Meyers, et al., No. 3:CV-00-1887 (March 25, 2002), Judge Caputo dismissed an inmate's civil action for failure to request monetary relief in the grievance process and held:

> The Third Circuit, in an unreported decision, has suggested that an inmate may not pursue a claim for monetary relief when such a claim was not pursued administratively.  *See Geisler v. Hoffman*, Civil No. 99-1971, *slip op.* At 4 (3d Cir. Sept. 12, 2000).  Two members of this Court relying upon *Geisler*, have held that an inmate plaintiff's failure to seek monetary damages in prison grievance proceedings precluded the inmate from seeking such relief in a civil rights action.  *See Laird v. Pennsylvania Department of Corrections*, Civil No. 3:CV-00-1039 *slip op.* at 3 (M.D. Pa. Sept. 26, 2001) (Nealon, Jr.).); *Chimenti v. Kimber, et al.*, Civil No. 3:CV-01-0273, *slip op.* at 11 (M.D. Pa. March 15, 2002) (Vanaskie, CJ.).)

> Thomas did not include a request for monetary damages in his grievance nor did he seek declaratory relief. Thus, plaintiff's claims against defendants for monetary and equitable relief would appear to be foreclosed as a consequence of his failure to seek such relief through the DOC grievance process.

Thomas, *slip op.*, pgs. 15-16; see also, Robert Spruill v. Frank Gillis, et al., 3:CV-01-1625 (Vanaskie, C.J., May 29, 2002). (See Exhibits "A" and "B").

In both Thomas and Spruill, the district court ruled as a matter of law, that the inmates had not exhausted available administrative remedies because they did not pursue a claim for monetary relief through the grievance procedure. Pursuant to the holdings in Thomas and Spruill, dismissal is required in this case because Plaintiff did not request monetary relief which he now seeks. Consequently, Plaintiff's Complaint against the Wexford Defendants is subject to dismissal for failure to exhaust available administrative remedies.

### C. THE WEXFORD DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW, BECAUSE THE FACTS OF RECORD DO NOT ESTABLISH DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED.

In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court ruled that deliberate indifference to the serious medical needs of a prisoner

constitutes a violation of that prisoner's Eighth Amendment right to be free from cruel and unusual punishment. In the context of medical care, the relevant inquiry is whether a defendant was: (1) deliberately indifferent (the subjective element), (2) plaintiff's serious medical needs (the objective element). See, Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court clarified the definition of these components. Following Farmer, prison officials will be liable in an Eighth Amendment condition case only if "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 114 S. Ct. at 1997.

The record is devoid of evidence establishing the requisite deliberate indifference on the part of Moving Defendants. Estelle, supra., found that prisoner complaints which are directed at the wisdom or quality of the medical care received will not state an Eighth Amendment violation under §1983, even if the treatment was so negligent as to amount to malpractice. Estelle, 429 U.S. at 107. "It is well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute `deliberate indifference.' " Rouse v. Planter, 182 F.3d 192, 197

8

(3d Cir. 1999). Only flagrantly egregious acts or omissions can violate the standard. Mere medical malpractice cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a healthcare provider. White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990).

In Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa. 1996), the court explained that deliberate indifference is more than an inadvertent or good faith error, it is characterized by obduracy and wantonness. The court went on to explain that prison medical authorities are given considerable latitude with respect to diagnosis and treatment of inmates. Id. "Courts will disavow any attempt to second guess the propriety or inadequacy of a particular course of treatment... which remains a question of sound professional judgment." Id. "The key question... is whether defendants have provided defendant with some kind of treatment, regardless of whether it is what the plaintiff desires." Id. at 816. "Absent evidence of the requisite [mental] intent to establish indifference [a] plaintiff cannot sustain a §1983 action.... . Bednar v. County of Schuylkill, 29 F. Supp. 2nd 250, 253-54 (E.D. Pa. 1998) (citations omitted).

To establish personal liability against a party in a § 1983 action, the defendant must have personal involvement in the alleged wrong; liability cannot be predicated solely on the operation of respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprette, 845 F.2d 1195, 1207 (3d Cir. 1988). In this case, the record is devoid of any evidence establishing that Dr. Symons had the requisite personal involvement with Plaintiff's care prior to November, 1998 and/or with respect to the development of the Hepatitis C protocol. Consequently, Dr. Symons cannot be held liable on those claims.

When a private entity contracts with the state government to provide medical services to inmates, it is performing a function traditionally within the exclusive prerogative of the state, and in so doing, that entity becomes the functional equivalent of a municipal corporation. Such a private entity, therefore, cannot be held liable on a respondeat superior theory. See, Buckner v. Toro, 116 F.3d 450 (11th Cir.) cert. denied, 522 U.S. 1018 (1997). "Rather, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of

federal rights." <u>Austin v. Paramount Parks, Inc.</u>, 195 F.3d 715, 728 (4th Cir. 1999).  In this case, the record does not reflect that any Wexford employee violated Plaintiff's federally protected rights.  Moreover, there is no evidence of any unconstitutional policy, practice or custom on the part of Wexford. Consequently, there is no basis for imposing § 1983 liability upon Wexford and summary judgment must be entered in its favor as a matter of law.

Dr. Symons' Declaration attests to the nature and extent of the medical treatment provided for inmate Clark's Hepatitis C condition while he was incarcerated at SCI-Rockview.  Clark's medical conditions, including his Hepatitis C disease, were reviewed by physicians and other medical personnel at SCI-Rockview on numerous occasions.  Clark's medical condition was also evaluated through the use of numerous laboratory tests, including liver profiles, serum iron testing, viral load testing, ultrasounds of the liver and spleen, and genotyping.  Moreover, inmate Clark was evaluated as a candidate for Interferon treatment in accordance with the Hepatitis C protocol implemented by the Department of Corrections.  Unfortunately, Clark's Hepatitis C condition did not improve with the Interferon therapy and, in fact, he developed significant

side effects from the treatment. Consequently, the Interferon therapy was discontinued in February, 2001.

Between February 2001 and July 2002, inmate Clark continued to be monitored, evaluated and treated for his Hepatitis C condition and he received a series of phlebotomies to address his increased iron levels. In approximately May 2002, Pegylated Interferon was approved by the Food and Drug Administration as a treatment for Hepatitis C. In July 2002, inmate Clark was stated on the Pegylated Interferon treatment. Inmate Clark, however, experienced significant side effects from the Pegylated Interferon including nausea, weight loss and significant problems with his platelet counts. Due to those side effects, a decision was made on October 1, 2002 to reduce the dose of the treatments as per published guidelines.

Dr. Symons' Unsworn Declaration attests to the fact that at all times during Plaintiff's incarceration at SCI-Rockview, Dr. Symons exercised sound, professional judgment with respect to the evaluation and treatment of Plaintiff's conditions; that Plaintiff received appropriate medical treatment within acceptable medical standards; and that no Wexford personnel exhibited any deliberate indifference to Plaintiff's serious medical needs. Plaintiff cannot point to any facts of record establishing

that the Wexford Defendants knew of and disregarded an excessive risk to inmate health or safety. Under these circumstances, the Wexford Defendants are entitled to summary judgment as a matter of law on Plaintiff's Eighth Amendment claims.

### D. THE WEXFORD DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S PENDENT STATE LAW CLAIMS.

Plaintiff's state tort claims for negligence/medical malpractice must fail as well. In <u>Maurer v. Trustees of the University of Pennsylvania</u>, 614 A.2d 754, 757-58 (Pa. Super. 1992), the court ruled:

> A plaintiff cannot establish a prima facie case of medical malpractice without, inter alia, presenting an expert witness who will testify, "to a reasonable degree of medical certainty, that the acts of the [defendant] physician deviated from good and acceptable medical standards. . . ." <u>Mitzelfelt v. Kamrin</u>, 584 A.2d 888, 892 (Pa. 1990). Our courts phrase this requirement in a variety of ways. <u>See, e.g., Brannan v. Lankenau Hospital</u>, 417 A.2d 196, 199 (Pa. 1980) (plaintiff must introduce expert testimony to show defendant's conduct varied from "acceptable medical practice"); <u>Strain v. Ferroni</u>, 592 A.2d 698, 703 (Pa. Super. 1991) (expert did not suggest a defendant physician deviated from "a requisite standard of care"), <u>Lira v. Albert Einstein Medical Center</u>, 559 A.2d 550, 552 (Pa. Super. 1989), <u>alloc. denied</u>, 592 A.2d 1302 (Pa. 1990) (expert testimony required to established "standard of reasonable medical care"); <u>Corbett v. Weisband</u>, 551 A.2d 1059, 1064 (Pa. Super. 1988) (plaintiff must prove by competent evidence that defendant's conduct fell "below

standards of reasonable medical practice"); <u>Brophy v. Brizuela</u>, 517 A.2d 1293, 1296 (Pa. Super. 1986) (expert testimony required to establish "standard of care" and deviation therefrom).

The only exception to this otherwise invariable rule is when "the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience in comprehension of the even non-professional persons." <u>Jones v. Harrisburg Polyclinic Hospital</u>, 437 A.2d 1134, 1138 (Pa. 1981). Expert medical testimony is therefore mandatory and required as part of plaintiff's case in a medical malpractice action unless there is a fund of common knowledge from which laymen can reasonably draw a conclusion of negligence. This case clearly does not fall within the aforementioned exception.

There are no facts of record from which a reasonable juror could infer that the Wexford Defendants were in any way negligent with respect to the treatment provided to Plaintiff while he was incarcerated at SCI-Rockview. Moreover, in his deposition testimony and his Answers to Interrogatories, Plaintiff acknowledged that he had no expert testimony to show that the Wexford Defendants' conduct deviated from "acceptable medical practice".

Consequently, the Wexford Defendants are entitled to summary judgment as a matter of law on Plaintiff's claims for negligence/medical malpractice.

As noted above, the record is devoid of any evidence establishing a cognizable Eighth Amendment claim against the Wexford Defendants. In the absence of a substantial federal question and the absence of extraordinary circumstances, a United States district court should decline to exercise jurisdiction over pendent state law claims. <u>Zimmerman v. HBO Affiliate Group</u>, 834 F.2d 1163, 1171 (3d Cir. 1987); <u>United Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966). Once the federal claims have been dismissed, the court will have no jurisdiction over the state law claims, and there are no extraordinary circumstances to support the court's retention of those claims under 28 U.S.C. § 1367.

## IV.    <u>CONCLUSION</u>:

For the reasons advanced herein, Defendants Wexford and Dr. Symons respectfully request that this Honorable Court grant their Motion for Summary Judgment.

Respectfully submitted,

LAVERY, FAHERTY, YOUNG &
PATTERSON, P.C.

Date: 1/2/03

By: _____
James D. Young, Esquire
Attorney I.D. #53904
PO Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633
Attorney for Defendants,
Wexford Health Sources,Inc.
and John Symons, M.D.

# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD THOMAS,                          :
           Plaintiff,                :        CIVIL NO. 3:CV-00-1887
                   :
        v.                        :        (JUDGE CAPUTO)
                   :
                   :

**FILED
SCRANTON**

MAR 2 5 2002

ROBERT W. MEYERS, *et al.*,              :
           Defendants                :

PER _____
**DEPUTY CLERK**

## MEMORANDUM

    Plaintiff, Richard Thomas, an inmate presently confined in the State Correctional Institution, Waymart, Pennsylvania, ("SCI-Waymart") filed this civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff proceeds *pro se*. During the relevant time period of this action, plaintiff was incarcerated at the State Correctional Institution at Rockview ("SCI-Rockview"). Defendants in this action include the following Department of Corrections employees at SCI-Rockview (moving defendants): Robert Meyers, superintendent; Terry Whitman and David Wakefield, deputy superintendents; and Larry Lidgett, former health care administrator.

    The complaint was accompanied by an application to proceed *in forma pauperis*. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996) imposed new obligations on prisoners who file suit in federal court and wish to

1

EXHIBIT
"A"

amend his medical report will be granted. Plaintiff's motion for appointment of counsel will be dismissed as moot.

## BACKGROUND

### A.    Relevant Procedural History

Plaintiff initiated this action with the filing of a complaint and an application for *in forma pauperis* status on October 25, 2000. (Docs. 1, 2). By court order dated November 2, 2000, the Court granted Thomas *in forma pauperis* status and directed the United States Marshal to serve the complaint on defendants.[2] A waiver of reply was entered by counsel for the moving defendants on December 5, 2000.

Pursuant to court order granting plaintiff's motion for leave to file an amended complaint, Thomas filed his first amended complaint on December 14, 2000. (Doc. 15). Defendant Wexford Health Sources, Inc. submitted a waiver of reply to plaintiff's amendment complaint on January 5, 2001. (Doc. 20).

On July 11, 2001, the Court granted moving defendants motion for more definite statement. (Doc. 41). In the same order, plaintiff's second amended complaint was denied and plaintiff was directed to file an amended complaint. Pursuant to court order, Thomas filed his third amended complaint on August 2, 2001. (Doc. 45).[3]

---

2.    Regarding DOC employees, summons were *only* issued as to the moving defendants and numerous "John and Jane Doe" defendants. *See* Original Complaint (Doc. 1). Summons was also issued as to defendant Wexford Insurance Co.

3.    As part of his amended complaint, Thomas added the following defendants: Martin Horn, "former secretary of Pennsylvania;" Joseph Lehaman and David Owens, Jr., "state officials for Department of Corrections;" various John and Jane Does,

3

On December 7, 2001, moving defendants filed their answer to Thomas' third amended complaint. (Doc. 72). On December 10, 2001, the moving defendants filed their motion for judgment on the pleadings. (Doc. 74). The motion is fully briefed and ripe for consideration.[4]

On January 29, 2002, plaintiff filed a motion for leave to file another amended complaint. (Doc. 81). Plaintiff seeks to identify the various Jane and John Doe defendants. The defendants consist of numerous medical doctors, a nurse, and a former superintendent at SCI-Rockview. Plaintiff also seeks to add a medical malpractice claim. Because plaintiff's original complaint is barred by the statute of limitations and the matter is not properly before this Court, the motion will be denied since the identification of the Doe defendants has no impact on the statute of limitation issue.

Plaintiff is also seeking to add additional medical documents to his record. (Docs. 83, 86). By letter dated February 14, 2002, moving defendants stated they did not oppose

---

employees of SCI-Rockview; Dr. John Symons and various unnamed employees of Wexford Health Sources, Inc.; Dennis Roth, warden of Montgomery County Correctional Facilities ("MCCF"); Julie Algaron, deputy warden of MCCF; various unnamed employees at MCCF; Donald Vaughn, superintendent at state correctional institution at Graterford ("SCI-Graterford"); and various unnamed employees at SCI-Graterford. (Doc. 45, ¶¶ 4-8).

4.    On February 14, 2002, counsel for moving defendants waived their right to file a reply brief via letter to the Court. (Doc. 84).

the first request by plaintiff.[5]  Because the medical reports are consistent with plaintiff's allegations in his amended complaint, the motions will be granted.[6]

**B.    Factual Background[7]**

On or about February 23, 1989, Thomas was transferred from SCI-Graterford to SCI-Rockview where he was housed for more than eleven (11) years.  Plaintiff alleges that in April of 1989, unnamed doctors or nurses at SCI-Rockview Medical Department took a blood sample and tested it for diseases.  Plaintiff asserts that the results of the blood test revealed he had the hepatitis virus and his liver was deteriorating faster than normal.  Thomas contends the results were not made available to him, and, therefore, he could not seek medical care to treat the disease.  Plaintiff states he did not receive any medical treatment for his hepatitis virus until October 1999.

Thomas contends that in April 1989 there was no protocol or medical treatment for inmates infected with hepatitis B or C and that it was not until January 2000 that SCI-Rockview and the DOC had " [a] medical 'protocol' from (sic) inmates affected with the Hepatitis C virus dispite (sic) an epidemic at that prison."  Plaintiff further contends that

---

5.    Plaintiff's second motion was filed after receipt of defendants' letter.

6.    The Court may consider these documents in resolving the motion to dismiss without converting it into one for summary judgment since there is no dispute among the parties as to their authenticity and plaintiff's complaint refers to the substance of these documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

7.    *See* Third Amended Complaint, ¶¶ 42-65.

defendants intentionally exhibited deliberate indifference by denying him medical treatment for the hepatitis virus from 1989 to 1996. Thomas asserts that the intentional concealment of his condition by unnamed prison officials at SCI-Rockview allowed the disease to grow worse since, in his opinion, his medical needs were "objectively sufficiently serious."

Thomas alleges that on October 15, 1998, Dr. John Symons, a Wexford employee, informed him that he had the hepatitis virus since 1989; specifically, Dr. Symons allegedly informed Thomas that he had cirrhosis of the liver, caused by a lack of proper medical care. Thomas contends he was introduced to Dr. Eggler, also a Wexford employee, who became his treating physician.

Thomas concludes that moving defendants knew he carried the hepatitis virus and intentionally refused to provide a minimum level of necessary medical care causing an excessive risk to his health. Thomas argues that the moving defendants, as reasonable persons, should have recognized the severity of his illness, yet intentionally concealed his hepatitis conditions for a period of eleven years causing the diseases to grow worse.

## DISCUSSION

A.    **Standard of Review**

Fed. R. Civ. P. 12(c) states, in part, that "[a]fter the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings." In determining a motion for judgment on the pleadings, there must be no dispute of material facts and the moving party must be entitled to judgment as a matter of law. When a motion for judgment on the pleadings is based on failure to state a claim, the same

6

standards apply that pertain to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Phalo v. Ohio Civil Rights Commission*, 2001 WL 506525, *2 (S.D. Ohio April 17, 2001). Moving defendants submit that based on the pleadings before this Court, there are no disputes of material facts and moving defendants are entitled to judgment as a matter of law. (Doc. 77, p. 7).

A court, in rendering a decision on a motion to dismiss, must accept the veracity of the plaintiff's allegations. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *White v. Napoleon*, 897 F.2d 103, 106 (3d Cir. 1990). A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *ALA, Inc. v. CCAIR, Inc.* 29 F.3d 855, 859 (3d Cir. 1994). The reviewing court must consider only those facts alleged in the complaint and accept all of the allegations as true. *Id.*

In *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996), the Court of Appeals for the Third Circuit added that when considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." "The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990); *Independent*

7

*Enters., Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1168 (3d Cir. 1997). This Court will now discuss defendants' motions in light of the standards set forth above and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**B.    *Respondeat Superior***

The moving defendants contend that plaintiff's allegations regarding them fails to state a claim upon which relief can be granted because Thomas is relying solely upon a theory of *respondeat superior*. (Doc. 77, p. 9). Moving defendants further assert that plaintiff's statements are conclusory allegations that are not supported by specific facts and Thomas fails to link the moving defendants to the central acts that he alleges in his complaint. (*Id.*). In his opposing brief, Thomas contends moving defendants were provided with sound medical findings and had an obligation to inform him of his chronic illness. (Doc. 82, p. 9).

It is well-settled that claims brought under §1983 cannot be premised on a theory of *respondeat superior. Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acqui-

8

> escence. Allegations of participation or
> actual knowledge and acquiescence, however,
> must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

Although a complaint is to be liberally construed in favor of the plaintiff (*See* Fed.R.Civ.P. 8(f)), the Court does not have to accept every allegation it contains as true. *Pennsylvania House, Inc. v. Barrett*, 760 F.Supp. 439, 449 (M.D.Pa. 1991)(McClure, J.). Furthermore, conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Flanagan v. Shively*, 783 F. Supp. 922, 927 (M.D. Pa. 1992).

An application of the above standards to Thomas' third amended complaint clearly shows that he has failed to set forth a cognizable claim against the moving defendants. Not only does plaintiff fail to comply with Fed. R. Civ. P. 8, he clearly is relying upon a theory of *respondeat superior*. Plaintiff's complaint, with respect to those defendants, does not state with appropriate particularity any personal knowledge or acquiescence on their part. Plaintiff merely offers conclusory statements. Accordingly, the moving defendants, Meyers, Whitman, Wakefield, and Lidgett are entitled to an entry of dismissal and defendants' motion for judgment on the pleadings will be granted.[8]

---

8.    Plaintiff also relies upon a theory of *respondeat superior* as to nonmoving defendants Horn, Lehaman, Owens, Roth, Algaron, and Vaughn who were added to the instant case in plaintiff's third amended complaint, but, based on the record before the Court, does not appear to have been served. Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) those defendants are summarily dismissed from the instant action because plaintiff fails to state a claim for which relief is available.

9

C.    Statute of Limitations

Title 28 U.S.C. § 1915 imposes obligations on prisoners who file civil actions in federal court and wish to proceed *in forma pauperis*. Section 1915(e)(2) provides:

> Notwithstanding any filing fee, or any portion thereof, that
> may have been paid, the court shall dismiss the case at any time
> if the court determines that (A) the allegation of poverty is
> untrue; or (B) the action or appeal (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune
> from such relief.

In reviewing the applicability of the statute of limitations to an action filed pursuant to § 1983, a federal court must apply the appropriate state statute of limitations which governs personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 n.9 (3d Cir. 1996). The United States Supreme Court clarified its decision in *Wilson* when it held that the residual or general applicable state personal injury statute of limitations should be applied in § 1983 actions. *Owens v. Okure*, 488 U.S. 235, 245-49 (1989); *Little v. Lycoming County*, 912 F. Supp. 809, 814 (M.D. Pa.), aff'd mem., 101 F.3d 691 (3d Cir. 1996). Pennsylvania has a personal injury statute of limitations of two years. *Fitzgerald v. Larson*, 769 F.2d 160, 162 (3d Cir. 1985); *Smith v. City of Pittsburgh*, 764 F.2d 188, 194 (3d Cir.), *cert. denied*, 474 U.S. 950 (1985); *Little*, 912 F. Supp. at 814; *see* 42 Pa. C.S.A. § 5524 (Supp. 1997).

The question of when a cause of action accrues is a question of federal law. *Smith v. Wambaugh*, 887 F. Supp. 752, 755 (M.D. Pa. 1995), *aff'd.*, 87 F.3d 108 (3d Cir. 1996). "In general, a section 1983 claim accrues when the facts which support the claim are, or

10

should be, apparent to a person with a reasonably prudent regard for his rights and when the identity of the person or persons responsible for the alleged violation is known or reasonably should have been known to the plaintiff." *Id.* ( citations omitted).

Thomas filed his complaint on October 25, 2000. Plaintiff states that on October 15, 1998, he was informed that he had hepatitis and that he had the infection since 1989.[9] (Doc. 45, ¶ 51).   As such, his claims are clearly time barred.

Although this is not jurisdictional, and the statute of limitations defense may be voluntarily waived, it is certain that if this case was permitted to go forward in regards to the remaining defendants, motions to dismiss would be filed and would have to be granted.[10] It has been held that a district court may properly dismiss as frivolous an *in forma pauperis* complaint when it is apparent on the face of the complaint that the statute of limitations has expired. *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995); *Myers v. Vogal*, 960 F.2d 750, 750-51 (8th Cir. 1992); *Street v. Vose*, 936 F.2d 38, 39 (1st Cir. 1991) (per

---

9.    Plaintiff contends in his opposing brief that he filed his original complaint in May 2000. (Doc. 82, p. 13).  However, in May 2000, plaintiff filed a writ of mandamus which was construed to be a § 1983 action and transferred to the United States District Court in the Eastern District of Pennsylvania.  The only named respondent/defendant in that matter was the Court of Common Pleas for Montgomery County.  *See Thomas v. Court of Common Pleas of Montgomery County*, Civil No. 3:CV-00-0893 (M.D. Pa. June 13, 2000)(Caputo, J.).  Several documents were filed with plaintiff's original complaint and all were date filed on October 25, 2000. (Docs. 1-3, 5-7).  Plaintiff fails to provide an explanation for the late filing but merely contends that he filed the complaint on May 9, 2000, which is not supported by the record before the Court.

10.   As is evident in the instant motion for judgment on the pleadings in which moving defendants raised the statute of limitations as another ground for dismissal of the third amended complaint.

curiam), *cert. denied*, 502 U.S. 1063 (1992); *Norris v. Vaughn*, Civ. No. 00-1856, slip op. at 3-4 (M.D. Pa. Oct. 30, 2000) (Rambo, J.); *Wicks v. Horn*, Civ. No. 98-0171, slip op. at 3-4 (M.D. Pa. Feb. 24, 1998) (Vanaskie, J.); *Clark v. Belfonti*, Civ. No. 96-1164, slip op. at 3-4 (M.D. Pa. July 2, 1996) (Rambo, C.J.). Accordingly, Thomas' third amended complaint will be dismissed as legally frivolous as to the remaining defendants, pursuant to 28 U.S.C. §1915(e)(2)(B)(i) because it is clearly time barred.

Although Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires," the district court retains the discretion to deny leave to amend "on the ground that an amendment would be futile." *Smith v. National Collegiate Athletic Ass'n*, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999). The running of a statutory limitations period can be grounds for a finding of futility. *See, e.g., Baker*, 50 F.3d at 1189-90. Thomas' § 1983 claims against the newly identified defendants in his proposed amended complaint are also precluded by Pennsylvania's two-year statute of limitations for personal injury actions. *See Bougher v. University of Pittsburgh*, 882 F.2d 74, 78-79 (3d Cir. 1989). The defendants in the proposed amended complaint are not new to the action, they are just now properly named. The actual names of the John and Jane Doe defendants does not create a "relating back" issue because the actual identification of the defendants does not change the fact that the original and amended complaints were time barred by the statute of limitations. Plaintiff's proposed medical malpractice claim is likewise time barred. As a result, Thomas' request for leave to amend his third amended complaint is denied.

12

### D.    Exhaustion of Administrative Remedies

The Court further notes that even if the complaint was timely before me, Thomas' third amended complaint would be summarily dismissed for failure to exhaust his administrative remedies. Section 1997(e)(a) of Title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Supreme Court has made clear that prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through a grievance process. *See Porter v. Nussle*, 122 S.Ct. 983, 992 (2002)("we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Booth v. Churner*, 121 S.Ct. 1819, 1825 n. 6 (2001)("we hold ... that Congress has provided in § 1997e(a) that an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues.). Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to § 1983 or any other federal law.

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance Review System. DC-ADM 804 (effective October 20, 1994). With certain exceptions not

13

applicable here, DC-ADM 804 provides for an administrative review of institutional grievances. A grievance is a complaint submitted by an inmate related to a problem encountered during the course of confinement. DC-ADM 804 provides that an inmate may submit a written grievance to the prison's Grievance Coordinator. An appeal from the decision of the Grievance Coordinator may be made in writing to the prison superintendent, and a final written appeal may be presented to the Chief Hearing Examiner for the Department of Corrections.

Effective May 1, 1998, the Department of Corrections amended DC-ADM 804 to provide that a prisoner, in seeking review through the grievance system, may include requests for "any claims concerning violations of Department of Corrections directives, regulations, court orders, or other laws." DC-ADM 804-4 issued April 29, 1998. This was the policy in place at the time plaintiff filed his grievance.[11]

Plaintiff contends he exhausted his administrative remedies based on Grievance No. 0440-99 which was filed on July 2, 1999. The grievance states:

> I have been incarcerated in the state system since August 23, 1988. Lasty (sic) year I was informed by the medical staff of this prison that I have been diagnosed with Hepatitis C, (sic) and B. My blood has been periodically tested, but no treatment has been provided.

---

[11]     DC-ADM 804 has since been amended effective January 1, 2001. As of January 1, 2001, all inmates under the jurisdiction of the Department who have been personally affected by a Department or institution action or policy are permitted to file a grievance, to file an appeal to the facility manager from the initial grievance review, and to file a final appeal of the grievance decision to the Secretary's Office of Inmate Grievances and Appeals.

(Doc. 45, Plt. exh. DC-804 Part I). The Grievance Coordinator stated his complaint had been reviewed by the nurse supervisor and the DOC was attempting to finalize a policy for the treatment of Hepatitis C. (Doc. 45, Plt. exh. DC-804 Part II). The response further noted that "[a]s long as you are being periodically tested for the liver enzymes and they have not risen dramatically, you may not need treatment at this time." (*Id.*). Thomas was directed to speak with the doctors to see where he stood in reference to treatment. (*Id.*).

Thomas' grievance does not mention any of the defendants by name, does not seek any relief including monetary, and fails to identify any specific acts or omissions performed by a particular individual. The fact plaintiff pursued a generic grievance regarding his diagnosis and treatment does not necessarily satisfy the exhaustion requirement. The Third Circuit, in an unreported decision, has suggested that an inmate may not pursue a claim for monetary relief when such a claim was not pursued administratively. *See Geisler v. Hoffman*, Civil No. 99-1971, *slip op.* at 4 (3d Cir. Sept. 12, 2000). Two members of this Court, relying upon *Geisler*, have held that an inmate plaintiff's failure to seek monetary damages in prison grievance proceedings precluded the inmate from seeking such relief in a civil rights action. *See Laird v. Pennsylvania Department of Corrections*, Civil No. 3:CV-00-1039, *slip op.* at 3 (M.D. Pa. Sept. 26, 2001)(Nealon, J.).); *Chimenti v. Kimber, et al.*, Civil No. 3:CV-01-0273, *slip op.* at 11 (M.D. Pa. March 15, 2002)(Vanaskie, C.J.).)

Thomas did not include a request for monetary damages in his grievance nor did he seek declaratory relief. Thus, plaintiff's claims against defendants for monetary and equitable relief would appear to be foreclosed as a consequence of his failure to seek such

15

relief through the DOC grievance process. Plaintiff's third amended complaint and proposed amendments are subject to dismissal pursuant to § 1997(e)(a).

## CONCLUSION

Because plaintiff relies solely upon a theory of *respondeat superior*, defendants Meyers, Whitman, Wakefield, and Lidgett's motion for judgment on the pleadings will be granted. The third amended complaint will be summarily dismissed as to the remaining defendants for failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B)(ii); failure to exhaust administrative remedies, 42 U.S.C. § 1997(e)(a); and as frivolous for being time barred, 28 U.S.C. § 1915(e)(2)(B)(i). Plaintiff's motion for leave to file an amended complaint is denied as futile. Plaintiff's motions to add medical documents are granted. Finally, plaintiff's motion for appointment of counsel will be dismissed as moot. An appropriate order follows.

_____
A. RICHARD CAPUTO
United States District Judge

Dated:  MARCH 25, 2002

16

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD THOMAS,                    :
        Plaintiff,                 :        CIVIL NO. 3:CV-00-1887
                                   :
    v.                             :        (JUDGE CAPUTO)
                                   :
                                   :
ROBERT W. MEYERS, *et al.*,        :
        Defendants                 :

**FILED
SCRANTON**

MAR 2 5 2002

PER _____
        **DEPUTY CLERK**

## ORDER

NOW, THEREFORE, THIS 25th DAY OF MARCH, 2002, for the reasons set

forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1.     Defendants' motion for judgment on the pleadings as to defendants

       Meyers, Whitman, Wakefield, and Lidgett (Doc. 74) is granted.

2.     The third amended complaint (Doc. 45) is **summarily dismissed** as to the

       remaining defendants for failure to state a claim upon which relief may be

       granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); as legally frivolous

       because time barred by the statute of limitations pursuant to 28 U.S.C. §

       1915(e)(2)(B)(i); and failure to exhaust administrative remedies pursuant

       to 42 U.S.C. § 1997(e)(a).

3.     Plaintiff's motion for leave to file an amended complaint (Doc. 81) is

       denied  as futile.

4.     Plaintiff's motions to add medical documents (Docs. 83, 86) are granted.

17

5.    Plaintiff's motion for appointment of counsel (Doc. 85) is dismissed as moot.

6.    The Clerk of Court is directed to close the case.[12]

7.    Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.


A. RICHARD CAPUTO
United States District Judge

---

12.   The dismissal of this action does not relieve plaintiff of the obligation to pay the full filing fee. Until the filing fee is paid in full, the Administrative Order previously issued is binding on the superintendent of SCI-Waymart, as well as the warden or superintendent of any correctional facility to which Thomas is transferred.

# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT SPRUILL,                          :
        Plaintiff                :
                               :          CIVIL NO. 3:CV-01-1625
    v.                                    :
                               :
FRANK GILLIS, ET AL,                     :          (CHIEF JUDGE VANASKIE)
        Defendant                :

**MEMORANDUM**

FILED
SCRANTON
MAY 2 9 2002

PER ___
DEPUTY CLERK

## I. Background

On August 23, 2001, Plaintiff Robert Spruill, an inmate currently incarcerated at the State

Correctional Institution at Chester, Pennsylvania ("SCI-Chester"), filed a *pro se* civil rights action

pursuant to 42 U.S.C. § 1983.[1]  (Doc. 1, Complaint).  Plaintiff's complaint alleges that the

Defendants were deliberately indifferent to his medical needs shortly after he was transferred to the

State Correctional Institution at Coal Township ("SCI-Coal Township) in May 2001.  Named as

Defendants in the complaint are Correctional Defendants Frank Gillis, Superintendent at SCI-Coal

Township; Steven Gooler,[2] Lieutenant in the Restricted Housing Unit ("RHU") at SCI-Coal

Township; and Medical Defendants Dr. Shawn McGlaughlin and Physicians' Assistant Brian Brown.

Plaintiff alleges that on May 2, 2001, he was transferred from the State Correctional

Institution at Rockview, Pennsylvania, ("SCI-Rockview")to SCI-Coal Township.  (*Id.*, ¶ 9).  He was

---

1.    Plaintiff was incarcerated at the State Correctional Institution at Frackville, Pennsylvania ("SCI-Frackville") at the time of the filing of the instant complaint.

2.    Plaintiff's complaint incorrectly spells Defendant Gooler's name as "Goolier."

EXHIBIT
"B"

housed in the RHU at SCI-Coal Township.  Spruill contends that upon his arrival, he immediately

requested to see a medical staff member about severe pain he was experiencing in his lower back

area and his right leg.  (*Id.*, ¶ 10).  Plaintiff acknowledges he was interviewed by a nurse "several

hours later." (*Id.*, ¶ 11).  Plaintiff alleges that after describing his pain, the nurse said, "There is

nothing I can do, you will need to sign up for sick call." (*Id.*, ¶¶ 12-14).

Plaintiff states he signed up for sick call on May 3, 2001.  (*Id.*, ¶ 15).  Plaintiff alleges that

the next morning he fell due to severe pain in his leg and back.  Plaintiff states the left side of his

face struck the metal toilet.  Spruill believes he was knocked unconscious and also injured his right

thumb.  (*Id.*, ¶¶ 16-18).  Plaintiff states that same day, May 4, 2001, he informed the nurse of his

fall, his additional injuries, and continuous back pain.  (*Id.*, ¶ 19).  Plaintiff states the nurse said

"there was nothing she could do," but that she would inform the doctor about his complaints.  (*Id.*,

¶ 20).

Plaintiff avers he informed Defendant Gooler about his fall and Gooler responded "so, what

do you want me to do." (*Id.*, ¶¶ 21, 22).  Plaintiff contends Gooler had a duty to prepare an incident

report regarding his fall. (*Id.*, ¶ 24).  Plaintiff states he filed an official inmate grievance on May 4

complaining about the fall and new injury; that Gooler did not notify health care providers once he

was informed of Spruill's injuries; and that he had not been examined by a medical doctor.  (*Id.*, ¶

25).

Plaintiff states that on May 5, 2001, Dr. McGlaughlin came to his cell regarding the sick call

request. (*Id.*, ¶ 26).  Plaintiff alleges McGlaughlin refused to examine him and stated Spruill would

2

never go to the infirmary. (*Id.*, ¶¶ 27-33). Spruill states he filed a second grievance on May 6, 2001 complaining that McGlaughlin failed to conduct a physical examination of him. (*Id.*, ¶ 37).

Plaintiff states he was seen by the physician assistant, Defendant Brown, on May 7, 2001 (*Id.*, ¶ 38). Essentially, Plaintiff alleges that Brown accused him of faking his injuries and did not examine Spruill. (*Id.*, ¶¶ 39-50).

Spruill avers that on May 9, 2001, he complained to the nurse that the pain medication he was prescribed for his back "wasn't working." (*Id.*, ¶ 51). Plaintiff states that later that morning he experienced another "extremely sharp pain" in his lower back and leg which caused him to fall. (*Id.*, ¶ 53). Spruill avers he submitted another sick call request. (*Id.*, ¶ 54).

Plaintiff states he was seen on May 10, 2001 by Defendant Brown in response to his sick call request. (*Id.*, ¶ 55). Plaintiff contends that he told Brown that "the current medication was not working to reduce his pain," (*Id.*, ¶ 51), but Brown did not take any actions to help him. (*Id.*, ¶¶ 57-61). Plaintiff alleges he submitted another sick call request on May 11, 2001. (*Id.*, ¶ 62). Plaintiff states he was seen by Defendant McGlaughlin on May 12, 2001 in response to the request and Defendant stated they did not believe anything was wrong with his back. (*Id.*, ¶¶ 63-69).

Plaintiff states that on May 14, 2001, Defendant McGlaughlin had Plaintiff brought to the medical examination room. (*Id.*, ¶ 72). Plaintiff alleges McGlaughlin deliberately bent and twisted his legs "as if he was trying to shape a pretzel." (*Id.*, ¶ 74). Plaintiff complains that McGlaughlin did not exam his face or thumb. (*Id.*, ¶ 76).

Plaintiff contends he filed an administrative appeal alleging deliberate indifference by McGlaughlin and Brown because "they insisted on continuing a course of treatment that were (sic) painful, ineffective or entailed an (sic) substantial risk of further serious harm befalling to the plaintiff." (*Id.*, ¶ 80). Plaintiff avers he filed a final appeal to the chief grievance coordinator. (*Id.*, ¶ 83).

After denial of his final appeal, Plaintiff filed the instant complaint on August 23, 2001. Plaintiff is seeking declaratory, injunctive and monetary relief. (*Id.*, p. 13-14).

Correctional Defendants Gillis and Gooler filed a motion to dismiss the complaint on December 6, 2001. (Doc. 13). Correctional Defendants contend the complaint should be dismissed because Plaintiff failed to exhaust administrative remedies in that Spruill's grievances did not seek monetary relief. Defendants further assert that based on Plaintiff's own admissions, the Defendants cannot be deemed deliberately indifferent to Plaintiff, who at all times, received medical care.

Although there is an issue as to whether the Medical Defendants were ever served with process, on March 28, 2002, Medical Defendants also filed a motion to dismiss the complaint. (Doc. 32). The Medical Defendants also contend that Spruill failed to exhaust his administrative remedies by failing to fully avail himself of the remedies provided for by ADM-804 of the Pennsylvania Department of Corrections. (*Id.*, ¶ 3). The Medical Defendants further assert that Spruill's complaint reveals that he fails to allege facts sufficient to establish that the Moving

4

Defendants acted with deliberate indifference to a serious medical need. (*Id.*, ¶ 4). The matter is fully briefed and ripe for consideration.

Because Plaintiff failed to exhaust available administrative remedies, I will grant both the Correctional Defendants' and Medical Defendants' motions to dismiss.[3]  Even if Spruill had exhausted his available administrative remedies, both motions would be granted because Spruill has failed to state a claim upon which relief may be granted.

## II. DISCUSSION

### A. Standard of Review

A court, in rendering a decision on a motion to dismiss, must accept the veracity of the Plaintiff's allegations. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *White v. Napoleon*, 897 F.2d

---

3 .    In his brief in opposition to the Medical Defendants' motion to dismiss, Spruill argues the court lacks jurisdiction regarding the Medical Defendants' motion to dismiss since the "Defendants have never formally received Service of Process by the U.S. Marshal as to Plaintiff's complaint." (Doc. 38, p. 2).  Plaintiff apparently is unaware that his argument is detrimental to his claim against the Medical Defendants since lack of service at this stage of the proceeding would warrant dismissal of the Medical Defendants from the instant cause of action. *See* Fed.R.Civ.P. 4(m).  In their reply, Medical Defendants declare that Spruill's lack of jurisdiction argument constitutes "nonsense, and need not be further addressed." (Doc. 40, p. 2).  The Moving Defendants further state that "[w]hile the assertion that a complaint has not been served might be expected when made by defendants, it is exceedingly strange to see it made by a plaintiff, asserting that the very Court which he has filed his claims, lacks jurisdiction to litigate those claims with respect to the very defendants against whom the plaintiff has brought those claims." (*Id.*, pp. 1-2).  Spruill's argument confuses subject matter jurisdiction, a prerequisite for court action which cannot be waived by a defendant, with personal jurisdiction, also a prerequisite for court action but which a defendant may waive.  Medical Defendants reply will be construed as a waiver of service and waiver of objection to the existence of personal jurisdiction.



103, 106 (3d Cir. 1990). A claim may be dismissed under Federal Rule of Civil Procedure12(b)(6)

only if the Plaintiff can prove no set of facts in support of the claim that would entitle him to relief.

*ALA, Inc. v. CCAIR, Inc.* 29 F.3d 855, 859 (3d Cir. 1994). The reviewing court must consider only

those facts alleged in the complaint and accept all of the allegations as true. *Id.*

In *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996), the Court of Appeals for the Third Circut

added that when considering a motion to dismiss based on a failure to state a claim argument, a

court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled

to offer evidence to support their claims." "The test in reviewing a motion to dismiss for failure to

state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled

to relief." *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted).

Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable

inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d

Cir. 1990); *Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1168 (3d

Cir. 1997).

The motions to dismiss raise essentially the same grounds. The Moving Defendants

assert that dismissal is appropriate on the ground that Spruill did not adequately exhaust

administrative remedies. The Moving Defendants further argue that the complaint fails to set forth

a valid claim of deliberate indifference to a serious medical need.[4]

---

4 .    Correctional Defendants also contend they are entitled to qualified immunity.

### B. Failure to Exhaust Administrative Remedies

The PLRA provides that "no action shall be brought with respect to prior conditions under ... any ... Federal law, by a prisoner confined in any ... correctional facility until such administrative remedies as are available are exhausted." In *Porter v. Nussle*, 122 S. Ct. 983, 992 (2002), the United States Supreme Court held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Furthermore, the Supreme Court, in *Booth v. Churner*, 121 S.Ct. 1819 (2001), held that the PLRA "requires administrative exhaustion even where grievance process does not permit award of money damages and prisoner seeks only money damages, as long as grievance tribunal has authority to take some responsive action."

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance Review System. DC-ADM 804 (effective October 20, 1994). With certain exceptions not applicable here, DC-ADM 804 provides for an administrative review of institutional grievances. A grievance is a complaint submitted by an inmate related to a problem encountered during the course of confinement. Effective May 1, 1998, the Department of Corrections amended DC-ADM 804 to provide that a prisoner, in seeking review through the grievance system, may include requests for "any claims concerning violations of Department of Corrections directives, regulations, court orders, or other laws." DC-ADM 804-4 issued April 29, 1998. As of January 1, 2001, all inmates under the jurisdiction of the Department who have been personally affected by a Department or institution action or policy are permitted to file a grievance, to file an appeal to the facility manager from the

initial grievance review, and to file a final appeal of the grievance decision to the Secretary's Office of Inmate Grievances and Appeals.

Defendants observe that the claims asserted against Gillis and Brown were not included in Spruill's administrative grievances. (Doc. 17, p. 5; Doc. 22, p. 2). They point out that the grievances filed by Plaintiff only named Defendants Gooler and McGlaughlin.[5] The Defendants also contend that Spruill failed to request any relief in his grievance, such as monetary relief, which he now seeks. (Doc. 17, p. 6; Doc. 33, pp. 8-9).

With respect to Gillis' and Brown's failure to exhaust argument, Plaintiff contends that because he appealed to the central office Gillis' initial denial of his appeal, that "by implication, [Gillis] complained of likewise." (Doc. 19, p. 9). Although Spruill failed to address Brown's failure to exhaust argument in his brief in opposition to the Medical Defendants' motion to dismiss, Plaintiff did state in his earlier brief in opposition to the Correctional Defendants' motion to dismiss that he did not know the name of Brown at the time he filed his grievance but did complain to Brown's supervisor and included him in his "appeal to the Secretary office." (Doc. 19, p. 9).

---

5.    The Correctional Defendants attached copies of two inmate grievances along with all appeal documents to their brief in support of their motion to dismiss. Because Spruill himself refers to the grievances in his complaint to show exhaustion, it is proper for me to consider the documents without the necessity to convert the motion into a motion for summary judgment. See Pension Benefit Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Furthermore, Plaintiff attached copies of responses to his grievances to his brief in opposition to Medical Defendants' motion to dismiss. However, Plaintiff's attached affidavits to both of his opposition briefs are not properly submitted and the Clerk of Court will be directed to strike them from the record.

Plaintiff's attempt to to avoid compliance with the exhaustion requirement with regards to Gillis on the basis that he appealed Gillis' denial of his initial appeal is not compelling. First, it is well-established that prisoners have no constitutionally protected right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring)("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Wilson v. Horn*, 971 F. Supp. 943, 946 (E.D.Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *McGuire v. Forr*, Civ. A. No. 94-6884, 1996 WL 1331130, at *1 (E.D. Pa. Mar. 21, 1996), *aff'd*, 101 F.3d 691 (3d Cir. 1996). While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts and such a right is not compromised by the failure of the prison to address an inmate's grievance. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Second, Plaintiff fails to allege any acts, other than Gillis' denial of his appeal, to show that Gillis was deliberately indifferent as to his medical needs. At no time did Spruill file a grievance that suggested he was pursuing a claim against Gillis. It is thus evident that Spruill's claims against Gillis are subject to dismissal under the exhaustion doctrine.

As to Defendant Brown, based on his own admissions, Spruill failed to fully exhaust any claim against Brown. Merely mentioning his name in one stage of the appeal process does not constitute full exhaustion of the administrative remedy. Accordingly, the claims asserted against

Brown have not been exhausted. Under these circumstances, dismissal of Spruill's claim against both Gillis and Brown for failure to exhaust administrative remedies is warranted.

The fact that Spruill pursued grievances against Gooler and McGlaughlin does not necessarily satisfy the exhaustion requirement. The Third Circuit, in an unreported decision, has suggested that an inmate may not pursue a lawsuit for monetary relief when a claim for such relief was not pursued administratively. *See Geisler v. Hoffman*, Civil No. 99-1971, *slip op.* at 4 (3d Cir. Sept. 12, 2000). *See also Laird v. Pennsylvania Department of Corrections*, Civil No. 3:CV-00-1039, *slip op.* at 3 (M.D. Pa. Sept. 26, 2001 (Nealon, J.). I have previously concluded that an inmate may not pursue a claim for monetary relief in court when he did not seek that form of relief made available to him in the administrative process. *See Chimenti v. Kimber, et. al*, Civil No. 3:CV-01-0273, *slip op.* at 11 (M.D. Pa. March 15, 2002) (Vanaskie, CJ.).

Although Spruill did seek equitable relief in his grievances, that form of relief is no longer available to him in this action in light of his transfer fom SCI-Coal Township. A prisoner's transfer from prison moots his claims for injunctive or declaratory relief since he is no longer subject to the conditions he alleges are unconstitutional, *Abdul- Akbar v. Watson*, 4 F. 3d 195, 206-07 (3d Cir. 1993).[5] Accordingly, dismissal of the claims against Gooler and McLaughlin for failure to exhaust

---

6 .    *See also, Weaver v. Wilcox*, 650 F.2d 22, 27 ( 3d Cir. 1981) ("a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge"). It is well recognized that the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* at 459, n.10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." *Rosenberg v.*

remedies is also warranted.  Even if the exhaustion requirement had been satisfied as to any of the

Defendants, however, Spruill has not presented a viable claim against them.

### C. Deliberate Indifference

The  fundamental  principles  of  Eighth  Amendment  analysis  reveal  that  "only  'the

unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by

[that Amendment][7]."  *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (citations omitted).  *Accord*

*Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Mere negligence or dissatisfaction with medical care

does not state a constitutional claim.  *Estelle v. Gamble*, 429 U.S. 97, 105-6 (1976).  An Eighth

Amendment claim exists only when there is a deliberate indifference to a *serious* medical need.

*Id.*; *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978).

---

*Meese*, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985) (*citing O'Shea v. Littleton*, 414 U.S. 488, 495- 96 (1974)).
Here it is apparent that Spruill is no longer subject to the conditions he challenges.  Spruill's complaint states
that he is currently confined at SCI-Frackville and, therefore, no longer confined at SCI-Coal Township.  Since
the filing of his complaint, he has again been transferred to SCI-Chester.  There is nothing in the record to
suggest that a reasonable probability of his return to SCI-Coal Township in the foreseeable future exists.
Consequently, since Spruill is not suffering any apparent continuing adverse effects as a result of his prior
confinement at SCI-Coal Township, his requests for injunctive and declaratory relief are moot and will be
dismissed.
    To the extent Spruill seeks relief on behalf of other inmates at SCI-Coal Township, his
claims are also moot.  He has not sought class certification for this action and "absent class certification, an
inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once
the inmate has been transferred."  *Wahl v. McIver*, 773 F. 2d 1169, 1173 (11th Cir. 1985); *see also Weaver*,
650 F.2d at 27 ("While helping one's fellow citizen is an admirable goal, the Constitution limits federal court
jurisdiction to review of 'actual cases or controversies' in which the plaintiff has a 'personal stake' in the
litigation."); *Mabine v. Vaughn*, 25 F. Supp.2d 587, 592 (E.D. Pa. 1998)("Plaintiff's claim for injunctive relief
requesting that defendants enforce the separation between him and Blocker is moot as Mabine is no longer
housed at Graterford."); *Fortes v. Harding*, 19 F. Supp.2d 323, 326 ( M.D. Pa. 1998) ("Fortes' transfer to
another institution moots any claims for injunctive or declaratory relief.")

7 .    The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines
imposed, nor cruel and unusual punishments inflicted."

To establish deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson v. Seiter*, 501 U.S. 294, 299(1991). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "The question ... is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Id.*, at 843.

Under *Farmer*, 511 U.S. at 837, Spruill must plead that the Defendants knew that their conduct presented a substantial risk of harm to him. Plaintiff has failed to meet this burden. Plaintiff avers that he was suffering from a chronic back condition. He acknowledges that he was taking medication for the pain. (Complaint, ¶¶51, 56).[8] Based on his own admissions, Plaintiff was seen twice by a nurse, twice by Physicians' Assistant Brown, and three times by Dr. McGlaughlin, all within eleven days from his initial sign up for sick call. Plaintiff may not have been satisfied with the degree of care he received, but the Defendants cannot be deemed deliberately indifferent to Plaintiff, who at all times, received medical care.

Where an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F.Supp. 542, 547 (M.D.Pa. 1988). Disagreement among individuals as to the proper medical treatment does not

---

a . The Complaint fails to allege facts from which it may be inferred that he suffered from any other medical condition that could even arguably be regarded as serious. In this regard, there is nothing in the Complaint to suggest that he suffered a serious injury in any of his alleged falls.

support an Eighth Amendment claim. *Monmouth County Correctional Inst. Inmates v. Lensario*, 834 F.2d 326, 346 (3d Cir. 1987). It is undisputed that Plaintiff received medical care. Neither Gooler nor Gillis is a physician. "[N]either can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

The undisputed fact that Spruill received medical attention for a chronic condition precludes a finding of deliberate indifference. Accordingly, Plaintiff has failed to state a claim against any of the Defendants.

## III. Conclusion

Since Spruill failed to pursue an administrative grievance against Defendants Gillis and Brown, the claim against those Defendants must be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a). Because it is evident that Spruill's complaint reflects simply a disagreement as to the type of care he was receiving, he has failed to present a viable claim of deliberate indifference against McGlaughlin and Gooler. An appropriate Order will follow.

THOMAS I. VANASKIE, CHIEF JUDGE
Middle District of Pennsylvania

DATE: May 29, 2002

13

# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT SPRUILL,                   :
     Plaintiff              :
                        :          CIVIL NO. 3:CV-01-1625
     v.                     :

FRANK GILLIS, ET AL,              :          (CHIEF JUDGE VANASKIE)
     Defendant              :

FILED
SCRANTON
MAY 29 2002

## ORDER

NOW, THIS 29ᵗʰ DAY OF MAY, 2002, for the reasons set forth in the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1.    Correctional Defendants' motion to dismiss (Doc. 13) is **GRANTED**. The claim against Gillis is dismissed without prejudice for failure to exhaust administrative remedies. The claim asserted against Gooler is dismissed for failure to state a claim upon which relief may be granted.

2.    Medical Defendants' motion to dismiss (Doc. 32) is **GRANTED**. The claim against Brown is dismissed without prejudice for failure to exhaust administrative remedies. The claim asserted against McGlaughlin is dismissed for failure to state a claim upon which relief may be granted. To the extent Spruill states any state-law claims, pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over them.[9] Those claims will be dismissed without

---

9 .   It should be noted that Spruill expressly disavowed that he was presenting a malpractice claim. *See*
(Doc. 38 at p. 11).

prejudice to any right Plaintiff may have to pursue them in state court. In so

holding, I express no opinion as to the merits of any such claim.

3.    Document No. 20 and pages 5-8 of document No. 39 are stricken.

4.    The Clerk of Court is directed to close this case.[10]

5.    Any appeal from this Order will be deemed frivolous, without probable cause and

not taken in good faith.


THOMAS I. VANASKIE, CHIEF JUDGE
Middle District of Pennsylvania

TIV:ap

C:\WINDOWS\TEMP\SPRUIL-1.WPD

---

10.    The dismissal of this action does not relieve Plaintiff of the obligation to pay the full filing fee. Until the filing fee is paid in full, the Administrative Order previously issued is binding on the superintendent of SCI-Chester, as well as the warden or superintendent of any correctional facility to which Spruill is transferred

## CERTIFICATE OF SERVICE

I, Linda L. Gustin, an employee with the law firm of Lavery, Faherty, Young & Patterson, P.C., do hereby certify that on this 2nd day of January, 2003, I served a true and correct copy of the foregoing **Defendants' Wexford Health Sources, Inc. and John Symons, M.D.'s Brief in Support of Motion for Summary Judgment** via U.S. First Class mail, postage prepaid, addressed as follows:

William Clark
SCI-Rockview
Box A
Bellefonte, PA  16823-0820

John Talaber, Esquire
Office of Chief Counsel
PA Department of Corrections
55 Utley Drive
Camp Hill, PA  17011

Linda L. Gustin