ORIGINAL

2-to CV PT

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA



FILED
HARRISBURG, PA

MAR 1 4 2003

MARY E. O'ANDREA, C.
Per _____
            Deputy Clerk

| | | |
|---|---|---|
| WILLIAM CLARK, | : | NO.: 1:CV01-0764 |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | (JUDGE CALDWELL) |
| MARTIN HORN, Secretary, | : | |
| Pennsylvania Department of | : | |
| Corrections; | : | JURY TRIAL DEMANDED |
| Defendants | : | |

**DEFENDANTS, WEXFORD HEALTH SOURCES, INC. AND
JOHN SYMONS, M.D.'S BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I.  **STATEMENT OF FACTS AND PROCEDURAL HISTORY:**

Plaintiff, William Clark, an inmate incarcerated at the State Correctional Institution - Rockview initiated this civil action by filing a Complaint on or about May 21, 2001. Plaintiff's Complaint arises out of the conditions of his confinement at SCI-Rockview, including the medical treatment for Hepatitis C ("HCV"), which he received at that facility. Plaintiff's Complaint attempts to assert § 1983 claims for violation of his Eighth and/or Fourteenth Amendment rights, and pendent state claims sounding in negligence.

The Complaint names Wexford Health Sources, Inc., the contracted medical provider at SCI-Rockview, and Wexford's medical director at SCI-Rockview, John Symons, M.D. as Defendants. Also named as Defendants are the following former and current officials/employees of the Department of Corrections: Martin Horn (former secretary of the department); Robert W. Myers (superintendent); and Larry Lidgett (former corrections healthcare administrator).

According to the Complaint, Plaintiff alleges that he was first diagnosed as Hepatitis "C" (HCV) positive in 1992, but was not informed of that diagnosis until October, 1999. On September 15, 2000, Plaintiff

1

began receiving drug therapy (Interferon) treatment for his HCV. Clark complains that between October 1999 and September 2000, Defendants refused to provide him with a liver biopsy and treatment for his HCV. Clark claims that the Defendants' failure to treat his HCV earlier allowed his liver to be further damaged. In his Complaint, Clark seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

All Defendants waived service of summons on August 2, 2001. On September 10, 2001, Defendants, Wexford and Dr. Symons, waived reply to Plaintiff's Complaint pursuant to 42 U.S.C. § 1997(e). The Wexford Defendants filed a Motion for Summary Judgment, Concise Statement of Material Facts and supporting Brief. Thereafter, Plaintiff filed responsive pleadings requesting that summary judgment be granted in his favor. This Brief is in opposition to Plaintiff's request for summary judgment.

II. **QUESTIONS PRESENTED**:

    A.    STANDARD OF REVIEW.

    B.    WHETHER PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT MUST BE DENIED, AS A MATTER OF LAW, DUE TO PLAINTIFF'S FAILURE TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES AS REQUIRED BY THE PRISON LITIGATION REFORM ACT, AS AMENDED?

C.  WHETHER PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT MUST BE DENIED, AS A MATTER OF LAW, SINCE THE RECORD IS DEVOID OF ANY EVIDENCE TO ESTABLISH DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED?

D.  WHETHER THE RECORD IS DEVOID OF ANY FACTS ESTABLISHING COGNIZABLE PENDENT STATE LAW CLAIMS?

III. <u>ARGUMENT</u>:

A.  STANDARD OF REVIEW.

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-324 (1986). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. <u>Boyle v. County of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998). The moving party can discharge its burden by "showing…that there is an absence of evidence

3

to support the non-moving party's case." <u>Celotex</u> at 325. Plaintiff has failed to meet that burden in this case and his dispositive motion must be denied as a matter of law.

> B. **PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT MUST BE DENIED, AS A MATTER OF LAW, DUE TO PLAINTIFF'S FAILURE TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES AS REQUIRED BY THE PRISON LITIGATION REFORM ACT.**

The Pennsylvania Department of Corrections has adopted a Consolidated Inmate Grievance Review System, DC-ADM 804 (effective October 20, 1994). The Inmate Grievance System provides for a three-step review process, including a determination by the Grievance Coordinator at the facility, an appeal to the Superintendent of the facility, and final review by the Secretary's Office of Inmate Grievances and Appeals. Effective May 1, 1998, the Department of Corrections amended DC-ADM 804 to provide that a prisoner, in seeking review through the grievance system, may include requests for awards of monetary damages. DC-ADM 804-4 was issued on April 29, 1998 and was the policy in place at the time of the medical treatment at issue in Plaintiff's Complaint.

The Supreme Court has made clear that prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be granted through a grievance process. See, Porter v. Nussle, 122 S. Ct. 983, 992 (2002) ("we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.") Booth v. Churner, 121 S. Ct. 1819, 1825 n.6 (2001) ("we hold . . . that Congress has provided in § 1997e(a) that an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues.) Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to § 1983.

Inmate Clark did file two grievances while at SCI-Rockview (ROC-641-01 and ROC-706-99) concerning his Hepatitis C treatment. It is important to note, however, that in his deposition Plaintiff admitted that neither grievance included a request for monetary damages. (Clark Dep. Pp. 102-103) In Thomas v. Meyers, et al., No. 3:CV-00-1887 (March 25, 2002), Judge Caputo dismissed an inmate's civil action against medical

5

contractors for failure to request monetary relief in the grievance process and held:

> The Third Circuit, in an unreported decision, has suggested that an inmate may not pursue a claim for monetary relief when such a claim was not pursued administratively. *See Geisler v. Hoffman*, Civil No. 99-1971, *slip op.* At 4 (3d Cir. Sept. 12, 2000). Two members of this Court relying upon *Geisler*, have held that an inmate plaintiff's failure to seek monetary damages in prison grievance proceedings precluded the inmate from seeking such relief in a civil rights action. *See Laird v. Pennsylvania Department of Corrections*, Civil No. 3:CV-00-1039 *slip op.* at 3 (M.D. Pa. Sept. 26, 2001) (Nealon, Jr.).); *Chimenti v. Kimber, et al.*, Civil No. 3:CV-01-0273, *slip op.* at 11 (M.D. Pa. March 15, 2002) (Vanaskie, CJ.).)
>
> Thomas did not include a request for monetary damages in his grievance nor did he seek declaratory relief. Thus, plaintiff's claims against defendants for monetary and equitable relief would appear to be foreclosed as a consequence of his failure to seek such relief through the DOC grievance process.

Thomas, *slip op.*, pgs. 15-16; see also, Robert Spruill v. Frank Gillis, et al., 3:CV-01-1625 (Vanaskie, C.J., May 29, 2002). (See Exhibits "A" and "B").

In both Thomas and Spruill, the district court ruled as a matter of law, that the inmates had not exhausted available administrative remedies because they did not pursue a claim for monetary relief through the grievance procedure. Pursuant to the holdings in Thomas and Spruill,

dismissal is required in this case because Plaintiff did not request monetary relief which he now seeks. Consequently, Plaintiff's request for summary judgment must be denied as a matter of law.

> C. **PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT MUST BE DENIED, AS A MATTER OF LAW, BECAUSE THE FACTS OF RECORD DO NOT ESTABLISH DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED.**

In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court ruled that deliberate indifference to the serious medical needs of a prisoner constitutes a violation of that prisoner's Eighth Amendment right to be free from cruel and unusual punishment. In the context of medical care, the relevant inquiry is whether a defendant was: (1) deliberately indifferent (the subjective element), (2) plaintiff's serious medical needs (the objective element). See, Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court clarified the definition of these components. Following Farmer, prison officials will be liable in an Eighth Amendment condition case only if "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 114 S. Ct. at 1997.

7

The record is devoid of evidence establishing the requisite deliberate indifference on the part of Moving Defendants. <u>Estelle</u>, <u>supra.</u>, found that prisoner complaints which are directed at the wisdom or quality of the medical care received will not state an Eighth Amendment violation under §1983, even if the treatment was so negligent as to amount to malpractice. <u>Estelle</u>, 429 U.S. at 107. "It is well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute `deliberate indifference.' " <u>Rouse v. Planter</u>, 182 F.3d 192, 197 (3d Cir. 1999). Only flagrantly egregious acts or omissions can violate the standard. Mere medical malpractice cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a healthcare provider. <u>White v. Napoleon</u>, 897 F.2d 103, 108-10 (3d Cir. 1990).

In <u>Little v. Lycoming County</u>, 912 F. Supp. 809, 815 (M.D. Pa. 1996), the court explained that deliberate indifference is more than an inadvertent or good faith error, it is characterized by obduracy and wantonness. The court went on to explain that prison medical authorities are given considerable latitude with respect to diagnosis and treatment of inmates. <u>Id.</u> "Courts will disavow any attempt to second guess the propriety or

8

inadequacy of a particular course of treatment... which remains a question of sound professional judgment." Id. "The key question... is whether defendants have provided defendant with some kind of treatment, regardless of whether it is what the plaintiff desires." Id. at 816. "Absent evidence of the requisite [mental] intent to establish indifference [a] plaintiff cannot sustain a §1983 action..... . Bednar v. County of Schuylkill, 29 F. Supp. 2nd 250, 253-54 (E.D. Pa. 1998) (citations omitted).

To establish personal liability against a party in a § 1983 action, the defendant must have personal involvement in the alleged wrong; liability cannot be predicated solely on the operation of respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprette, 845 F.2d 1195, 1207 (3d Cir. 1988). In this case, the record is devoid of any evidence establishing that Dr. Symons had the requisite personal involvement with Plaintiff's care prior to November, 1998 and/or with respect to the development of the Hepatitis C protocol. Consequently, Dr. Symons cannot be held liable on those claims.

When a private entity contracts with the state government to provide medical services to inmates, it is performing a function traditionally within the exclusive prerogative of the state, and in so doing, that entity becomes the functional equivalent of a municipal corporation. Such a private entity, therefore, cannot be held liable on a respondeat superior theory. See, Buckner v. Toro, 116 F.3d 450 (11th Cir.) cert. denied, 522 U.S. 1018 (1997). "Rather, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999). In this case, the record does not reflect that any Wexford employee violated Plaintiff's federally protected rights. Moreover, there is no evidence of any unconstitutional policy, practice or custom on the part of Wexford. Consequently, there is no basis for imposing § 1983 liability upon Wexford and Plaintiff's request for summary judgment must be denied as a matter of law.

Dr. Symons' Declaration attests to the nature and extent of the medical treatment provided for inmate Clark's Hepatitis C condition while he was incarcerated at SCI-Rockview. Clark's medical conditions, including his Hepatitis C disease, were reviewed by physicians and other

medical personnel at SCI-Rockview on numerous occasions. Clark's medical condition was also evaluated through the use of numerous laboratory tests, including liver profiles, serum iron testing, viral load testing, ultrasounds of the liver and spleen, and genotyping. Moreover, inmate Clark was evaluated as a candidate for Interferon treatment in accordance with the Hepatitis C protocol implemented by the Department of Corrections. Unfortunately, Clark's Hepatitis C condition did not improve with the Interferon therapy and, in fact, he developed significant side effects from the treatment. Consequently, the Interferon therapy was discontinued in February, 2001.

Between February 2001 and July 2002, inmate Clark continued to be monitored, evaluated and treated for his Hepatitis C condition and he received a series of phlebotomies to address his increased iron levels. In approximately May 2002, Pegylated Interferon was approved by the Food and Drug Administration as a treatment for Hepatitis C. In July 2002, inmate Clark was stated on the Pegylated Interferon treatment. Inmate Clark, however, experienced significant side effects from the Pegylated Interferon including nausea, weight loss and significant problems with his

platelet counts. Due to those side effects, a decision was made on October 1, 2002 to reduce the dose of the treatments as per published guidelines.

Dr. Symons' Unsworn Declaration attests to the fact that at all times during Plaintiff's incarceration at SCI-Rockview, Dr. Symons exercised sound, professional judgment with respect to the evaluation and treatment of Plaintiff's conditions; that Plaintiff received appropriate medical treatment within acceptable medical standards; and that no Wexford personnel exhibited any deliberate indifference to Plaintiff's serious medical needs. Plaintiff cannot point to any facts of record establishing that the Wexford Defendants knew of and disregarded an excessive risk to inmate health or safety. Under these circumstances, Plaintiff's Eighth Amendment claims fail as a matter of law.

> **D. THE RECORD IS DEVOID OF ANY FACTS ESTABLISHING COGNIZABLE PENDENT STATE LAW CLAIMS.**

Plaintiff's state tort claims for negligence/medical malpractice must fail as well. In <u>Maurer v. Trustees of the University of Pennsylvania</u>, 614 A.2d 754, 757-58 (Pa. Super. 1992), the court ruled:

> A plaintiff cannot establish a prima facie case of medical malpractice without, inter alia, presenting an expert witness who will testify, "to a reasonable degree of medical

certainty, that the acts of the [defendant] physician deviated from good and acceptable medical standards. . . ." Mitzelfelt v. Kamrin, 584 A.2d 888, 892 (Pa. 1990). Our courts phrase this requirement in a variety of ways. See, e.g., Brannan v. Lankenau Hospital, 417 A.2d 196, 199 (Pa. 1980) (plaintiff must introduce expert testimony to show defendant's conduct varied from "acceptable medical practice"); Strain v. Ferroni, 592 A.2d 698, 703 (Pa. Super. 1991) (expert did not suggest a defendant physician deviated from "a requisite standard of care"), Lira v. Albert Einstein Medical Center, 559 A.2d 550, 552 (Pa. Super. 1989), alloc. denied, 592 A.2d 1302 (Pa. 1990) (expert testimony required to established "standard of reasonable medical care"); Corbett v. Weisband, 551 A.2d 1059, 1064 (Pa. Super. 1988) (plaintiff must prove by competent evidence that defendant's conduct fell "below standards of reasonable medical practice"); Brophy v. Brizuela, 517 A.2d 1293, 1296 (Pa. Super. 1986) (expert testimony required to establish "standard of care" and deviation therefrom).

The only exception to this otherwise invariable rule is when "the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience in comprehension of the even non-professional persons." Jones v. Harrisburg Polyclinic Hospital, 437 A.2d 1134, 1138 (Pa. 1981). Expert medical testimony is therefore mandatory and required as part of plaintiff's case in a medical malpractice action unless there is a fund of common knowledge

from which laymen can reasonably draw a conclusion of negligence. This case clearly does not fall within the aforementioned exception.

There are no facts of record from which a reasonable juror could infer that the Wexford Defendants were in any way negligent with respect to the treatment provided to Plaintiff while he was incarcerated at SCI-Rockview. Moreover, in his deposition testimony and his Answers to Interrogatories, Plaintiff acknowledged that he had no expert testimony to show that the Wexford Defendants' conduct deviated from "acceptable medical practice". Consequently, Plaintiff's claims for negligence/medical malpractice fail as a matter of law.

As noted above, the record is devoid of any evidence establishing a cognizable Eighth Amendment claims against the Wexford Defendants. In the absence of a substantial federal question and the absence of extraordinary circumstances, a United States district court should decline to exercise jurisdiction over pendent state law claims. <u>Zimmerman v. HBO Affiliate Group</u>, 834 F.2d 1163, 1171 (3d Cir. 1987); <u>United Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966). Once the federal claims have been dismissed, the court will have no jurisdiction over the state law

claims, and there are no extraordinary circumstances to support the court's retention of those claims under 28 U.S.C. § 1367.

IV. **CONCLUSION:**

For the reasons advanced herein, Defendants Wexford and Dr. Symons respectfully request that this Honorable Court deny Plaintiff's request for Summary Judgment.

Respectfully submitted,

LAVERY, FAHERTY, YOUNG & PATTERSON, P.C.

Date: 3/14/2003

By: _____
James D. Young, Esquire
Attorney I.D. #53904
PO Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633
Attorney for Defendants,
Wexford Health Sources, Inc.
and John Symons, M.D.

## CERTIFICATE OF SERVICE

I, Linda L. Gustin, an employee with the law firm of Lavery, Faherty, Young & Patterson, P.C., do hereby certify that on this 14th day of March, 2003, I served a true and correct copy of the foregoing **Defendants, Wexford Health Sources, Inc. and John Symons, M.D.'s Brief in Opposition to Plaintiff's Motion for Summary Judgment** via U.S. First Class mail, postage prepaid, addressed as follows:

William Clark
Luzerne Treatment Center
600 E. Luzerne Street
Philadelphia, PA 19124


John Talaber, Esquire
Office of Chief Counsel
PA Department of Corrections
55 Utley Drive
Camp Hill, PA 17011


_____
Linda L. Gustin