IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM CLARK, | : | |
| Plaintiff, | : | |
| | : | Civil No. 01-0764 |
| v. | : | (Judge William W. Caldwell) |
| LARRY LIDGETT, et al., | : | JURY TRIAL DEMANDED |
| Defendants. | : | Filed Via Electronic Case Filing |

**CORRECTION DEFENDANTS' BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**STATEMENT OF THE CASE**

**A.    Identity of the Parties and Statement of Claim**

Plaintiff William Clark is an inmate formerly incarcerated at the State Correctional Institution at Rockview ("SCI-Rockview").[1] The Department of Corrections ("Department") employees named as defendants ("Corrections Defendants") are: (1) former Secretary of the Department, Martin Horn; (2) SCI-Rockview Superintendent, Robert Meyers; and (3) former Corrections Health Care Administrator, Larry Lidgett.[2] Additionally, Clark named Wexford Health

---

[1]    See Complaint (doc. 1), ¶ 2; Notice of Change of Address (doc. 113).
[2]    See Complaint, ¶¶ 3,4, 7.

Sources, Inc. ("Wexford"), and Wexford Medical Director, Dr. John Simons. As defendants[3].

This is a 42 U.S.C. §1983 *pro se* action alleging deliberate indifference to the treatment of Clark's Hepatitis C condition in violation of his Eighth and Fourteenth Amendment rights to the United States Constitution.[4]  Clark is suing the Defendants in their official and individual capacities, and has pendent state claims of medical malpractice.[5]  Clark seeks declaratory and injunctive relief, as well as, compensatory and punitive damages.[6]

## B.   Relevant Procedural History

Clark filed his Complaint on May 2, 2001.[7]  All Defendants waived service of summons on August 13, 2001.[8]  All Defendants waived their right to reply to the Complaint, pursuant to 42 U.S.C. §1997(e) in September 2001.[9]  Discovery between the parties is now complete.  All Defendants have filed motions for summary judgment, supporting documents, and briefs with the exception of the

---

[3]   The non Corrections Defendants are represented by James D. Young, Esquire.  See Entry of Appearance (doc. 11).
[4]   See Complaint, ¶¶ 8-58.
[5]   See Complaint, p.1 "Preliminary Statement"
[6]   See Complaint, Relief Requested, pp. 10-11.
[7]   See Complaint (doc. 1).
[8]   See Waiver of Summons (doc. 12).
[9]   See Waiver of Reply to Complaint (docs. 13, 14).

following.[10] On March 18, 2003, the Corrections Defendants counsel requested, and was granted an enlargement of time until April 30, 2003, to file their Counterstatement of Material Facts and Brief in Opposition to Plaintiff's Motion for Summary Judgment.[11] Additionally, the Court directed that Plaintiff file a reply brief, if he so desires, on or before May 14, 2003.[12] Accordingly, the Corrections Defendants now timely file their Brief in Opposition to Plaintiff's Motion for Summary Judgment and their counterstatement of Material Facts.

**C.    Standard of Review**:

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law."[13] An issue of material fact is genuine if it has a real basis in the record, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

---

[10]    See Motions (docs. 81, 82, 112); Briefs, Statements of Material Facts, Counter Statements of Material Facts, and Supporting Documents (docs. 91,-92, 94-96, 100-101, 111-112, 115, 116).
[11]    See Motion (doc. 117); Order (doc. 118).
[12]    Id.
[13]    Fed.R.Civ.P. 56(c); see also Turner v. Schering-Plough Corp, 901 F.2d 335, 340(3d Cir. 1990); accord Anderson v. Liberty Lobby, inc., 477 U.S. 242, 247-48 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Matsushita Electric Industrial Co. v. Zenith Radio, 474 U.S. 574, 586 (1986)(setting the well established standards applicable to summary judgment);

3

summary judgment."[14] A court considering a motion for summary judgment must view all the facts in the light most favorable to the non-moving party, here for purposes of this Brief, the Corrections Defendants, and give them the benefit of all reasonable inferences that can be drawn from the facts.[15]

When the moving party, here Clark, designates for the Court portions of the record that show a lack of genuine issues, the opposing party must do more than simply show that there is some metaphysical doubt as to the material facts; specifically, he must go beyond the pleadings, and by affidavit, depositions, answers to interrogatories, or admissions on file designate facts showing a genuine issue for trial.[16] The trial court, without weighing the evidence or determining the truth of the matter, must assess the adequacy of the Corrections Defendants' admissible evidence, and determine whether that showing would be sufficient to carry his burden of proof such that a reasonable jury could return a verdict in their

---

[14] See Matsushita Elec. Indus., 475 U.S. at 586-87; Anderson, 477 U.S. at 248.
[15] See Matsushita, 475 U.S. at 587.
[16] See Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324. Additionally, pursuant to Fed.R.Evid. 201, in relevant part, a court can judicially notice of a fact, at any stage in the proceeding, if it is "not subject to reasonable dispute in that it is either generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Further, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information" However "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed."

favor.[17]  Moreover, Clark, as the Plaintiff, still has the burden of proof to make a sufficient showing on essential elements of his deliberate indifference, medical malpractice, or negligence claims; and accordingly, his failure to do so such would require judgment to the Defendants as a matter of law.[18]

**D.     Counterstatement of Statement of Material Facts:[19]**

**Defendant Martin F. Horn:**

Defendant Martin F. Horn, from March 1, 1995 until December 30, 2000, was the Secretary of the Department ("Department"), an executive agency in the Commonwealth of Pennsylvania.[20]  Defendant Martin F. Horn is not a physician,

---

[17]   See Anderson, 477 U.S. at 248; Celotex, 477 U.S. at 322.
[18]   See Celotex, 477 U.S. at 323.
[19]   The Corrections Defendants have provided precise citations to the record in their accompanying *Statement of Material Facts*, and respectfully request that the Court take notice of specific portions of the record through the citations contained within the aforementioned document, that substantially mirrors in form the presentation of the facts contained herein.
[20]   Generally, the Secretary of the Department is responsible in a supervisory capacity for the overall management and operation of the Department in fulfilling its mission of protecting the public by confining persons committed to the Department's custody in safe, secure facilities, and providing opportunities for inmates to acquire the skills and values necessary to become productive law abiding citizens; while respecting the rights of crime victims.  Geographically, the Department is comprised of twenty-five (25) state correctional institutions, fifteen (15) community correction centers, and one (1) motivational boot camp that are located throughout the Commonwealth.  The Secretary is responsible in a supervisory role for the safety and security of fifteen thousand (15,000) employees and directly supervises five (5) Deputy Secretaries who also oversee the operation of the Department.  Further, during Defendant Horn's tenure as Secretary, there were approximately thirty six thousand (36,000) inmates incarcerated within the Department's correctional institutions.

5

and accordingly, did not provide Clark with medical treatment in the capacity of a medical professional while he was Secretary of the Department. Clark admits that his only interaction with Defendant Secretary Horn was through the Department's administrative grievance process.

**Defendant Robert Meyers:**

Defendant Robert W. Meyers is currently the Superintendent at SCI-Rockview and has been employed in that capacity since February 1998. During Superintendent Meyer's tenure, SCI-Rockview has housed thousands of inmates. Defendant Robert W. Meyers is not a physician, and accordingly, did not provide Clark with medical treatment in the capacity of a medical professional as the Superintendent at SCI-Rockview. Clark admits that his only interaction with Defendant Superintendent Meyers was through the Department's administrative grievance process.

**Defendant Larry L. Lidgett:**

Defendant Larry L. Lidgett is the former Corrections Health Care Administrator ("CHCA") at SCI-Rockview who voluntarily retired from Commonwealth employment in September 2001. Defendant Lidgett graduated from the Phillipsburg State General Hospital and began working there as a nurse on June 5, 1972. In November 1982, Defendant Lidgett began working at SCI-Rockview as a staff nurse. In 1985, Defendant Lidgett was promoted to Nurse

Supervisor, and worked in that capacity until June 1994 when he was promoted to CHCA at SCI-Rockview.

Defendant Lidgett, as the Corrections Health Care Administrator, was generally responsible for managing the health care of inmates in SCI-Rockview. Defendant Lidgett's duties included overseeing the screening for diseases of inmates, the administration of routine and emergency treatment, managing a multidisciplinary health care staff, and monitoring the services of a contracted medical vendor. Defendant Larry L. Lidgett is not a physician, and accordingly, did not provide Clark with hands-on medical treatment in his capacity of a medical professional. Clark admits that his only interaction with Defendant Corrections Health Care Administrator Lidgett was through the Department's administrative grievance process.

**Clark's Medical Condition:**

In 1992, while Clark was incarcerated at SCI-Graterford, his blood-work indicated that his liver enzyme levels were high. In 1995, when Clark was transferred to SCI-Rockview, Clark admits that liver profile blood-work was provided and indicated that his liver enzyme profiles were normal at that time. Sometime in 1998, Clark noticed that he was getting tired and exhausted more easily and had a pain on his side, but does not recall notifying any of the medical staff at SCI-Rockview.

7

Clark admits he met with Dr. Symons on November 13, 1998, December 28, 1998, January 13, 1999, and January 26, 1999, he did not mention any problems of weight loss, fatigue, abdominal pains, or jaundice, but was being treated for his psoriasis condition. On October 22, 1999, Clark was added to the SCI-Rockview Hepatitis C clinic. Clark admits that he was not surprised when he was told that he had Hepatitis C because of his lifestyle, and that he felt lucky that he did not have anything else. Defendant Dr. Symons met with Clark on November 10, 1999 and discussed the treatment options available for Hepatitis C.

Clark admits that on numerous occasions while incarcerated under the care, custody and control of the Department, medical personnel examined him and nobody interfered with his ability to see doctors. Clark admits that since December 1, 1999, he has seen "a million" physician assistants during that time and agreed that since he was first diagnosed with Hepatitis C, he was seen by medical personnel rather frequently. In reality, through reviewing Clark's Medical records dating back to 1992, during his incarcerations he was examined approximately 220 times by multiple medical personnel including sixteen (16) different Physicians, and eight different Physician's Assistants. Clark admits that before filing this civil rights action, he never asked to review the Department's Inmate Medical Record to verify the claims contained therein.

## STATEMENT OF QUESTIONS PRESENTED

I. ARE THE CORRECTIONS DEFENDANTS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE ARE NO DISPUTES OF GENUINE MATERIAL FACT SHOWING RECKLESS DISREGARD TO CLARK OBTAINING MEDICAL TREATMENT FOR HIS ILLNESS WHILE INCARCERATED?

   Suggested Answer:   Yes

II. ARE THE CORRECTIONS DEFENDANTS ENTITLED TO SUMMARY JUDGMENT BECAUSE THEY WERE NOT PERSONALLY INVOLVED IN HIS MEDICAL TREATMENT?

   Suggested Answer:   Yes

III. DID CLARK'S FAIL TO STATE PENDENT CLAIMS OF NEGLIGENCE AND MEDICAL MALPRACTICE AGAINST THE CORRECTIONS DEFENDANTS SUCH THAT SUMMARY JUDGMENT SHOULD BE GRANTED ON THEIR BEHALF?

   Suggested Answer:  Yes

IV. ARE CLARK'S DUE PROCESS AND ACCESS TO COURT ALLEGATIONS RAISED IN HIS SUPPORTING BRIEF PROPERLY BEFORE THIS HONORABLE COURT FOR REVIEW IN THIS 42 U.S.C. §1983 ACTION AS A MATTER OF LAW?

   Suggested Answer: No

# ARGUMENT

I. **THE CORRECTIONS DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE ARE NO DISPUTES OF GENUINE MATERIAL FACT SHOWING RECKLESS DISREGARD TO CLARK OBTAINING MEDICAL TREATMENT FOR HIS ILLNESS WHILE INCARCERATED.**

A "serious medical need" has been defined as "one that has been diagnosed by a physician, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."[21] On its face, the alleged serious medical need in this case does not qualify as one apparent to even a layperson. The diagnosis of Hepatitis C is not one that is readily apparent to laymen. Indeed, Clark's own allegations indicate that he was diagnosed only after a "blood test."[22]

Determining the propriety of treatment for Hepatitis C (which is at the heart of Clark's action), as contrasted with a bleeding wound, opens the door for impermissible, second guessing of the course of treatment that a trained physician provided. Courts disavow any attempt to second-guess a particular course of treatment, which remains a question of sound professional judgment.[23] A disagreement between the doctor and a plaintiff as to the medical diagnosis and

---

[21]  See Sheldon v. Pezley, 49 F.3d 1312, 1316 (8th Cir. 1995).
[22]  See Complaint, ¶¶ 10-12.
[23]  See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); McAleese v. Owens, 770 F. Supp. 255, 258 (M.D. Pa. 1991).

treatment does not constitute deliberate indifference.[24] Yet, this is precisely what Clark attempts to do through this 1983 action:[25] Clark inappropriately asks this Court to substitute its judgment for the trained medical personnel who regularly saw him during the relevant times of his incarceration.

Moreover, the Third Circuit has established that "a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff."[26] There is no genuine dispute of material fact that any of the Corrections Defendants are physicians, or that they are treating Clark in a professional capacity.[27] Rather, Clark admits numerous times throughout his Complaint that he was provided with access to a physician.[28] Therefore, the Corrections Defendants met their constitutional obligations to provide medical care to Clark and the Complaint against them should be dismissed with prejudice.[29]

---

[24] See Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir.1987). Bednar v. County of Schuylkill, 29 F.Supp.2d 250, 253 (E.D. Pa. 1998). Accord Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

[25] See Plaintiff's Answers to the Corrections Defendants interrogatories to Plaintiff, Responses 1, 13, attached to the Supporting Documents as Exhibit 2.

[26] See Chimenti, slip. op. at 17, (citing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)). A copy of Chimenti is attached to the Corrections Defendants' Supporting Brief (doc.100) pursuant to Pa. MDLR 7.8(a) as Exhibit A.

[27] See Complaint, pp. 1-11.

[28] See Complaint (doc. 1), ¶¶ 10, 14, 21, 26, 30-33.

[29] See Estelle v. Gamble, 429 U.S. 97 (1976) (holding the government has an obligation to provide medical care to those it is punishing by incarceration).

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO THE CORRECTIONS DEFENDANTS BECAUSE CLARK ADMITTED THEY WERE NOT PERSONALLY INVOLVED IN HIS MEDICAL TREATMENT.

A section 1983 action must allege that the defendant actually participated in or had actual knowledge of and acquiesced in the events forming the basis of the claims.[30] Clark fails to link the Corrections Defendants to the central acts that he complains about: the failure to inform <u>him</u> of his diagnosis of Hepatitis C, and to have in place an Hepatitis C protocol to treat his illness. Instead, his allegations against the Corrections Defendants offer no basis for liability other than one based upon their respective supervisory positions as the Secretary, Superintendent, and Corrections Health Care Administrator. *Respondeat superior* alone cannot be a

---

[30] See Chimenti v. Kimber, Civil No. 3:CV-01-0273, slip op. at 15, 16 (M.D. Pa. Mar. 15, 2002)(Vanaskie, C.J.)(finding "[t]he mere fact that the Commonwealth Defendants [that included Secretary Horn, a Superintendent, and two nurses] responded to [the inmate's] grievances does not support an inference that they were deliberately indifferent to his medical needs. They were entitled to rely upon the advise of health Care professionals.") (citing Johnson v. Harding, Civil No. 3:CV-99-977, slip op. at p.8)(M.D. Pa. Feb. 29, 2000)(Vanaskie, C.J.)(finding that is there no constitutional right to a grievance procedure and to the extent Plaintiff contends the Commonwealth Defendants violated his constitutional rights by not taking corrective action on medical complaints, said allegations fail to state a claim upon which relief may be granted)(citation omitted)). A copy of Chimenti is attached to the Corrections Defendants Supporting brief (doc. 100) pursuant to Pa.MDLR 7.8(a) as Exhibit A. See also Thomas v. Meyers, Civil No. 3:CV-00-1887, slip op. at 8, 9 (M.D. Pa. Mar. 25, 2002)(Caputo, J.)(finding in a claim factually and legally on point with Clark's Complaint that Defendants Meyers and Lidgett should be dismissed from the action). A copy of Thomas is attached to the Corrections Defendants' Supporting Brief (doc. 100) pursuant to Pa.MDLR 7.8(a) as Exhibit B.

basis for a Section 1983 suit.[31]  Therefore, summary judgment should be granted to the Corrections Defendants as a matter of law and the claims against them dismissed with prejudice.

### III.  CLARK FAILED TO STATE PENDENT CLAIMS OF MEDICAL MALPRACTICE AGAINST THE CORRECTIONS DEFENDANTS SUCH THAT SUMMARY JUDGMENT SHOULD BE GRANTED ON THEIR BEHALF.

There is no genuine dispute of material fact that any of the Corrections Defendants were in a physician-patient relationship with Clark, such as is required to prove medical malpractice.[32]  The Corrections Defendants' roles were administrative.  They are not physicians.  They did not provide hands-on treatment to Clark, nor could they do so.  In no way can it be said that the Corrections Defendants had a duty of care, in a treatment capacity, to Clark's Hepatitis C condition.  Therefore, because Clark is unable to establish an essential element for his pendent medical malpractice claims, the Corrections Defendants are entitled to summary judgment on their behalf.

---

[31]  See Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976).

[32]  See Promubol v. Hackett, 686 A.2d 417, 420 (Pa. Super. 1996), appeal denied, 548 Pa. 672, 698 A.2d 595 (1997)(duty owed by physician arises from physician-patient relationship); Tomko v. Marks, 602 A.2d 890, 892 (Pa. Super. 1992).

IV. **CLARK'S DUE PROCESS AND ACCESS TO COURT ALLEGATIONS RAISED IN HIS SUPPORTING BRIEF ARE NOT PROPERLY BEFORE THIS HONORABLE COURT FOR REVIEW IN THIS 42 U.S.C. §1983 ACTION AS A MATTER OF LAW**

In Clark's "Motion in Opposition to Corrections Defendant's Summary Judgment/and Plaintiff's Summary Judgment" dated February 24, 2003, he raises due process and access to court claims.[33] The allegations and claims are not contained in his Complaint, and are unspecified allegations as to any "personal involvement" by the three named Corrections Defendants in this action.[34] Further, Plaintiff has not sought to amend his Complaint to add additional parties, and even if he did, it is doubtful that he even attempted to utilize the administrative grievance process, while still confined, as required by the Prison Litigation Reform Act.

The allegations are not properly before this Honorable Court in the context of this 42 U.S.C. §1983 action as the "Department of Corrections" and its unnamed agents are not proper parties. Finally, to the extent Mr. Clark makes this allegations against counsel in his professional capacities, this is not the appropriate procedural forum to do so. Accordingly, the Corrections Defendants respectfully request that Clark's due process and access to courts claims be denied and the Complaint dismissed with prejudice.

---

[33]    See Clark's Brief (doc. 111).
[34]    See generally Complaint (doc. 1).

14

## **CONCLUSION**

**WHEREFORE**, for the above-stated reasons, this Honorable Court should deny Plaintiff's Motion for Summary Judgment and grant the Corrections Defendants' Motion for Summary Judgment, dismissing the claims against them with prejudice.

                                          Respectfully submitted,
                                          Office of General Counsel

BY:   s/ John J. Talaber
          Assistant Counsel
          Department of Corrections
          Office of Chief Counsel
          55 Utley Drive
          Camp Hill, PA  17011
          Phone (717) 731-0444
          Fax (717) 975-2217
          JTalaber@state.pa.us
          PA 83279

Dated:  April 30, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM CLARK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil No. 01-0764 |
| | : | |
| v. | : | (Judge William W. Caldwell) |
| | : | |
| LARRY LIDGETT, et al., | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

PROOF OF SERVICE

The undersigned hereby certifies that the Corrections Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment was served upon the person(s) in the manner indicated below.

Service by first-class mail
addressed as follows:

William Clark
Luzerne Treatment Center
600 E. Luzerne Street
Philadelphia, PA  19124

Service by Electronic Case Filing:

James D. Young, Esquire


s/ John J. Talaber
John J. Talaber
Assistant Counsel

PA Department of Corrections
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444

Dated:  April 30, 2003